**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

2005 JAN 19  A 9 03

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |  |
|---|---|---|
| AMERICAN STEEL ERECTORS, INC., *et al.*,<br>　　　　Plaintiffs,<br><br>　　　v.<br><br>LOCAL UNION NO. 7, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL & REINFORCING IRON WORKERS, *et al.*,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 04-cv-12536-RGS |

**PLAINTIFFS' REPLY TO UNION DEFENDANTS'**
**AMENDED OPPOSITION TO MOTION FOR ADMISSION**
**OF ATTORNEY *PRO HAC VICE***

Plaintiffs moved the Court pursuant to Local Rule 83.5.3(b) of the United States District Court for the District of Massachusetts for the Admission of Michael E. Avakian as attorney *pro hac vice* on behalf of Plaintiffs in this case. The Defendants' Opposition does not claim that Mr. Avakian fails to meet the three standards for admission, *viz.*, that he is a) a member of the bar of the highest court of a state, b) there are no disciplinary actions pending against him where he is a member of the bar, and 3) he has read and is familiar with the Local Rules of this Court.

Defendants', rather, raise several prospects of potential conflict of interest with the Plaintiffs' choice in representation by Mr. Avakian. That non-meritorious claim in the circumstances of the instant case is plainly employed as a technique of harassment.

Where a conflict is charged by an opposing party, Comment 15 to Rule 1.7 of the Massachusetts Rules of Professional conduct, explains that "[s]uch an objection should be viewed with caution, however, for it can be misused as a technique of harassment." 3:07 Mass. Rules of Conduct.

This Court has "kept in mind that 'the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons.'" Addamax Corp. v. Open Software Fdn., Inc., 151 F.R.D. 504, 509 (D. Mass. 1993) (quoting *Preamble to Model* Rules for Professional Conduct).

Even Defendants recognize that "this Motion would routinely be granted." Opp. at 2.[1] The Opposition should be dismissed and the Motion granted.

## THE PARTIES ALLEGEDLY IN CONFLICT

The Defendants aver that because of Mr. Avakian's representation in the case of certain defendants before Judge Gertner, their is a cause of concern in this case. Defendants' identification of the parties in interest to the Complaint in Trustees v. CWS Constr. *et al.*, No. 1:03-cv-11815-NG, is factually incomplete to this Court. They do correctly aver that two of the five Defendants, Susan and Ronald Beauregard are husband and wife, that Ronald Beauregard is the President of B&B Welding, Inc., and that at differing points in time the five defendants have shared the same address. Opp. at 2.

The public record of the Trustees case contains some information missing from the Defendants' assertions here. First, that B&B Welding, Inc. is solely owned by Ronald Beauregard a Plaintiff herein. The Company ceased operations, however, in November 2000.

Second, Construction Welding Services is solely owned by Susan Beauregard. It began operations in May 2001 and ceased operations in January 2003.

Third, B&B Welding, Inc. and Construction Welding Services, Inc. had signed contracts with the Iron Workers District Council. Plaintiff Independent Welding here is signatory to no contract with any union.

---

[1]Defendants have failed to paginate their Opposition brief. References herein will be to the physical page of that document.

Fourth, B&B Welding, Inc. and Construction Welding Services, Inc. are closely held companies. Mr. Beauregard solely owns Independent Welding as alleged in paragraph 7 of the instant Complaint.

The <u>Trustees'</u> action alleges an alter ego relationship between all the parties plus individual liability. As the 2nd Amended Complaint in that case shows (Opp. Ex. B), the Trustees' set forth primarily legal conclusions and cryptically set forth what at best may be viewed as significant facts.

In the case at bar, Plaintiffs alleged that Construction Welding Services, Inc. was a company that the Defendants had enlisted to obtain agreements in restraint of trade. Plaintiffs here did not name Construction Welding Services, Inc. as a party (hereinafter "CWS"), allege CWS' agreements in restraint of trade were voluntary, or seek any damages or equitable relief from it (or from any other management co-conspirator).

## THERE IS NO ETHICAL DILEMMA TO BE RESOLVED

Plaintiffs suggest that Professional Rule 1.7 is in question because there is an allegation that CWS is a co-conspirator in the present case. If this antitrust case is won, they opine that success will curtail CWS's and B&B's ability to use of the Defendant Union's job target program, it will expose those other clients to potential liability in other lawsuit, that client confidences of CWS may be revealed in the course of the instant lawsuit, and if alter egos of CWS is proven it will be adverse to Plaintiff Ronald Beauregard d/b/a/ Independent Welding. Opp. At 3.

None of these proposed issues have merit. As Defendants recognize, the Plaintiffs in the <u>Trustees'</u> action have a long road to prove any set of facts of individual liability under ERISA, because there is no such cause of action, and second there is absolutely no problem with a company being a participant to an agreement with a union and then suing the union under the

3

antitrust laws to strike it down.

In <u>Connell Constr. Corp. v. Plumbers & Steamfitters Local Union No. 100</u>, 421 U.S. 616 (1975), the Supreme Court approved an antitrust cause of action for an employer's complaint under the antitrust laws to strike down its agreement with the union. There, an employer signed an agreement with the union and then filed a successful antitrust lawsuit to set it aside. The Court found that union agreements entered into with unions that curtail competition based on efficiency further no "goal of federal labor policy....Moreover, competition based on efficiency is a positive value that the antitrust laws strive to protect." <u>Id</u>. at 623. Any agreement obtained by the Defendants from CWS or B&B Welding, Inc. was coerced within the meaning of the antitrust laws and could be set aside by them or this Court, for the remedies under the labor law are not "exclusive." <u>Id</u>. at 634.[2]

Here, however, CWS is not named as a defendant and is no longer in business. Since it is not in business, no injunctive relief is applicable. Similarly, B&B Welding, Inc. ceased business in November 2000, outside the statute of limitations in this case.

Hence, the alleged dilemma of representing a common client that is no longer in business in the trade in issue because of Plaintiffs have requested prospective relief is nonsensical. These assertions are evidence of Defendants pushing the envelope into precisely the quandary that the Professional Rules recognize may occur when the opposing side submits an ethical problem to the court.

"Resolving questions of conflict of interest is primarily the responsibility of the lawyer undertaking the representation." Comment to Rule 1.7, *Conflict Charged by an Opposing Party.*

---

[2] Inasmuch as the Defendants have provided information outside the complaint to the Court, the Court should also know that the Union has sought to prevent an NLRB supervised election of Independent Welding employees in NLRB Region 1: 1-RM-1272 on November 12, 2004.

Here, as the declaration of Mr. Avakian reveals, the possibility of a conflict was recognized prior to the filing of the instant lawsuit.

The client CWS was apprised of Mr. Avakian's conflict prior to his entering an appearance for CWS, Declaration ¶ 9, and CWS provided Mr. Avakian written authorization to proceed with the antitrust lawsuit with the allegations contained therein. Declaration ¶ 11. The Plaintiffs in the instant lawsuit were also apprised of the counsel's representation of CWS and each consented after consultation. Declaration ¶ 12. See also Professional Rule 1.7(a).[3]

The Opposition, although styled as if it raises overarching procedural concerns, is really a device designed to prevent expert counsel from assisting the Plaintiffs and the undersigned counsel from prosecuting this case. The Defendants well know that the Mr. Avakian and his firm have significant expertise in this area of law which is highly relevant to the antitrust allegations in the Complaint. That expertise is highlighted by cases such as: Altemose Construction Co. v. Building Trades of Philadelphia, PA, 751 F.2d 653 (3d Cir. 1985); Can-Am Plumbing, Inc v. NLRB, 321 F.3d 145 (D.C. Cir. 2003); Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100, 421 U.S. 616 1974); C & W Constr. Co. v. Carpenters Local 745, 108 F.R.D. 389 (D. Hawaii 1985); 687 F. Supp. 1453 (D. Hawaii 1988); Chamber of Commerce on behalf of Boise Cascade Corp. v. NLRB, 574 F.2d 457 (9th Cir. 1978); Cool Wind Ventilation Corp v. Sheet Metal Workers Int'l Assn, 139 F. Supp.2d 319 (E.D.N.Y. 2001); Ehredt Underground v. Commonwealth Edison Co., 90 F.3d 238 (7th Cir. 1996); Imperial Constr. Management Co. v. Laborers' Local 96, et al., 729 F. Supp. 1199 (N.D. Ill. 1990); 818 F. Supp. 1179 (N.D. Ill. 1993); Muko, Inc. v. Southwestern Penn. Bldg. & Constr. Trades Council,

---

[3]There are no allegations in the complaint involving B&B Welding, Inc. Since B&B Welding, Inc. also ceased operations in the trade, the Defendants speculation that relief under the antitrust lawsuit would "harm B&B and CWS (and its alter egos)" is pure speculation as well.

609 F.2d 1368 (3d Cir. 1979) (en banc), rehearing, 670 F.2d 421 (3d Cir. 1982); and Washington

Area Carpenters' Welfare Fund v. Overhead Door Co., 681 F.2d 1 (D.C. Cir. 1982).

All the clients in the Trustees' case were advised of CWS's request for representation and

that Mr. Avakian might withdraw in Trustees' case if it appeared that a evidence of a conflict

might arise. The Plaintiffs in this case should not have their chosen counsel so easily set aside

by Defendants' claims and prevent Mr. Avakian from assisting them in this case.

### THE DEFENDANTS HAVE FAILED TO PRODUCE ANY FACTS TO MEET THEIR HEAVY BURDEN TO SEEK THE DENIAL OF COUNSEL *PRO HAC VICE*

A client's right to choose his counsel is a corollary of the Sixth Amendment right to

effective assistance of counsel. Panzardi-Alvarez v. United States, 879 F.2d 975, 980 (1st Cir.

1989). It has been called a "fundamental tenet of American jurisprudence, and therefore a court

may not lightly deprive a party of its chosen counsel." American Special Risk v. City of

Centerline, 69 F. Supp.2d 944, 953 (E.G. Mich. 1999).

Ordinarily, an attorney should not represent a client whose interests will be adverse to the

interests of another client. Professional Rule 1.7(a). The bar is mandatory unless, as the Rule

recognizes, "(1) the lawyer reasonably believes the representation will not adversely affect the

relationship with the other client; and (2) each client consents after consultation."

As shown in the previous section, the concept of a potential conflict between certain

clients in the Trustees' case and interests of Plaintiffs in the instant case by counsel is a phantom

one because a party to a contract—even a union contract—may sue under the antitrust laws to set

the contract aside, as was successfully done in Connell. Moreover, the Plaintiffs in the instant

case are not suing any of the parties who Mr. Avakian represents in the Trustees' lawsuit for

whom the Defendants here allege a conflict may be presented. The Defendants completely fail

to offer any proof in support of their claim that a conflict in fact exists.[4]

### Courts are Reluctant to Apply Rules to Disqualify Attorneys

Although courts have supervisory authority to consider attorney conduct, they "have been reluctant to disqualify attorneys because of the severe consequences of a disqualification....and proceed with caution." Moss v. TACC Int'l Corp., 776 F. Supp. 622, 624 (D. Mass. 1991) (Caffrey, J.). Plainly, the effect of disqualification would separate the client from the attorney of choice. Many times because such motions during litigation are used "for tactical reasons and will most likely cause delay in the litigation." Id. See Kevlik v. Goldstein, 724 F.2d 844, 849 (1st Cir. 1984).

Consequently, courts proceed on motions of this kind with "'deliberate caution," Colonial Gas Co. v. Aetna Cas. & Surety Co., 144 F.R.D. 610, 612 (D. Mass 1991), and they are "viewed with disfavor" and are "subject to strict scrutiny because of the strong potential to 'stall and derail the proceedings, redounding to the strategic advantage of one party over another.'" First Interregional Advisors Corp. V. Wolff, 956 F. Supp. 480, 489 (S.D.N.Y. 1997). "Disqualification of a party's chosen counsel is a 'drastic measure.'" Id.

Massachusetts views such motions as an improper tactical weapon when filed during litigation, Borman v., Borman, 378 Mass. 775, 393 N.E.2d 847, 855 & n.18 (1988). This is what Defendants have done.

Rule 1.7 of the current Professional Rules of Conduct plainly permits an attorney to represent multiple clients where it is obvious that he can do so and adequately represent each. And although the "self-regulating" nature of the Rules place primary responsibility on the

---

[4]If the Defendants had articulated with specificity their concern at the time counsel had requested consent to the filing of the Motion *pro hac vice*, Plaintiffs could have arrested that concern without the Court's intervention. Hence, this Reply and Supplemental Declaration had to be prepared.

7

attorney in the situation, "[a]s a safeguard to exercising independent judgement, each client must consent to the 'representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.'" Moss, 776 F. Supp. At 624; Serody v. Seroody, 19 Mass App.Ct. 411, 474 N.E.2d 1171, 1173 (1985); Professional Rule 1.7 Comment 15.

### DEFENDANTS FAILURE TO PRESENT ANY PROOF THAT THE PROFESSIONAL RULES HAVE BEEN VIOLATED REQUIRES DISMISSAL OF THEIR OPPOSITION TO THE MOTION

Defendants Opposition to the Motion for Admission *Pro Hac Vice* is completely speculative.  Defendants have the burden of proof to support their conflict claim and they have completely failed to carry it.  See Moss, 776 F. Supp. At 625.  This is a "heavy burden [in] proving [the] *facts* required for disqualification." Evans v. Artek Sys. Corp., 715 F.2d 788, 794 (2d Cir. 1983) (emphasis added).

As Judge Caffrey saw in the resolution of the question in Moss, 776 F. Supp. at 625, the alleged conflict was not supported by any facts of record.  There was no proof of a conflict by any allegation in the complaint to support the theory of a conflict by counsel.  He also looked to the memorandum filed by the moving party in support of disqualification and saw that it "provides no evidence of a potential transfer of confidential information, and monetary gain, other than the unsupported statements mentioned above [namely, that information will be used to advantage the other client and dual representation could not be performed adequately]." Similarly, the Defendants' "assertions are unsupported by the initial complaint or the memorandum in support of the motion to disqualify, and are refuted by the [attorney's] specific statements in his affidavit." Id.

The Defendants' alleged prospect that the Plaintiffs' success in the antitrust case would curtail and limit B&B Welding, Inc., CWS, and Independent Welding in the future, expose them

to lawsuits later (outside the statute of limitations), involves a "natural disinclination" to pursue claims for CWS less vigorously, etc., and offering of "*no* facts to support their allegation," Wolff, supra at 489, are not facts, but are evidence of overreaching. The same result flows from the allegations that CWS and the Plaintiffs here have interests "directly adverse" to each other and the potentiality of revealing client confidences, Opp. at 2, for which no factual basis is averred..

The evidence submitted to the Court demonstrates that precautions were indeed undertaken by Mr. Avakian to ensure that there would be no disabling conflict in his interests and to prevent disclosure of separate client secrets. Moreover, the Trustees' lawsuit requested entirely different relief than does the Antitrust case. None of the causes of actions in the two lawsuits even overlap or involve a common legal theory. No prejudice adheres to Defendants either by Mr. Avakian's representation in both cases—and none is alleged. See Milford Power Ltd v. New England Power Co., 896 F. Supp. 53, 58 (D. Mass. 1995) (Gorton, J.).

Defendants are also not permitted to assert Trustees' Defendants' "right to conflict free representation." Smith & Nephew, Inc. v. Ethicon, Inc., 98 F. Supp.2d 106 (D. Mass. 2000) ( Stearns, J.). Even "lingering doubts on the subject" are satisfied by the clients' waiver as this Court has previously recognized. Id.

Moreover, Defendants have not identified any confidential information that Plaintiffs here might obtain that would be detrimental to the interests of the Defendants in the Trustees' case. City of Centerline, supra at 953. Since the case is at an early stage any such allegations are premature at best. Siguel v. Allstate Life Ins. Co., 141 F.R.D. 393 (D. Mass. 1992). And, even if a conflict is later identified by the Court, then Mr. Avakian should continue in this case and not in the Trustees' case. See Molina v. Mallah Org., Inc., 804 F. Supp. 504, 513 (S.D.N.Y. 1992) (finding that attorneys representing both unions and trustees implicate a conflict, but upon

disqualification the investment of time dictate the attorneys could proceed to represent one client).

The fact that CWS is named as a co-conspirator is also not enough to establish a conflict and require separation. Cases cited by the Defendant are not analogous to the present situation.

In Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library, Inc., 474 F. Supp. 223, 224 (S.D.N.Y. 1979), the attorney representing the two clients proposed to become class counsel in an antitrust suit and named one client as a co-conspirator for whom he was seeking treble damages and injunctive relief. The Court rightly saw the potential for a conflict and provided counsel the choice of continuing to represent only one of the clients. Id. at 227.

Estates Theaters, Inc. V. Columbia Pictures Indus. Inc., 345 F. Supp. 93 (S.D.N.Y. 1972), also is inapplicable. There, the attorney promised the client that it would not name it or treat it as a co-conspirator. Id. at 97 n.3. The client was then named as one by the attorney and the government filed a separate antitrust action against the client. The client (UATC) then objected to the attorney's "continuing to represent the plaintiff in this case." Id. at 97. Hence, all the clients had not consented to the representation and the lawsuit sought damages from one client against its interests.

Finally, the evidence submitted here demonstrates that all the clients' Defendants raise a conflict involving Mr. Avakian, have consented to Mr. Avakian's continued representation in both cases. In accordance with the Professional Rules, Mr. Avakian reasonably concluded that the representation of the two sets of clients would not be antagonistic or present a conflict. In re Egbert, 184 F.R.D. 26, 30-31 (D. R.I. 1999). The Court should conclude the same.

The Motion meets all the requirements for admission of an attorney *pro hac vice*. Defendants' Opposition sets forth no reasonable grounds why the admission should not be granted. Consequently, the Court should dismiss the Defendants' Opposition to the Admission

of Mr. Avakian.

WHEREFORE, Plaintiffs request that their Motion for Admission of Mr. Avakian as

attorney *pro hac vice* in this case be granted.

Respectfully submitted,

AMERICAN STEEL ERECTORS, INC.,
AJAX CONSTRUCTION CO.,
AMERICAN AERIAL SERVICES, INC.,
BEDFORD IRONWORKS, INC.,
D.F.M. INDUSTRIES, INC., and
RONALD BEAUREGARD d/b/a
INDEPENDENT WELDING

By their attorneys,

Carol Chandler (BBO # 080660)
Geoffrey R. Bok (BBO # 550851)
STONEMAN, CHANDLER & MILLER LLP
99 High Street
Boston, MA 02110
(617) 542-6789

Dated: January 18, 2005

## CERTIFICATE OF SERVICE

I hereby certify that Plaintiffs' Motion for Admission of Attorney *Pro Hac Vice* was served, via email and U.S. Mail, on this the 19th day of January 2005, to the counsel of record in the above styled case named below:

Paul F. Kelly
Segal, Roitman & Coleman
11 Beacon Street
Boston, MA 02108
pkelly@segalroitman.com

Geoffrey R. Bok

11