UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                    )
AMERICAN STEEL ERECTORS, INC.,      )
et al.,                             )
            Plaintiffs,             )
                                    )
      v.                            )   Case No. 04 cv 12536-RGS
                                    )
LOCAL UNION NO. 7, INTERNATIONAL    )
ASSOCIATION OF BRIDGE,              )
STRUCTURAL, ORNAMENTAL &            )
REINFORCING IRON WORKERS, et al.,   )
                                    )
            Defendants.             )
                                    )
```

FILED
IN CLERKS OFFICE

2005 JAN 19 A 9:03

U.S. DISTRICT COURT
DISTRICT OF MASS.

## SUPPLEMENTAL DECLARATION OF MICHAEL E. AVAKIAN
## IN SUPPORT OF MOTION FOR ADMISSION *PRO HAC VICE*

Michael E. Avakian declares the following:

1. I was first admitted to the bar on January 4, 1989.

2. Since admission to the bar, I have handled cases predominantly in the area of employment and labor relations.

3. The geographical nature of my practice has led it to be primarily before federal courts and agencies. For over twenty-five years, I have been admitted in numerous cases *pro hac vice* nationwide, including several antitrust cases involving labor unions, e.g., Imperial Constr. Management Co. v. Laborers' Local 96, et al., 818 F. Supp. 1179 (N.D. Ill. 1993); C & W Constr. Co. v. Carpenters Local 745, 108 F.R.D. 389 (D. Hawaii 1985); 687 F. Supp. 1453 (D. Hawaii 1988). In not one situation where a motion for admission *pro hac vice* was filed, has such a *pro hac vice* motion ever been contested by opposing counsel or been denied by any court or agency.

4. I have never been charges with any ethical violation by any client, counsel, court

or agency before which I have practiced—prior to this case.

5. In the instant case, I was first retained by Independent Welding in April 2004 to handle labor matters and the investigation of the instant antitrust lawsuit due to my firm's expertise in this specialized area of law.

6. The lawsuit in the Trustees v. CWS Constr. et al., No. 1:03-cv-11815-NG, was filed on September 19, 2003.

7. In the Fall of 2004, Mr. Ronald Beauregard requested my assistance in the ongoing lawsuit in Trustees. Mr. Beauregard had independent legal counsel at the time handling the matter, James Ehrhard, Esq. Kressler & Ehrhard, Worcester, MA

8. After consultation with Mr. Ronald Beauregard, I met with Susan Beauregard as the principal for Construction Welding Services, Inc. ("CWS"). She requested my representation of that firm as well in the case.

9. I informed Ms. Beauregard that the representation of CWS had a potential for a conflict with clients already retained and that it could be expected that CWS would be named an unindicted co-conspirator in the antitrust case. I also informed Ms. Beauregard that the proposed Plaintiffs in the antitrust case had no intention of suing CWS for damages in connection with the alleged union market conspiracy.

10. The Trustees' lawsuit requested relief under contract law and ERISA. The Antitrust case was to present claims under the Sherman and Clayton Act and state law. None of the causes of actions in the two lawsuits overlap or involve a common legal theory.

11. The disclosure of the potential conflict in my representation of CWS was also made in writing to CWS. CWS provided its written consent in writing to the filing of the

allegations made in the antitrust lawsuit. I also advised that if a conflict did arise, that I would withdraw from the representation of CWS or that CWS could request my withdrawal.

12. All the Plaintiffs in the antitrust lawsuit were advised of the undersigned's representation of CWS in the Trustees' case and consented to the undersigned's continued representation.

13. Since the time that the potential for an ethical conflict presented itself to me in the representation of CWS in the Trustees' case in the Fall of 2004, I continued to reasonably believe that two lawsuits present little risk because first, Professional Rule 1.7, Comment *Loyalty to Client* states "[3]...simultaneous representation in unrelated matters of clients whose interests are only generally adverse, such as competing economic enterprises, does not require consent of the respective clients," second, "[4]...The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgement in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interest involved," and third, "[8]...a lawyer representing an enterprise with diverse operations may accept employment as an advocate against the enterprise in an unrelated matter if doing so will not adversely affect the lawyer's relationship with the enterprise or conduct of the suit and if both clients consent upon consultation."

14. Taken together, the Professional Rules expressly contemplate that an attorney's clients may on occasions have competing adverse interests. When such a situation may arise, the attorney has a duty to disclose the potential conflict and to withdraw if the parties do not consent to the representation.