UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN STEEL ERECTORS, INC., et al. )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>LOCAL UNION NO. 7, INTERNATIONAL )<br>ASSOCIATION OF BRIDGE, )<br>STRUCTURAL, ORNAMENTAL & )<br>REINFORCING IRON WORKERS, and )<br>)<br>CHARLES WRIGHT, and )<br>)<br>STEEL ERECTION AND ORNAMENTAL )<br>IRON INDUSTRY ADVANCEMENT FUND, )<br>)<br>Defendants. )| Case No. 1:04-cv-12536-RGS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
CHARLES WRIGHT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Charles Wright ("Defendant") submits this Memorandum of Law in Support of his Motion to Dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

**I.     INTRODUCTION**

This is a suit brought by six non-union contractors in the steel erection industry against a union that represents ironworkers in that industry, Iron Workers Local 7 ("Local 7"), and Defendant Charles Wright ("Defendant") under the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2 and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 158, and other federal and state laws.  Plaintiffs seek to recover damages and injunctive relief

from Defendant for the efforts by Local 7 members in assisting their employers in winning contract bids.  Plaintiffs' state claims against Defendant Wright are preempted by the National Labor Relations Act ("NLRA"), as amended by the LMRA, 29 U.S.C. § 151 et seq.  Moreover, Plaintiffs failed to state a state law or federal claim for relief for which relief can be granted against Defendant Wright.  Therefore, all claims against Defendant Wright should be dismissed.

## II.     ARGUMENT

### A.     STANDARD OF REVIEW

In determining whether the Court has subject matter jurisdiction over the state claims, the Court treats well-pleaded facts in the Complaint as true and takes all reasonable inferences in favor of Plaintiffs.  Negron-Gaztambide v. Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994).  Plaintiffs, as the party invoking the jurisdiction of a federal court, carry the burden of establishing subject matter jurisdiction.  Taber Partners, I v. Merit Builders, Inc., 987 F.2d 57, 60 (1st Cir. 1993); Mulvihill v. Spalding Sports Worldwide, Inc., 184 F. Supp. 2d 99, 102 (D. Mass. 2002) (citing O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982)).  Similarly, in determining whether Plaintiffs' Complaint fails to state a claim for which relief can be granted, the Court takes all well-pleaded facts in as true.  Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n, 142 F.3d 26, 40 (1st Cir. 1998).  However, the Court should "eschew any reliance on bald assertions, unsupportable conclusions, and opprobrious epithets."  Royal v. Leader Edge Prods., Inc., 833 F.2d 1, 1 (1st Cir. 1987) (subject matter jurisdiction) (quotations and citation omitted); Educadores Puertorriqueños En Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004) (failure to state a claim) (quotations and citation omitted).

### B. THE STATE CLAIMS AGAINST DEFENDANT WRIGHT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION.

Defendant Wright herein incorporates by reference Defendant Local 7's Memorandum of Law in Support of its Motion to Dismiss Counts V-VII (the state claims) of Plaintiffs' Complaint. All of the state claims against him are preempted.

### C. ALL CLAIMS AGIANST DEFENDANT WRIGHT INDIVIDUALLY MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

The Plaintiffs have named Charles Wright, a Local 7 Business Agent and Analyst, and former President of the Local Union, and as an individual defendant. He is the only individual named in the Complaint. See Compl. ¶ 8. The only allegations involving Wright are that he contacted Construction Welding Services Corp., an alleged co-conspirator, to see if it was interested in receiving target funds, and that he "stripped" non-union companies of workers, that is he assisted non-union workers in finding union jobs. See Compl. ¶¶ 143, 148.[1] The Plaintiffs allege that these actions are an unlawful attempt to restrain trade, and that Wright, acting within the scope of his agency and authority as a Local 7 representative, violated the monopoly provisions of the Sherman Antitrust Act. See Compl. ¶ 160.

The remaining allegations against Wright are a bit more mysterious, since he is not specifically mentioned again in the Complaint. However, each Count of the Complaint incorporates by reference every other allegation of the Complaint. For purposes of this Motion, then, and viewing the Complaint in the light most favorable to the Plaintiffs, it is assumed that Wright is charged as a defendant as to each Count. This

---

[1] The brief and conclusory allegations of violent conduct alleged in the Complaint concerned Edwin Wright, not Defendant Charles Wright. See Compl. ¶¶ 71-73.

3

means that Wright is alleged to have engaged in various activities, as an agent of Local 7, with employers with whom Local 7 has a collective bargaining relationship, which the Plaintiffs claim constitute either an antitrust violation, a secondary boycott in violation of labor law, or violations of various state law causes of action based on breach of or interference with contract.

The legal result is the same no matter what he is charged with, since no action exists against a union officer or member in their individual capacity for actions undertaken in the course of collective bargaining. All claims must be dismissed as to Wright.

"The [Supreme] Court has long held that 'union agents' are not personally liable to third parties for acts performed on the union's behalf in the collective bargaining process." Montplaisir v. Leighton, 875 F.2d 1, 4 (1st Cir. 1989), citing Atkinson v. Sinclair Refining Co., 370 U.S. 238 (1962) and Complete Auto Transit, Inc. v. Reis, 451 U.S. 410 (1981). This rule applies whether the union officer or member is sued in tort or contract or for authorized or unauthorized conduct. Montplaisir, supra (holding no claim against a union lawyer for improper representation).

The "policy .....[underlying] the *Atkinson* rule is ......Congress[ional] ... concern[] [with] the use of private lawsuits against workers as a "unionbusting" device". Id. The genesis of this concern lay in the now infamous Danbury Hatters case, an antitrust case in which a group of workers formed a union (before unions were granted protection under federal law), and led a boycott of Danbury Hats. See Savings Bank of Danbury v. Loewe, 242 U.S. 357 (1917); Lawlor v. Loewe, 235 U.S. 522 (1915); Loewe v. Lawlor, 208 U.S. 274 (1908). The disgruntled manufacturer sued for treble damages, and under

4

the law of the day, won.[2]  The result was financial ruin for many union officers and members.

Congressional reaction was not swift, see n. 2, infra, but it was sure.  In 1935, Congress passed the National Labor Relations Act, 29 U.S.C. § 151 et seq. ("NLRA"). In 1947, Congress passed Section 301(b) of the NLRA, which provides:

> Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. <u>Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.</u>

---

[2]  The claims of the aggrieved employer, who declared it his "patriotic duty" to resist any effort to unionize his employees, are eerily similar to the case at bar.

> The defendants, together with the other persons united with them in said combination, known as the United Hatters of North America, have been for many years, and now are, engaged in a combined scheme and effort to force all manufacturers of fur hats in the United States, including the plaintiffs, against their will and their previous policy of carrying on their business, to organize their workmen in the departments of making and finishing, in each of their factories, into an organization, to be part and parcel of the said combination known as the United Hatters of North America, or, as the defendants and their confederates term it, <u>to unionize their shops, with the intent thereby to control the employment of labor in and the operation of said factories, and to subject the same to the direction and control of persons other than the owners of the same, in a manner extremely onerous and distasteful to such owners, and to carry out such scheme, effort, and purpose by restraining and destroying the interstate trade and commerce of such manufacturers by means of intimidation of and threats made to such manufacturers and their customers in the several states, of boycotting them, their product, and their customers, using</u> therefor all the <u>powerful means</u> at their command as aforesaid, until such time as, from the damage and loss of business resulting therefrom, the said manufacturers should yield to the said demand to unionize their factories.

Loewe v. Lawlor, 208 U.S. 274, 284, 301 (emphasis supplied).  The demand to unionize was itself the unlawful conspiracy -- the boycott merely the damages.  Although Congress later attempted to exempt labor organizing from the reach of the antitrust laws in 1914, see 29 U.S.C. § 52, 15 U.S.C. § 17, the courts' narrow interpretation of this exception to the antitrust laws still left workers without protection.  Not until the passage of the Norris LaGuardia Act in 1932, 29 U.S.C. §§ 104-105, and the National Labor Relations Act in 1935, 29 U.S.C. § 151 et seq., did the American worker win the right to unionize free of the fear of suit for treble damages under the antitrust laws, or criminal prosecution under state conspiracy laws.  See United States v. Hutcheson, 312 U.S. 219 (1941).

5

29 U.S.C. § 185(b) (emphasis supplied). This provision was passed in direct, if belated, response to <u>Danbury Hatters</u>, and Congress' earlier unsuccessful attempts to limit the scope of labor's antitrust liability.

> "In the debates, Senator Ball, one of the Act's sponsors, declared that § 301, 'by providing that the union may sue and be sued as a legal entity, for a violation of contract, and that liability for damages will lie against union assets only, will prevent a repetition of the Danbury Hatters case, in which many members lost their homes.'"

<u>Complete Auto Transit, Inc. v. Reis</u>, 451 U.S. at 407 (quoting <u>Atkinson v. Sinclair Refining Co.</u>, 370 U.S. at 248). The Court also summarized the legislative history of Section 301 and its holding in <u>Atkinson</u>:

> Thus, in <u>Atkinson</u>, we noted that "in discharging the duty Congress imposed on us to formulate the federal law to govern § 301(a) suits, we are strongly guided by and do not give a niggardly reading to § 301(b)." Accordingly, we consulted and relied on the legislative history of § 301(b) which made it "clear that th[e] third clause [of § 301(b) ] was a deeply felt congressional reaction against the Danbury Hatters case ... and an expression of legislative determination that the aftermath ... of that decision was not to be permitted to recur."

<u>Id.</u> at 406 (holding that union members are immune from suit for wildcat strike that was not authorized by union) (citations omitted). Since <u>Reis</u>, the courts have, with "monotonous regularity," summarily dismissed federal and state claims of various sorts levied against union officers and members acting within the scope of the collective bargaining process. See <u>Montplaisir</u>, <u>supra</u>, at 4 (listing cases); <u>Wolfson v. American Airlines, Inc.</u>, 170 F. Supp .2d 87, 96 (D. Mass. 2001) (dismissing claims against union officer for participating in federally prohibited sick out); <u>Suwanchi v. IBEW Local 1973</u>, 528 F. Supp. 851 (D. N.H. 1981) (dismissing state law claims).

As the legislative history demonstrates, dismissal is mandated as to the antitrust counts, Counts I and II. <u>See</u> <u>generally</u>, <u>Reis</u>; <u>Connell Constr. Co., Inc. v. Plumbers and</u>

Steamfitters Local Union No. 100, 421 U.S. 616, 636 (1975) ("Congress and this Court have carefully tailored antitrust statutes to avoid conflict with the labor policy favoring lawful employee organization, not only by delineating exemptions from antitrust coverage, but by adjusting the scope of the antitrust remedies themselves."). Dismissal is also required as to Count III, the secondary boycott claims brought pursuant to Section 303 of the LMRA, 29 U.S.C. § 187. See 29 U.S.C. §187(b) (right to sue for damages is "subject to the limitations and provisions of [Section] 185 of this title"); Reis, supra (disapproving claims against individuals in secondary boycott suits); Cranshaw Constr. of New England v. International Assoc. of Bridge, Structural and Ornamental Ironworkers, 891 F. Supp. 666, 673 (D. Mass. 1995) (holding that union business agent "may not be held individually liable for the [u]nion's violation of [Section] 303 of the Labor Management Relations Act."); Intercity Maintenance Co. v. Local 254, SEIU, 62 F.Supp. 483, 495 (D.R.I. 1999), aff'd on other grounds, 241 F.3d 82 (1st Cir. 2001) (and cases cited therein) ("even a less than diligent researcher discovers that" Section 185 precludes individual liability in a Section. 303 suit). The state law claims against Wright, a union agent, must be dismissed for similar reasons. Montplaisir, supra; Best v. Rome, 858 F. Supp. 271 (D. Mass. 1994), aff'd, 47 F.3d 1156 (1st Cir. 1995). "Although Atkinson and Reis are factually distinguishable from the case at bar, these cases properly stand for the broader principle of federal labor law that it is the Union as an entity, not individual members of officers, which is the proper party in a suit for damages." Suwanchi, supra, at 862 (citation omitted), cited with approval in Montplaisir, supra.[3]

---

[3] It is unclear whether the Plaintiffs are seeking injunctive relief against Wright. Since Wright is alleged to have acted only in his capacity as an agent of the Union, any request for an injunction would be directed at the Union and its officers and agents, not Wright individually. Moreover, no injunction may issue in a labor dispute without satisfying all of the requirements of the Norris LaGuardia Act, 29 U.S.C. §§

**III.     CONCLUSION**

The sum total of the allegations against Wright are that he attempted to assist union contractors by offering to subsidize bids and provide them with workers. The Plaintiffs claim these actions are unlawful. The Union asserts that they are lawful. What is undisputed is that the core of Plaintiffs' claim is that Local 7 engages in organizing, collective bargaining, and contract enforcement activities that the Plaintiffs challenge. The Plaintiffs may challenge the Union, but they may not do so by suing its members and officers. The claims against Wright must be dismissed as a matter of law.

Respectfully submitted,

CHARLES WRIGHT

By his attorneys,

/s/Paul F. Kelly
Paul F. Kelly (BBO #267000)
Mary T. Sullivan (BBO #487136)
SEGAL, ROITMAN & COLEMAN
11 Beacon Street
Boston, MA 02108
(617) 742-0208

/s/Mickey Long
Mickey Long (BBO #634388)
193 Old Colony Avenue
Box E-1
South Boston, MA 02127
(617) 269-0229

Dated: February 1, 2005

---

106-107, none of which have been plead in this Complaint. See generally, Atkinson, supra. For this reason as well the Court lacks jurisdiction to enter an injunction against Wright.

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of foregoing Memorandum of Law in Support of Defendant Charles Wright's Motion to Dismiss Plaintiffs' Complaint was served upon Michael E. Avakian, Esq., Smetana & Avakian, 5211 Port Royal Road, Suite 103, Springfield, VA  22151; Carol Chandler, Esq. and Geoffrey R. Bok, Esq., Stoneman, Chandler & Miller LLP, 99 High Street, Boston, MA 02110 and Mickey Long, Esq., Ironworkers Local 7, 193 Old Colony Avenue, South Boston, MA 02127 via first class mail, postage prepaid, this 1st day of February, 2005.

                                                   /s/ Mary T. Sullivan
                                                   Mary T. Sullivan