## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERICAN STEEL ERECTORS, INC., et al. ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 1:04-cv-12536-RGS |
| LOCAL UNION NO. 7, INTERNATIONAL ) ASSOCIATION OF BRIDGE, ) STRUCTURAL, ORNAMENTAL & ) REINFORCING IRON WORKERS, and ) | |
| CHARLES WRIGHT, and ) | |
| STEEL ERECTION AND ORNAMENTAL ) IRON INDUSTRY ADVANCEMENT FUND, ) | |
| Defendants. ) | |

### UNION DEFENDANTS SURREPLY IN OPPOSITION TO MOTION FOR ADMISSION PRO HAC VICE

INTRODUCTION

There will undoubtedly be many points of contention between the Plaintiffs and the Union Defendants in this matter, but on one matter the parties agree. This Motion and its Opposition are unique and unusual. The pattern of claims and pattern of representation in this case do, however, raise legitimate questions of which the court should be informed at the outset, and as to which the court, in its discretion, may make a determination. The conflict, if one exists, exists at the outset of the case, and it behooves all parties to the litigation process to determine whether that conflict exists at the earliest opportunity.

DISCUSSION

The Plaintiffs' Reply underscores two major themes. First, that the conflict was disclosed and waived, and that second, it does not matter anyway, because CWS is entitled to try to reject its collective bargaining agreement, it is out of business, and the theories of liability in the two cases are wholly different.

A.  Waiver Is Not Enough

Disclosure and waiver[1] begin the inquiry; they do not end it. Under both the American Bar Association ("ABA") and the Massachusetts Rules of Professional Responsibility the court will review the facts and circumstances to determine if waiver is sufficient. The ABA Rules state that representation of clients with adverse interests at the same time before the same or different tribunals is improper. The Massachusetts Rule requires that the representation will not be adversely affected. If this court considers the benchmark of reasonableness to be that set by the ABA, then the inquiry ends there.[2] Clearly CWS, the first named coconspirator, is adverse to all of the Plaintiffs. See Complaint, in Par. 16. The Union's conduct with CWS is also part and parcel of Count III, the secondary boycott claim. If the court looks to the more general "adverse interest" test, the same result ensues.

---

[1] The Court, in its discretion, may also determine whether the assertion of counsel is sufficient to find that there is a valid waiver, or whether some further showing is required. See Chateau Deville Productions v. Tams-Witmark Music Library, Inc., 474 F.Supp. 223, 226. (S.D. N.Y. 1979) (assertion by counsel insufficient.)

[2]  "Paragraph (b)(3) prohibits representation of opposing parties in the same litigation, regardless of the clients' consent." Comment 23, ABA Model Rules of Professional Responsibility. American Bar Association, Model Rules of Professional Conduct, Client-Lawyer Relationship, Rule 1.7 Conflict of Interest: Current Clients (visited Feb. 4, 2005) <http://www.abanet.org/cpr/mrpc/rule_1_7_comm.html>.

  B. <u>Naming CWS Opens CWS, Beauregard, and IW to Defenses and Counterclaims</u>

The Plaintiffs argue that it does not matter that CWS is a named coconspirator in the antitrust claim because it is permissible for CWS to be part and parcel of an attempt to dismantle its collective bargaining relationship with Local 7 by bringing antitrust claims against the Local.  See <u>Connell Constr. Co. v. Plumbers and Steamfitters</u>, 421 U.S. 616 (1975)(employer's suit to abrogate collective bargaining agreement under antitrust laws).  CWS and the Plaintiffs argue that their counsel has no conflict because they have all made a deal that the Plaintiffs will not sue CWS.  On the surface, this may appear to be a very good deal for Beauregard and IW, who stand to collect damages for CWS' alleged participation in an alleged secondary boycott and antitrust conspiracy.  If the Union Defendants are correct, and IW and Beauregard are alter egos of CWS, it would be a truly spectacular deal.  If IW and Beauregard are successful they stand to collect twice, once from the Target Fund (via CWS) and once in litigation (against CWS' alleged coconspirator, Local 7).

  This scenario falls apart quickly upon closer examination.  <u>Connell</u> involved a case of an employer that signed a collective bargaining agreement with a disputed subcontracting clause.  Connell signed an unlawful agreement under protest and under the coercion of pickets.  Connell then immediately filed suit.  Here, CWS did not protest the Job Targeting Program.  To the contrary, it participated on four separate occasions, received tens of thousands of dollars from the Target Fund, and benefited as a result.

  To now claim that that transaction was unlawful is unseemly at best.  At the very least, the relationship between IW, Beauregard and CWS gives rise to defenses of waiver

3

and estoppel, and bars damages.  At worst, it opens CWS and its alleged contractual[3], and federal law alter egos, Plaintiffs IW and Beauregard to the defense of setoff[4], and to claims for contribution under state law.[5]  G.L. c. 231B sec. 1.  Naming CWS as an unindicted coconspirator complicates the Plaintiffs' case, raises possible defenses, and creates defenses and third party claims that may be brought by the Union Defendants against the very client Attorney Avakian represents.  The interests of CWS and the other parties are adverse, as are the interests of the alleged alter egos and the other Plaintiffs.

    C.  The Conflict Is Real, Not Speculative

CWS also argues that the potential claims against it in this case are irrelevant because it is out of business, and the claims in the collection suit are wholly different.

---

[3] CWS, as the admitted alter ego of B&B Welding, see Union Defendants Amended Memorandum in Opposition to Motion for Admission Pro Hac Vice, Exhibit A, is bound to the B& B collective bargaining agreement.  The Union will claim that the CWS/B&B contract contains a clause which requires that any company which is either directly or indirectly commonly owned and managed by the officers of B&B/CWS be bound by the terms of the agreement on construction site work.  See Manganaro Corp., 321 NLRB 158 (1996)(approving this type clause).  IW is but a trade name of B&B's principal officer, Beauregard.  If the Union is correct, this clause will bind Beauregard and IW by operation of contract.  See Massachusetts Carpenters Collection Agency v. A.A. Building Erectors, 343 F.3d 18 (1st Cir. 2003)(discussing advisability of negotiation of clauses to bind commonly owned and controlled companies).

[4] One particularly unsettling aspect of the Plaintiffs' agreement not to sue CWS is that if the Plaintiffs are successful, the Union Defendants are precluded from bringing a third party claim against CWS under the antitrust laws.  The Sherman and the Clayton Acts do not recognize a right to contribution.  Texas Industries v. Radcliff Materials, 451 U.S. 630 (1981).  Plaintiffs have made an explicit agreement with an alleged coconspirator and alleged alter ego to seek damages only from the one party which, if their theory is correct and they prevail, can not hold that coconspirator (CWS) responsible for its participation in the scheme under the antitrust laws.  However, the Union Defendants would still seek set off of any claim awarded to IW and Beauregard under either the labor law or the state law counts.  Furthermore, even if the Plaintiffs prevail on their legal theories and on their claim that CWS is a separate entity, the Union still retains its right to seek contribution from CWS under state law.

[5]  That is, if the state law claims survive the Union Defendants' Motion to Dismiss.

These arguments miss the mark. First, the allegation that CWS is out of business does not mean that it does not have liability, or that it does not have assets at risk. Moreover, the assertion that CWS is out of business is just that, an assertion. The Union Defendants have posited a conflict based not only on Plaintiffs' theories of liability, but on the Union's theories of defense. Part of the defense of this action will be that CWS, IW and Beauregard are one entity as a matter of contract, see n. 3 above, and/or labor law.[6] If CWS is a coconspirator, so too are IW and Beauregard. If the three are bound by the same contract, are single employers, or alter egos, CWS is not out of business, and the assets of all three entities are put at risk once CWS is named as a co conspirator. That possibility alone is sufficient to make representing all three parties simultaneously simply impossible. This configuration raises questions concerning the propriety of IW and Beauregard as Plaintiffs, the propriety of equitable relief, the propriety of damages, and a host of other problems detailed in the Union Defendants' Amended Opposition. If CWS is a separate and independent entity, then CWS is still open to claims from third parties, and no deal between the Plaintiffs and CWS can protect CWS from that.

---

[6] The single employer or alter ego claim is also a substantial one. IW admits that it is simply a business name for Beauregard. IW claims that Beauregard's wife Susan is the "owner" of CWS, thus establishing family ownership. The Union will assert that IW and CWS share the same office and same address, telephone number, accountant, lawyer, share common employees and clients, and according to this Complaint, sought to bid the same jobs. In this litigation IW and CWS claim that CWS went out of business in January 2003. The Union will allege that IW a d/b/a of Beauregard, was revived by Beauregard and took over the CWS lease within weeks of the alleged demise of CWS. All of this occurred at a time when CWS owed tens of thousands of dollars in contributions to the Local 7 Benefit Funds for health care and pension benefits for the work that the CWS ironworkers had already performed. Where a union company under common management and control goes out of business, and a nonunion company under common management promptly fills the void, but avoid the collective bargaining agreement, such is the stuff of which single employer or alter ego claims are made. See Penntech Papers v. NLRB, 706 F.2d 18 (1st Cir. 1983) (standard under federal labor law).

There is a very good reason why the two cases to consider the propriety of the same counsel representing plaintiffs and coconspirators in an antitrust context have found the arrangement to be unmanageable, and the situation unseemly.  See <u>Estates Theatres, Inc. v. Columbia Pictures, Inc</u>., 345 F.Supp. 93 (S.D.N.Y. 1972);  <u>Chateau Deville Productions, supra</u>.

> Permitting plaintiffs' counsel to proceed in this manner would expose them to competing influences and loyalties. Moreover, even if, as plaintiffs assert, no glaring conflict exists at this time, when adverse interests are at stake it is not possible to predict what conflicts might arise as the litigation proceeds. It is better to forestall such a potential danger early in the litigation than to wait until the parties are deep in the discovery process.
>
> Coupled with this potential exposure to competing influences is the appearance of impropriety that follows from multiple representation in a case like this.

<u>Id.</u>  (footnotes omitted).

Finally, the Plaintiffs themselves recognize that disqualification is proper – even where there is waiver and consent – when the action brought is a class action.  <u>See</u> Plaintiffs' Reply Brief at 10, <u>citing Chateau Deville Productions, supra.</u>  Here the Plaintiffs have not sought to certify a class, but the relief they seek – an injunction ending the Job Targeting Program – is class-wide relief.  Moreover, none of the cases cited by either party deal with the unusual circumstance presented here, namely that the Plaintiffs and the alleged co-conspirators are also alleged to be either 1) bound to the same contract or 2) single employer/alter egos.  The Plaintiffs' gamble is that they can use the CWS evidence but pay no price for it.  But if the Union Defendants succeed in establishing that the Plaintiffs are the contractual or alter egos of an alleged coconspirator, the Plaintiffs' case begins to unravel.  It is that fact which renders any representation of the Plaintiffs in this case so inherently fraught with conflict and divided loyalties.

CONCLUSION

The representation of multiple clients with adverse interests in this action and another pending case raise serious questions concerning the ability of counsel to represent all parties. The Union Defendants were obligated to raise the issue at this time, since the conflict was evident on the face of the pleadings, delay would serve no interest and would invite a claim of waiver. The matter is now committed to the sound discretion of the district court.

In exercising that discretion, the Union Defendants ask that the Court consider one additional factor. The net effect (if not the goal) of this litigation, if successful, could be to cripple a labor organization. The damages the Plaintiffs seek come not from investments or profit margins, but from the dues per hour paid to Local 7 by the individuals who build the roads and bridges upon which we travel and the buildings within which we work. The primary act with which these union members have been charged is using the money they earn – their dues – to assist their employers (who pay decent wages and provide health care and pension benefits) to win bids. Boiled down to its essentials, the Plaintiffs argument is that the employees should give money <u>not</u> to the employers who hire them, but that that they should give it to employers who never will.

The Plaintiffs argue that the question of attorney disqualification should be reviewed with the utmost care and scrutiny. This is the second point upon which the Union Defendants and the Plaintiffs agree. These employers claim that the dues money of the union members should be awarded to them, employers whose methods of competition (driving down wages and benefits) deprive the union members of their livelihood. The stakes are vast for the structure of the industry, including the union

members and all the employers not named as parties, both union-affiliated and not. Under these circumstances, does not the public have some interest in knowing that those who prosecute the case are wholly free from conflict? How else many the public and the litigants have confidence in our system of justice?

/s/ Paul F. Kelly
Paul F. Kelly (BBO #267000)
Mary T. Sullivan (BBO #487130)
SEGAL, ROITMAN & COLEMAN
11 Beacon Street
Boston, MA 02108
(617) 742-0208

/s/ Mickey Long
Mickey Long (BBO #634388)
193 Old Colony Avenue
Box E-1
South Boston, MA 02127
(617) 269-0229

ATTORNEYS FOR IRON WORKERS LOCAL 7 AND CHARLES WRIGHT

Dated: February 4, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the Surreply in Opposition to Motion Pro Hac Vice was served upon Michael E. Avakian, Esq., Smetana & Avakian, 5211 Port Royal Road, Suite 103, Springfield, VA 22151; Carol Chandler, Esq. and Geoffrey R. Bok, Stoneham, Chandler & Miller LLP, 99 High Street, Boston, MA 02110 and Mickey Long, Esq., Ironworkers Local 7, 193 Old Colony Avenue, South Boston, MA 02127 via first class mail, postage prepaid, this 4th day of February, 2005.

/s/ Mary T. Sullivan
Mary T. Sullivan

Pfk/4829/04528/pleadings/surreplymotionprohacvice.doc