UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN STEEL ERECTORS, INC., et al. ) | |
| Plaintiffs, ) | |
| v. ) | |
| LOCAL UNION NO. 7, INTERNATIONAL ) ASSOCIATION OF BRIDGE, ) STRUCTURAL, ORNAMENTAL & ) REINFORCING IRON WORKERS, and ) | Case No. 1:04-cv-12536-RGS |
| CHARLES WRIGHT, and ) | |
| STEEL ERECTION AND ORNAMENTAL ) IRON INDUSTRY ADVANCEMENT FUND, ) | |
| Defendants. ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
IRON WORKERS LOCAL 7'S MOTION TO DISMISS
COUNTS V-VII OF PLAINTIFFS' COMPLAINT**

Defendant Iron Workers Local 7 ("Local 7," the "Union" or "Defendant") respectfully submits this Memorandum in reply to Plaintiffs' Response to Local 7's Motion to Dismiss Counts V-VII of Plaintiffs' Complaint ("Response"). This Reply Memorandum is filed with leave of the Court.

**A. Plaintiffs' Response Itself Demonstrates the Dominance of Federal Regulation of These Matters, and It Fails to Identify Separate and Compelling State Interests.**

Plaintiffs' Complaint focuses its 156 paragraphs of factual allegations on federal claims, including alleged federal anti-trust, secondary boycott and Davis Bacon violations,

allegedly perpetrated by Local 7 and co-conspiring employers."[1] The three state law counts merely incorporate by reference the same factual items, realleging the same controversies labeled as economic torts.

Local 7's Motion to Dismiss and supporting Memorandum focused on the fact that the Complaint had an overwhelming federal focus, and that Garmon preemption required that state claims reflect "deeply rooted state interests" giving rise to "different controversies." This argument was a virtual invitation to Plaintiffs to respond and provide support on either point. In order to defeat the claim of Garmon preemption, Plaintiffs were required to either refute Local 7's citations to Supreme Court and appellate declarations preempting all such state economic regulation, or point out where the laws of Maine, Massachusetts, New Hampshire or Rhode Island somehow created a separable "controversy."

Plaintiffs' Response does neither. Instead the bulk of their Response again debates what *federal* law brings to bear on the anti-trust, job targeting and secondary boycott allegations.[2] Resp., at 3-5, 18-34. The Response's preemption discussion repeatedly points out categories of state-regulated conduct that are not alleged in their own Complaint. Plaintiffs state, correctly, that state regulation of "rioting, mayhem, arson" and other violence is not preempted, and oftentimes there is no preemption of state torts of

---

[1] The unions and the co-conspiring employers allegedly created the "Industry Advancement Fund" and administered the "Job Target Fund." The docket most recently reveals that Plaintiffs voluntarily dismissed all claims against Defendant Steel Erection and Ornamental Iron Industry Advancement Fund. See Compl., pars. 9, 10.

[2] The federal law issues are no doubt important at the outset. Local 7's own Memorandum deals with those issues in arguing that much of the alleged conduct is *either* "actually protected" union activity or at least arguably prohibited for Garmon purposes. However, once the arguments of both Defendants and Plaintiffs have established that the Union's conduct is at least arguably protected (and arguably prohibited, according to Plaintiffs' LMRA Count), the crux of the debate then shifted, presumably, for Plaintiffs to identify the overriding state interests and/or separate controversies.

malicious libel, trespass and intentional infliction of emotional distress. Resp., at 5, 7-11, 16-17. Plaintiffs are correct in stating the Union does not have "the temerity" to assert that rioting and mayhem are "beyond the pale of this Court's authority." Resp., at 5. However, what Plaintiffs fail to acknowledge, is that rioting, arson, malicious libel, trespass, intentional infliction of emotional distress, and mayhem are not alleged in this Complaint.

Of course these straw men -- rioting, arson, malicious libel, trespass, intentional infliction of emotional distress, and mayhem -- are easily knocked down by Plaintiffs, because those claims are, indeed, rarely preempted. Those claims simply do not assist Plaintiffs in pursuing the purely *economic torts* which are alleged in this case (albeit by bulk reference), which Local 7 does indeed claim are preempted, and which federal courts have indeed found preempted. Just as importantly, the rare cases where federal courts have allowed potentially broad-based "interference" claims to go forward under state law turn out to be cases where the "interference" amounted to an episode of extreme violence, mayhem or one of the other recognized Garmon exceptions. See, e.g., Prater v. United Mine Workers of Am., Districts 20 & 23, 793 F.2d 1201 (11th Cir. 1986) (discussed infra). The Plaintiffs include other cases where the mix included both violent interference and the more common rough and tumble of labor pressure, but in those cases, federal courts took great care to make sure that the non-preempted elements of state regulation (e.g., for violence) were not allowed to overlap or intermingle with *other* elements of conduct that should *not* be subject to separate state law regulation. See Resp., at 11-13; see also, e.g., United Mine Workers v. Gibbs, 383 U.S. 715 (1966); Amoco Oil Co. v. Local 99, Int'l Bhd. of Elec. Workers, AFL-CIO, 536 F. Supp. 1203 (D.R.I. 1982).

3

There is only the slimmest reed of "violence" from which Plaintiffs now attempt to avoid preemption, based on one allegation in 4-9 years of events, among twenty-nine (29) projects.  See Local 7's Mem., at 25.  Plaintiffs now cite Prater, supra, to support the contention that state claims for tortious interference with economic relations are not preempted by Garmon.  Prater, however, is completely distinguishable.  It involved a §303 claim and state claims for assault, battery, false imprisonment, and interference with economic relations that the court determined "[arose] out of a common nucleus of fact." Id. at 1208.  This "common nucleus of fact" involved an exceptionally violent coal strike.  Union members not only badly damaged the employer's equipment; they also approached a secondary employer's work site "armed with clubs and guns," and demanded that the workers cease mining coal, conduct that ultimately required the intervention of the Alabama Highway Patrol to "rescue[]" the workers.  Id. at 1203.  The contrast with this case could not be more striking, where the Complaint contains no count for assault or violence, where no individual defendant is even accused of such, and where the Complaint in its full breadth is about job targeting, alleged Davis Bacon violations, job monitoring, and job-by-job efforts to persuade owners to build union, all of which has been alleged as a "boycott."

### B. Plaintiffs' Citations to Cases Involving Other Categories of Preemption Analysis Are Inapposite.

The Response's stream of arguments includes case descriptions that are completely outside the Garmon and Machinists framework.  They are confusing, at best, and at worst amount to red herrings that divert the Court's attention from the actual issues in dispute.  That is, just as Plaintiffs ground their arguments on facts about mayhem, libel, trespass and tortious infliction of emotional distress, facts not whispered in the Complaint, they cloud

4

the Response with analyses involving §301 (i.e., arguing that §301 is not a basis to preempt state claims) and §303 (which unquestionably provides jurisdiction over the federal LMRA claims), neither of which is disputed in Defendant's Motion.

For example, Plaintiffs rely on an analysis of Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399 (1988). Resp., at 14. Lingle, however, is not a case about Garmon preemption at all. It involves §301 of the Labor Act, whose preemptive force over some types of contract-related state law claims involves an entirely distinct doctrine of preemption, never raised in Defendant's Motion.[3] See William E. Arnold Co. v. Carpenters Dist. Council of Jacksonville and Vicinity, 417 U.S. 12, 16 (1974) ("[W]e have said that the Garmon doctrine is 'not relevant' to actions within the purview of § 301, which may be brought in either state or federal courts[.]") (citing Local 174 Teamsters v. Lucas Flour Co., 369 U.S. 95, 101 n.9 (1962); Dowd Box Co. v. Courtney, 368 U.S. 502, 506 (1962)). Local 7's Motion to Dismiss expressly maintains that just three types of federal preemption deprive the court of jurisdiction over Plaintiffs' state-law claims in this case. These are federal preemption doctrines based on (1) conduct that is *actually* protected by the NLRA (Brown v. Hotel and Restaurant Employees and Bartenders Int'l Union, 468 U.S. 491, 501 (1984)), (2) conduct that is *arguably* protected or prohibited by the NLRA (San Diego v. Bldg. Trades v. Garmon, 359 U.S. 236 (1959)), and (3) conduct that Congress intended to be unregulated (Machinists v. Wisconsin Employment Relations Comm'n, 427 U.S. 132 (1976)). The Response's citation to §301 authority simply clouds

---

[3] In the midst of its analysis of §301 preemption issues, Lingle was one of many cases that attempted to avoid confusion by referencing the separate doctrines of Garmon and Machinists preemption. Id. at 408-9, n.8.

the relevant issues of whether subjecting Local 7's conduct to state-based economic torts is Garmon or Machinists preempted.[4]

Similarly, in its discussion of the history of the Garmon preemption, Plaintiffs make much of the limited relief available in a National Labor Relations Board action based on §8(b)(4) secondary boycott claims and the concurrent jurisdiction of the courts to provide damages for such violations. Local 7 continues to acknowledge that courts generally have jurisdiction to hear §303 claims based on §8(b)(4) conduct, but not *state law claims* for the secondary quality of these episodes. See Gibbs, supra at 729. Such irrelevant discussion only further muddies the water. The relevant issue is whether state economic regulation of Local 7's conduct is preempted under Garmon.

**C. Several Case Citations in the Plaintiffs' Response Are Erroneous**.

Beyond matters of emphasis or nuance, Plaintiffs' Response simply misstates the holdings of cases dealing with preemption of economic torts.

Plaintiffs cite Mobile Mechanical Contractor Assoc. v. Carlough, 664 F. 2d 481, 489 (5th Cir. 1981) as itself having "cited UAW v. Russell, 356 U.S. 634 (1958), to reaffirm that the state tort of wrongful interference with a lawful business relationship was not preempted in the situation of union-stranger employer setting." See Resp., at 11-12. In fact, Mobile Mechanical found the state claims of tortious interference were entirely preempted under Garmon. The Court of Appeals *distinguished* UAW v. Russell as having involved "the physical obstruction of a plant entrance and threats of violence", and the Fifth Circuit then emphasized that distinction by noting that in subsequent cases the

---

[4] Furthermore, Plaintiffs do not separately address Machinists preemption issue, but rather mention the Machinists preemption doctrine within their argument that the state claims are not preempted under Garmon. See Resp., at 14-15.

Supreme Court itself characterized Russell as relying on the presence of violence.  Mobile Mechanical, supra, at 489, n. 12.

Plaintiffs cite Gibbs, supra, at 725, for the supposed proposition that in a §303 suit for secondary boycott damages, "state causes of action such as *interference with prospective economic advantage* arising out of the same operative facts are added to the federal claim."  Resp., at 17 (emphasis supplied).  In fact, Gibbs found entirely to the contrary with regard to any such *economic* harms or torts.  Gibbs did establish the potential for pendant jurisdiction with respect to "violence and imminent threats to the public order", Gibbs also held that by contrast to allegations of violence, allegations of economic harm, "conspiracies" and *other* consequences of the same picketing could *not* be heard in that §303 suit.   Gibbs, supra, at 721, 729, 734 (finding the trial court erred, when "in charging the conspiracy claim, the court stressed that the 'unlawfulness' of the picketing, rather than violence as such, would be controlling").

Plaintiffs' citation of Teamsters v. Morton, 377 U.S. 252 (1962) in Section D of its Response is equally misplaced.  Resp., at 17.  Morton held that §303 claims do not offer claimants punitive damages or injunctive relief and did not provide a foundation for pursuit of state-based economic torts claims for damages.  To the contrary, the Supreme Court ruled that federal remedial limitations *preempted* such state law remedies, even where the same conduct may have violated both bodies of law.  Id. at 260-61.

A final example involves the sole instance in which Plaintiffs' Response actually cites the state law they are trying to preserve.  Plaintiffs cite Amoco Oil Co., supra, in support of their position that their state-law claims of "wrongful interference with a lawful business relationship" are not preempted in the "situation of union-stranger setting."  Resp.

7

at 11-12.  In fact, <u>Amoco Oil Co.</u> fails to even reach issues of preemption beyond state claims for damages for the violent conduct that permeated that case.  The District Court in <u>Amoco</u> expressly requested further briefing on the issue of whether federal law preempted state claims, including tortious interference with business relationships, beyond the damage claim for the violent conduct itself.  <u>Id.</u> at 1208, 1224, n.36.  The Court reserved those preemption issues even in the face of fairly extreme allegations of threats of violence, blocking entrances, breaking windows, throwing rocks, strewing nails across driveways, and trespassing.

8

## CONCLUSION

For the foregoing reasons, Defendant Local 7 respectfully requests that Counts V-VII of the Complaint be dismissed with prejudice.

Respectfully submitted,

LOCAL UNION NO. 7,
INTERNATIONAL ASSOCIATION
OF BRIDGE, STRUCTURAL,
ORNAMENTAL & REINFORCING
IRON WORKERS

By its attorneys,

/s/Paul F. Kelly
Paul F. Kelly (BBO #267000)
Burton E. Rosenthal (BBO #429220)
Stephanie R. Pratt (BBO #6551058)
SEGAL, ROITMAN & COLEMAN
11 Beacon Street
Boston, MA 02108
(617) 742-0208

/s/Mickey Long
Mickey Long (BBO #634388)
193 Old Colony Avenue
Box E-1
South Boston, MA 02127
(617) 269-0229

Dated: April 4, 2004

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of foregoing Reply Brief in Support of Defendant Iron Workers Local 7's Motion to Dismiss Counts V-VII of Plaintiffs' Complaint was served upon Michael E. Avakian, Esq., Smetana & Avakian, 5211 Port Royal Road, Suite 103, Springfield, VA 22151; Carol Chandler, Esq. and Geoffrey R. Bok, Esq., Stoneman, Chandler & Miller LLP, 99 High Street, Boston, MA 02110 and Mickey Long, Esq., Ironworkers Local 7, 193 Old Colony Avenue, South Boston, MA 02127 via first class mail, postage prepaid, this 4th day of April, 2005.

/s/ Burton E. Rosenthal
Burton E. Rosenthal

L:/PKelly/4829/04528/Pleadings/Local 7 MTD Reply -- FINAL.doc