UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERICAN STEEL ERECTORS, INC., et al. )<br><br>Plaintiffs, )<br><br>v. )<br><br>LOCAL UNION NO. 7, INTERNATIONAL )<br>ASSOCIATION OF BRIDGE, )<br>STRUCTURAL, ORNAMENTAL & )<br>REINFORCING IRON WORKERS )<br><br>Defendant ) | Case No. 1:04-cv-12536-RGS |

**STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF DEFENDANT IRON WORKERS
LOCAL 7's MOTION FOR JUDGMENT ON THE PLEADINGS
OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT ON
JOB TARGETING CLAIMS IN COUNT IV OF THE COMPLAINT**

Pursuant to Local Rule 56.1, Defendant Iron Workers Local 7 ("Local 7" or the "Union") hereby states the material facts of record as to which Local 7 contends there is no genuine issue to be tried.

1. *Job targeting funds reduce the labor costs of Local 7 signatory contractors on a particular job.* Hurley Aff. ¶ 26 ("Local 7 regularly provided its signatory contractors with job targeting funds for the very reason that Local 7 did not maintain agreements with higher tier employers who controlled the work and, in the absence of a job targeting funds, the union signatory contractor might lose the job to a contractor with a lower wage and benefits package."); Compl. ¶ 60 ("[O]n many occasions, Non-Labor businesses benefit from the conspiracy by engaging in the practice of using the significantly lower price on a job it receives from Plaintiffs on which job it does not intend to use Plaintiffs or any Non-Local 7 Contractor, to

1

enter into agreements with Local 7 and/or Local 7 contractors, to negotiate downwards the price for the same job from a Local 7 Contractor. Rather, they often use Plaintiffs and other Non-Local Contractors only to lower the Local 7 Contractor price to induce job target subsidies."); Compl. ¶ 34 ("These [job targeting] subsidies are allegedly available only to steel contractors who are parties to the collective bargaining agreement with Local 7 and are intended to assist those employers in meeting the competition from non-union structural steel erectors.").

      2. ***Job targeting funds are awarded on a job-by-job basis.*** Hurley Aff. ¶ 19 ("On many occasions, Local 7 approached non-signatory erectors, fabricators and developers or owners about obtaining an individual job for its members or for signatory contractors, in part, because Local 7 did not have any prior agreements that would otherwise prevent jobs from being awarded non-union. Local 7's job-by-job solicitations were oftentimes successful, and oftentimes unsuccessful, and were always limited to the particular job at hand."); James Coyle Affidavit ("Coyle Aff.") ¶ 10 ("On many occasions, Local 7 approached non-signatory erectors, fabricators and developers or owners about obtaining an individual job for its members or for signatory contractors, in part, because Local 7 did not have any prior agreements that would otherwise prevent jobs from being awarded non-union. Local 7's job-by-job solicitations were oftentimes successful, and oftentimes unsuccessful, and were always limited to the particular job at hand."); Coyle ¶ 11 ("Local 7 regularly provided its signatory contractors with job targeting funds for the very reason that Local 7 did not maintain agreements with higher tier employers who controlled the work and, in the absence of a job targeting fund, the union signatory contractor might lose the job to a contractor with a lower wage and benefits package. On jobs

where this succeeded in obtaining the work, the use of job targeting funds for the individual job did not result in any agreement between Local 7 and the owners, general contractors, developers or fabricators that would prevent those companies from using non-Local 7 signatory steel erectors on any future job, or even a subsequently bid portion of the job.  In numerous cases, where Local 7 won part of a steel erection job on a particular jobsite, it later lost a subsequent steel erection job on the same jobsite.  Local 7's job targeting program was always maintained and administered by Local 7.  No employers were involved in the administration of the program, including the disbursement of funds or other operations of the program.  The targeted jobs were always selected by Local 7.  The decision whether to target and the amount of money provided was always determined exclusively by Local 7.  Information about a particular job was gathered from both business agents and employers, but the decision to target and the amount of any money was always been made by Local 7 and no one else."); Compl. ¶¶ 67-139 (alleging twenty-five (25) or more separate instances in which Local 7 allegedly sought and obtained work for its members by appealing to various fabricators and developers and by using job targeting funds).

Respectfully submitted,

LOCAL UNION NO. 7, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL & REINFORCING IRON WORKERS

By its attorneys,

/s/Paul F. Kelly
Paul F. Kelly, Esq. (BBO #267000)
Burton E. Rosenthal, Esq. (BBO #429220)
Indira Talwani, Esq. (BBO # 645577)
Stephanie R. Pratt, Esq. (BBO #655108)
SEGAL, ROITMAN & COLEMAN
11 Beacon Street
Boston, MA 02108
(617) 742-0208

/s/Mickey Long
Mickey Long, Esq. (BBO #634388)
193 Old Colony Avenue
Box E-1
South Boston, MA 02127
(617) 269-0229

Dated: March 20, 2006

### CERTIFICATE OF SERVICE

    I hereby certify that this Statement of Undisputed Facts in Support of Local 7's Motion for Judgment on the Pleadings or in the Alternative for Partial Summary Judgment on Job Targeting Claims in Count IV of the Complaint filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on March 20, 2006.

/s/ Paul F. Kelly
Paul F. Kelly, Esq.