# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ | ) |
| AMERICAN STEEL ERECTORS, INC., et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| LOCAL UNION NO. 7, INTERNATIONAL | ) |
| ASSOCIATION OF BRIDGE, | )    Case No. 1:04-cv-12536-RGS |
| STRUCTURAL, ORNAMENTAL & | ) |
| REINFORCING IRON WORKERS, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## OPPOSITION BY IRON WORKERS LOCAL 7 TO PLAINTIFFS' MOTION FOR ENLARGEMENT OF TIME TO FILE RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Iron Workers Local 7 ("Local 7") hereby opposes Plaintiffs' Motion for

Enlargement of Time to File Response to Defendant's Motion for Summary Judgment.  Federal

Rule of Civil Procedure 16(b) and Local Rule 16.1(G) require "a showing of good cause" for

modifying a schedule issued by the Court.  Here, the reason underlying Plaintiffs' last-minute

request to modify the schedule set forth in the agreed-upon Proposed Joint Discovery and

Dispositive Motion Plan and in the Court's Scheduling Order is Plaintiffs' counsel's own delay

in initiating any discovery.  That delay does not constitute good cause.

Local 7 respectfully submits as follows:

1) The legal and factual matters at issue in Defendant's Amended Motion for Summary

   Judgment were presented in detail to Plaintiffs over five months ago, on March 20, 2006,

   when Local 7 served: (1) a Motion for Summary Judgment on Counts I-III of the

   Complaint, supported by a fifty-two (52)-page Memorandum; (2) a Motion for Partial

Summary Judgment on Count IV of the Complaint, supported by a sixteen (16)-page Memorandum; (3) a Statement of Undisputed Facts; and (4) the Affidavits of four witnesses.

2) At a status conference held on March 21, 2006, the Court directed the parties to file a written joint recommendation for a discovery plan permitting a 150-day period of discovery in anticipation of all dispositive motions being joined at the expiration of discovery.

3) In order to assure that the dispositive motions would be joined at the expiration of the 150-day discovery period, the parties' Proposed Joint Discovery and Dispositive Motion Plan required Defendant to amend or renew their motion for summary judgment and/or judgment on the pleadings by August 1, 2006, and allowed Plaintiffs to file their Opposition on August 31, 2006, when discovery closed.   The effect of the jointly proposed schedule was far more onerous on Defendant than on Plaintiffs:   Defendant was compelled to complete its discovery within 120 days and, at the same time, to prepare any amendment to its dispositive motions, while the schedule allowed Plaintiffs either to work under the same 120-day discovery schedule, and then have a full month to prepare their response to the dispositive motions without other obligations in this case, or alternatively, to take the full 150 days for discovery, and prepare their response concurrently with discovery.

4) On April 20, 2006, the Court issued its Electronic Order adopting the parties' Joint Submission pursuant to Local Rule 16.1 and, in accordance with that Scheduling Order, the Court denied without prejudice Defendant's Motion for Summary Judgment and

Motion for Judgment on the Pleadings, and permitted those motions to be amended by August 1, 2006, with oppositions due on August 31, 2006.

5) Defendant has diligently complied with the Scheduling Order.  Plaintiffs failed to provide in a timely manner the full information required in their automatic disclosures (initially omitting, for example, the subjects of discoverable information the persons identified are likely to have), or the information sought through Defendant's First Set of Interrogatories (reciting instead the allegations in the Complaint and requiring Defendant's counsel to attempt to glean additional information through their review of tens of thousands of pages of documents and through depositions).  See Plaintiffs' [Initial] Automatic Disclosure, attached hereto as Exhibit A; Plaintiffs' Response to Defendant's First Set of Interrogatories, attached hereto as Exhibit B.  Despite the scheduled birth of his child, Plaintiffs' lead counsel insisted on being present (rather than using local counsel) for Defendant's counsel's review of Plaintiffs' documents, and asked Defendant's counsel to postpone that review.   Defendant's counsel accommodated that request, thus being placed in the position of having to review huge numbers of documents over four consecutive days immediately prior to the 30(b)(6) depositions of the Plaintiffs scheduled for July.   At the same time, Defendant's counsel prepared Local 7's Amended Motion for filing on August 1, 2006, in accordance with the agreed-upon schedule and the Court's Order.

6) Despite the clear discovery schedule, despite being provided with a full briefing of Defendant's legal arguments in March 2006, and despite being provided with extensive information as part of Local 7's automatic disclosure obligations (including the identity of witnesses whose depositions have not been noticed this month, and including all Local

7 files for the projects identified in the Complaint), Plaintiffs' counsel undertook <u>no</u> discovery, other than propounding one set of Requests for Documents (and, on one day, reviewing some of the documents Defendant made available in response), <u>for the first 110 days of the discovery period</u>. On July 21, 2006, Plaintiffs' counsel finally noticed the deposition of Charlie Wright, an individual named as a Defendant in the original Complaint filed by Plaintiffs in 2004. The deposition was noticed for August 18, 2006, a date on which the witness was not available. The parties promptly agreed to move the deposition to August 23, 2006.

7)  On July 26, 2006, Plaintiffs served on Defendant their Second Set of Requests for Production of Documents, First Set of Requests for Admissions, and First Set of Interrogatories. Under Federal Rules of Civil Procedure 6(e), 33(b)(3), 34(b) and 36(a), responses are due to be mailed on August 28, 2006.

8)  On August 1, 2006, Defendant filed its Amended Motion for Summary Judgment. The Motion for Summary Judgment is supported by a Memorandum which raises, for the most part, the very same legal issues set forth in the original two motions filed by Local 7. The Amended Motion is supported by the originally submitted Affidavits, excerpts from the 30(b)(6) Depositions, and Plaintiffs' Responses to Defendant's Interrogatories. Defendant proffered no new Affidavits. In the main, Defendant has filed the same Undisputed Material Facts as supported the Amended Motion, with additional citations and quotations from the material obtained through discovery.

9)  On or about August 4, 2006, Plaintiffs' counsel served by mail: (1) a Notice of Rule 30(b)(6) Deposition to Defendant, noticing its deposition for August 29, 2006; (2) copies of two deposition subpoenas of third parties seeking their appearance and production of

documents on August 22, 2006; and (3) copies of two depositions subpoenas of third parties seeking their appearance and production of documents on August 24, 2006. Defendant's lead attorney was not available on August 29, 2006, and accordingly, that deposition was rescheduled for the following day.

10) On August 15, 2006, Plaintiffs' counsel sent by facsimile a copy of another deposition subpoena, seeking another witness' appearance at a deposition on August 25, 2006. This witness' Affidavit in Support of Defendant's Motion for Summary Judgment was served with Defendant's original motion, on March 20, 2006. Although the subpoena is dated August 7, 2006, no information has been provided as to whether it has yet been served.

WHEREFORE, Plaintiffs' delay in initiating discovery does not constitute good cause for extending their time to respond to Defendant's Amended Motion for Summary Judgment, and Plaintiffs' motion to extend time should be denied.

Respectfully submitted,

LOCAL UNION NO. 7, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL & REINFORCING IRON WORKERS

By its attorneys,

/s/Paul F. Kelly
Paul F. Kelly, Esq. (BBO #267000)
Burton E. Rosenthal, Esq. (BBO #429220)
Indira Talwani, Esq. (BBO # 645577)
Stephanie R. Pratt, Esq. (BBO #655108)
SEGAL, ROITMAN & COLEMAN
11 Beacon Street
Boston, MA 02108
(617) 742-0208
pkelly@segalroitman.com
brosenthal@segalroitman.com
italwani@segalroitman.com
spratt@segalroitman.com

/s/Mickey Long
Mickey Long, Esq. (BBO #634388)
193 Old Colony Avenue
Box E-1
South Boston, MA 02127
(617) 269-0229
mickeylong@gis.net

Dated:  August 17, 2006


## CERTIFICATE OF SERVICE

I hereby certify that this Opposition by Iron Workers Local 7 to Plaintiffs' Motion for Enlargement of Time to File Response to Defendant's Motion for Summary Judgment filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on August 17, 2006.

/s/ Indira Talwani
Indira Talwani, Esq.

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN STEEL ERECTORS, INC., *et al.*, <br><br>        Plaintiffs, <br><br>v. <br><br>LOCAL UNION NO. 7, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL & REINFORCING IRON WORKERS, *et al.*, <br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No. 04-cv-12536-RGS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' RULE 26(a)(3) DISCLOSURE

Plaintiffs, by and through counsel of record, hereby provides the following Initial

Disclosures pursuant to Fed. R. Civ. P. 26(a)(1), as follows:

(A)    Persons having discoverable information that Plaintiffs will use to support their claims that Local 7 entered into unlawful combinations and agreements with employers:

Donald A. Morel
Ajax Construction Co.
2833 Victory Highway
Harrisville, RI 02830
401-765-6500

James Read
American Aerial Services, Inc.
33 Allen Avenue Extension
Falmouth, ME 04105
207-797-8987

Ray Cilley
American Steel Erectors, Inc.
Depot Street
P.O. Box 185
Greenfield, NH 03047-0185
603-547-6311

Mark Harris
Arctic Construction, Inc.
Falmouth, ME 04105
207-878-1131

Jeff Mitchell
ARC Erecting
16 Parkway North
Brewer, ME 04412

Michael Guillemette
Bedford Ironworks
30 Rundlepp Hill Road
Bedford, NH 03110
603-621-9663

Walter Belmonte
Bel-Lin Corporation
6 Perley Evans Drive
Randolph, MA 02368
781-986-7587

Elio Perrazzino
B.K. Iron Works, Inc.
540 Sagard
St. Bruno, QC J3V 6C2
540-441-5484

Marty Cardon
Builders Resource Inc.
101 Nasonville Road
Nasonville, RI 02830
401-762-0262

Patricia G. Caparco
Capco Steel Corporation
33 Acorn Street
Providence, RI 02903
401-861-1220

James Gage
Cape & Island Steel
200 Airport Way
Hyannis, MA
508-775-2022

John Paulding
Cape & Island Steel
200 Airport Way
Hyannis, MA
508-775-2022

Gary Capone
Capone Iron Works
20 Turcote Memorial Drive
Rowley, MA 01969
978-948-8000

Stephen J. Capone
Capone Iron Works
20 Turcote Memorial Drive
Rowley, MA 01969
978-948-8000

J. Robert Chipman
Capone Iron Works
20 Turcote Memorial Drive
Rowley, MA 01969
978-948-8000

Dorothy Cives
Cives Corporation
Augusta, ME
207-622-6141

Joseph Davey
Congress Group Construction
193 Quarry Street
Quincy, MA 02169

Susan Beauregard
Construction Welding Services, Inc.
4 Campground Street
Sterling, MA 01564
978-833-8111

CWC Builders, Inc.
375 Ward Street
Newton, MA 02159
617-965-2800

Daniel Koury
Daniel Koury Construciton, inc.
93 Gilbane Street
Warwick, RI 02886
401-738-2100

D&A Steel, Inc.
890 West Street
Attleboro, MA 02703

Ann Gavin
FAMM Steel, Inc.
Rindge, New Hampshire
603-878-1225

Mat Griffin
Griffin Steel
PO Box 132
Buzzards Bay, RI 02861

Harvey Construction
10 Harvey Road
Bedford, NH 03110
603-624-4600

Helen Bacon
H.B. Welding, Inc.
117 Webster Street
Pawtucket, RI 02861
401-727-0323

Mr. Glen Pisani
D.F.M. Industries, Inc.
P.O. Box 461
Wrentham, MA 02093-0461
508-384-8194

Patrick Collins
H.V. Collins Company
99 Gano Stree
Providence, RI 02906
401-421-4080

Jeff Pease
Industrial Enterprises
Bangor, ME 04401

Edwin Wright
Iron Workers Local 7
196 Old Colony Avenue
South Boston, MA 02127
617-268-4777

Jay Hurley
Iron Workers Local 7
196 Old Colony Avenue
South Boston, MA 02127
617-268-4777

Daniel LaPinte
Kanatel Industries
Quebec

March River Steel
Winterport. ME 04496

David G. Dankens
M.F. Reynolds, Inc.
42 Beacon Street
Boston, MA
781-393-4800

Ed Roczniak
Metro West
730 Madison Street
Wrentham, MA 02093
508-384-5000

Brian Kavanugh
McBrie Construction
160 Sylvan Street
Danvers, MA 01923
978-646-0097

Kevin Kelly
McMillan Co.
17 Elm Street
Keane, New Hampshire
603-352-3070

NH Steel Erectors
17 Lamy Drive
Goffstown, NH 03045
603-6668-3464

North American Steel
1 Gwinnett Road
Peabody, MA 01960

Brian Nearney
Northeast Steel Erectors
61 Brown Street
North Kingston, RI 02852
401-294-3375

Eric Alhborg
O. Alhborg and Sons
48 Molter Street
Cranston, RI 02910
401-467-6300

Phoenix Iron Works
197 Loudon Road
Concord, NH 03301

Jacque
Sturctures Derek/Enterprise Precision
652 Ave. St. Marie
Quebec, Canada

Superior Steel, Inc.
PO Box 1090
Barnstable, MA 02630

Randy Beliveau
Universal Steel Erectors
149 Reservoir Drive
Weare, New Hampshire 03281
603-529-5100

Peter Zichelle
Zichelle Steel Erectors
235 Viscoloid Avenue
Leominster, MA 01453
978-534-0845


      (B)    Description of Documents Relevant to the Disputed Facts located at Plaintiffs' counsel's office:

      Plaintiffs possess the following categories of documents:

      Plaintiffs bid Sheets and invoices on projects bid on and/or terminated by owners and customers with the Plaintiffs.

      LM-2 Reports of Ironworkers Local 7.

      Local 7 handouts

      Various correspondence from Local 7 and third-parties and accounting information.

      Various unfair labor practices filed against Local 7.

(C)    <u>Computation of Damages</u>:

      Plaintiffs have no precise computation of the market impact on damages at this time. This information is pending discovery of final contract costs on projects lost from third-parties in the relevant market and from Defendant.

(D)    <u>Insurance Agreements</u>:  No documents.

Respectfully submitted,

AMERICAN STEEL ERECTORS, INC.,
AJAX CONSTRUCTION CO.,
AMERICAN AERIAL SERVICES, INC.,
BEDFORD IRONWORKS, INC., and
D.F.M. INDUSTRIES, INC.

By their attorneys,

Carol Chandler (BBO # 080660)
Geoffrey R. Bok (BBO # 550851)
STONEMAN, CHANDLER & MILLER LLP
99 High Street
Boston, MA 02110
(617) 542-6789

Michael E. Avakian
SNETANA & AVAKIAN
3211 Port Royal Road, Suite 103
Springfield, VA 22151
703-321-9181
703-321-9325 - Fax
Dated: April 12, 2006                    (Admitted *Pro Hac Vice*)

## CERTIFICATE OF SERVICE

I hereby certify that PLAINTIFF Rule 26(a)(3) Initial Disclosures was served, via email and U.S. Mail on this the 12th day of April 2006, to the counsel of record in the above styled case named below:

Paul F. Kelly
Segal, Roitman & Coleman
11 Beacon Street
Boston, MA 02108
pkelly@segalroitman.com

Michael E. Avakian

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN STEEL ERECTORS, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> LOCAL UNION NO. 7, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL & REINFORCING IRON WORKERS. <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 04–cv-12536-RGS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' RESPONSE TO DEFENDANT IRON WORKERS LOCAL 7'S FIRST REQUEST FOR ANSWERS TO INTERROGATORIES

The Plaintiffs, by and through counsel of record, respond to the Second Interrogatories to Plaintiffs filed by the defendant, Local 7 ("Local 7"), as follows:

Plaintiffs object to the request for information within the attorney-client and work product privileges. Plaintiffs further object to the submission of more than twenty-five interrogatories in violation of the Local Rules and the Court's Order.

Without waiving these objections, Plaintiffs further respond as follows:

1.     Identify each person who provided information or otherwise consulted or assisted you in connection with providing answers to these interrogatories, including an identification of the specific interrogatories for which each person supplied information or consulted or assisted, the nature of any such consultation or assistance, and whether the information supplied was based on that person's own knowledge.

ANSWER:     Plaintiffs object to the interrogatory to the extent that it calls for a detailed recital of counsel's investigation of the case in order to compile the information responsive to each subpart of theses interrogatories in that such information is privileged as attorney work product and in that such an interrogatory is unreasonably burdensome. Without waiving such objection Plaintiffs state: Michael Guillemette, Donald Morel, Glen Pisani, Raymond Cilley, James Read,

and James Brown.

2.   Identify each document (and, where pertinent, the section, article or subparagraph thereof) you have used in preparing the answers to these interrogatories, including an identification of the specific interrogatories for which each document was used.

ANSWER:   Plaintiffs object to the interrogatory to the extent that it calls for a detailed recital

of counsel's investigation of the case in order to compile the information responsive to each

section and subpart of this and other interrogatories in that such information is privileged as

attorney work product and in that such an interrogatory is unreasonably burdensome.

3.   State the period in time for which you claim damages from Defendant.

ANSWER   December 1, 1999 to through the conclusion of the instant case.

4.   Identify and describe the "relevant market," including product or services and geographic limitations (including by specific county, municipality, and other geographic location) for purposes of each of your anti-trust counts or claims.

ANSWER:   The "Relevant Market" is the erecting of structural metal and steel on buildings

and structures, erecting prestressed and precast concrete to produce structural elements, erecting

metal building exteriors, erecting of metal rods, bars, rebar, mesh and cages to reinforce poured

concrete, erecting structural steel trusses and joints, and welding work on construction projects

encompassing eastern and central Massachusetts, Rhode Island, New Hampshire, and southern

and central Maine—an area proximate to the City of Boston.

5.   With regard to the allegations contained in Paragraph 43 of your Complaint that "[s]ince approximately 1999, total structural steel erection construction spending on an annualized basis in the Relevant Market was in excess of $200,000,000 per year" and "[a]fter adjusting for the Boston Central Artery and Harbor Tunnel Project and other union-shop projects, the Relevant Market in which Plaintiffs are able to compete has been less than $60,000,000 per year during the relevant time period," please describe or state how these dollar figures were calculated, further identifying for each:

   a.   each and every act or omission to act (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) that forms any part of your information or understanding regarding the calculation; and
   b.   each and every fact, figure or document (and, where pertinent, the section,

2

article or subparagraph thereof) and each and every communication which forms any part of your information or understanding regarding the calculation.

ANSWER:    Plaintiffs object to the interrogatory to the extent that it calls for a detailed recital of counsel's investigation of the case in order to compile the information responsive to each subpart of this interrogatory in that such information is privileged as attorney work product and in that such an interrogatory is unreasonably burdensome. The specification information about acts and omissions are contained in the projects files produced by local 7 in response to Plaintiffs' First Request for Production of Documents and with the Local 7's First Response to Production of Documents to Local 7 at Defendant counsel's office.  See Fed. R. Civ. P. 33(d). Plaintiffs have provided this information to Defendant and it is equally accessible to it. "Each fact, figure, and document" are in the possession of third parties with which Local 7 has entered into a combination or agreement, which Plaintiffs will provide for inspection once obtained. In further response, Plaintiffs state  The dollar volume of the relevant market were calculated using publicly available census data. Without waiving that objection, Plaintiffs show the following projects lost due to Local 7's unlawful activity, pending further discovery:

1.    *The Catholic Medical Center Project.*    In 2002, a new hospital wing at the Catholic Medical Center in Manchester, New Hampshire was under construction. Harvey Construction was the general contract. AMERICAN AERIAL, ASE and BEDFORD IRON bid on this project. Harvey Construction through Canatal Industries, Inc. notified Plaintiff AMERICAN AERIAL that it was the low bidder to install the steel structure work. The steel erection contract had a total value in excess of $240,000.00. On or about February 27, 2003, Plaintiffs AMERICAN AERIAL was removed as the steel erector on the Catholic Medical Center project and was replaced by Universal Steel, a Local 7 contractor and who received job target money to underbid AMERICAN AERIAL.

3

2.     *The Fox 25 Project.*   In the Fall of 2002, Plaintiff D.F.M. was awarded a contract to build a Fox Television Station addition in Dedham, Massachusetts, by Cape & Island Steel, Inc. On or about February 24, 2003, the day before construction was to begin, agents of Defendant Local 7 contacted the project manager Jim Gage for Cape & Island Steel, Inc. demanding that Plaintiff D.F.M. be removed. Plaintiff D.F.M. Industries' employees began working at the Fox 25 Project in accordance with its contract. Cape & Island Steel, Inc.'s President John J. Paulding was then told by Edwin Wright, a Business Agent from Local 7, that if Cape & Island Steel, Inc. did not remove Plaintiff D.F.M. Industries from the project, that would be a "big mistake" and Local 7 would set up a picket line and induce other building trade union members to walk off the job. When Paulding objected, Wright informed Paulding that if Paulding did not remove Plaintiff D.F.M. Industries from the project he would contact the other Building Trades Unions to pressure him by putting up a picket line. A purpose of the picketing threat was to coerce and restrain Paulding to enter into an 8(e) agreement in restraint of trade.

On June 19, 2003, Wright went to the job site and disrupted the job by making threatening statements to Plaintiff's employees and supervisors of physical harm. D.F.M. Industries' equipment on the jobsite was damaged.   The general contractor Bond Brothers told Cape & Island Steel, Inc. that he had to make this union problem go away. Subsequently, the Cape & Island Steel, Inc. Project Manager informed D.F.M. Industries that he would terminate Plaintiff's contract before D.F.M. Industries' job was finished and Cape & Island Steel, Inc. would not give the next phase of the job to Plaintiffs D.F.M. Industries.  Plaintiff D.F.M. Industries was removed from the job. The agreement of John Paulding and Local 7 to remove Plaintiff D.F.M. Industries from the job is a restraint of trade and Plaintiff has been damaged thereby.

3.     *The Tamarisk House Project* D.F.M. Industries had a contract dated August 1,

4

2002, with Metro West Steel, Wrentham, MA, to erect an assisted living home in Warwick, Rhode Island in 2002, being managed by O. Alhborg & Sons, Inc., Cranston, RI.   At a meeting with managers and supervisors from O. Alhborg & Sons, Inc., D.F.M. was informed on Wednesday August 28, 2002, to begin steel erection the following Tuesday, September 3, 2002. On Friday, August 29, 2002., D.F.M. Industries, was informed by project manager Dino Cauteruccio of Metro West Steel that O. Ahlborg & Sons, Inc. had been contacted by representatives from Local 37, that Metro West Steel was rescinding its contract with D.F.M. Industries, and that the contract was then being awarded to Griffin Steel, a Local 7 Contractor.

4.     *Danvers Stop & Shop Project.*     On November 8, 2002, steel fabricator Jay Steel solicited bids for the construction of a Stop & Shop grocery store in Danvers, Massachusetts.  Plaintiff ASE submitted a bid on January 14, 2003.  ASE was informed by a representative of Jay Steel that the Local 7 had provided job targeting money to the erector used by Jay Steel which undercut ASE's bid.

5.     *Stop & Shop Warehouse Project.*     On March 23, 2003, AJAX was solicited by M & S Steel of Garett, Indiana, to submit a bid to erect the structural steel for the Stop & Shop Warehouse project in Freetown, Massachusetts.  Plaintiffs AJAX and D.F.M. also submitted bids on the project.  Subsequently, agents of Local 7 contacted M & S Steel and informed it that job target money was available to it if it awarded the project to a Local 7 contractor.  H & B Welding, a Local 7 Contractor, was then awarded the contract with the use of job target money.

5.     *Portland Jet Port Project.*     On April 22, 2004, AMERICAN AERIAL submitted a bid of $92,000.00 to general contractor Ledgewood, Inc. for the erection of hangers in Portland, Maine.  AMERICAN AERIAL was informed by Mark Harris of Arctic Construction, Inc., Falmouth, Maine, a Local 7 Contractor, that it had been provided job target funds.  Subsequently, Local 496 agent John Evans admitted that job target money had been

provided to enable Arctic Construction, Inc. to submit a lower bid on the project.

6.    *University of Southern Maine Science Research Wing Project.*.    On May 21, 2004, AMERICAN AERIAL submitted a bid of $92,500.00 to general contractor Pizzagalli Construction Company for the construction of new science research wing for the University of Southern Maine in Portland, Maine. AMERICAN AERIAL was informed it was the second low bidder. The project was then awarded to Arctic Construction, Inc., a Local 7 Contractor, who Local 496 agent John Evans admitted had been provided job target money to submit a bid lower than AMERICAN AERIAL on the project.

7.    *Cardi's Furniture Project.*    In 2002, AJAX submitted a bid for the steel erection of a Cardi's Furniture store in North Attleboro, Massachusetts to FAMM Steel, Inc. AJAX was informed by FAMM that it was awarded the contract. AJAX was subsequently informed by FAMM that Local 7 had authorized the payment of job target money on the project and then awarded the contract to Griffin Iron, a Local 7 Contractor, who on information and belief received the Job Target money. Due to the payment of job target money and other illegal pressure from Local 7 on the fabricator, the fabricator agreed to pay AJAX $5,000.00 to break its service contract on the job.

8.    *O. Ahlborg Headquarters Project.*    O. Ahlborg and Sons sought bids for the steel erection of their O. Ahlborg and Sons Headquarter's office in Cranston, Rhode Island, to begin in October 2001. Plaintiffs D.F.M. and AJAX submitted bids for the work with a value of $45,000.00. AJAX was awarded the job. The day before work was to begin, the project was awarded to Griffin Steel who on information and belief received Job Target money from Defendant.

9.    *Walmart Brewer Project.*    In 2002, a Wal-Mart store was to be erected in Brewer, Maine. On August 6, 2002, Plaintiff AMERICAN AERIAL submitted a bid to

6

Universal Welding to perform the structural erection of the building in the amount of $259,600.00. Industrial Enterprises, a union contractor was awarded the contract with a bid of $160,000.00 for which it received job target money.

10. *Yarmouth High School Project.* In 2002, the steel erection for a new Yarmouth High School in Yarmouth, Maine was awarded to steel fabricator Mandate Erectors & Welding, Ltd. Mandate Erectors & Welding, LTD solicited bids for the erection of the steel frame. On April 8, 2002, Plaintiff AMERICAN AERIAL submitted a bid of $339,900.00 to Mandate Erectors & Welding, LTD. A union contractor with Job Target Funds, CTI, New Hampshire, was awarded the bid at $200,000.00.

11. *North Brookfield High School Project.* A Junior/Senior High School building project was constructed in North Brookfield, Massachusetts. Plaintiffs were unable to bid on the project when it was learned that Union contractor Construction Welding Services Corporation received job target money from Local 7.

12. *Walker Brook Crossing.* On December 12, 2002, Mandate Erectors & Welding, Ltd. solicited bids for the steel erection portion of a Home Depot in Reading, Massachusetts known as Walkers Brook Crossing. On January 17, 2003, Plaintiffs AMERICAN AERIAL, ASE and AJAX submitted bids to perform the work. ASE and AJAX were informed by a representative of Mandate Erectors & Welding, Ltd. that Local 7 had provided job targeting money to a Local 7 contractor. The project manager, then awarded the contract to CAPCO Steel, Inc., a Local 7 Contractor.

12. *Stryker Biotech.* On May 30, 2003, fabricator Supermetal solicited bids for the steel erection portion of the construction in West Lebanon, New Hampshire known as Stryker Biotech. On June 25, 2003, ASE submitted a bid to perform the work. ASE was informed by a representative of Supermetal that Local 7 had provided job targeting money to

7

CAPCO, and the contract was being awarded to CAPCO Steel Corp., a Local 7 contractor.

13.    *Long View Place.*    On June 2, 2003, General Steel Fabricators, Inc. and Mandate Erectors & Welding, Ltd. solicited bids for the steel erection portion of the construction of an apartment community in Waltham, Massachusetts known as Long View Place. Plaintiffs ASE and AJAX submitted bids. ASE was informed that it had submitted the low bid on the project. ASE was then informed by a representative General Steel Fabricators, Inc. that Local 7 had provided job targeting money to a Local 7 Contractor, and contract was awarded the contract to Beauce Atlas, a Local 7 contractor.

14.    *Mart Parking Complex.*    In the Fall of 2003, FAMM Steel, Inc. issued a public bid for the steel erection and building of a parking garage complex in Fitchburg, Massachusetts. Plaintiffs AJAX, ASE, INDEPENDENT WELDING, and BEDFORD submitted bids. Subsequent to submitting the bids, INDEPENDENT WELDING was told by Allen Hodges, a representative of FAMM Steel, Inc. that a union company, Universal Steel had received job target money on the project. Universal Steel was awarded the contract.

15.    *The 405 Cochituate Road Project.*    In October 2002, a construction project in Natick, Massachusetts at 405 Cochituate Road was to begin. Ocean Steel was the steel fabricator. Plaintiff D.F.M. Inc. submitted a bid on this project, as well as Green Mountain, a non-Local 7 contractor. Agents of Local 7 contacted Construction Welding to have it outbid the non-Local 7 contractors on the project. On or about October 8, 2002, co-conspirator Construction Welding obtained job target funds from Local 7. With those funds, Construction Welding was awarded the project for the steel erection portion of the 405 Cochituate Road Project.

16.    *Jordan's Furniture Distribution Warehouse Project.*    In 2002, AJAX submitted a bid for building this project in Taunton, Massachusetts. On information and belief,

8

the project was awarded to James F. Sterns Co., Inc., Hingham, MA, a Local 7 Contractor who received job target money.

17.  *Stone Harbor Condominiums.*    On August 8, 2003, AJAX submitted a bid to Jay Steel on this project in Bristol, Rhode Island and was informed it was the low bidder.  On information and belief, the work was taken away from AJAX and awarded to a Local 7 Contractor who received job target money.

18.  *Whole Foods Grocery Project.*    In the Spring of 2004, AJAX submitted a bid on this project in Hingham, Massachusetts to Jay Steel and was informed it had submitted the lowest bid.  On information and belief, the work was taken away from AJAX and awarded to a Local 7 Contractor Daniel Koury Construction, Inc., Warwick, Rhode island, who received job target money.

19.  *Showcase Cinemas*    On August 19, 2003, AJAX submitted a bid to fabricator Beauce Atlas on this project in Millbury, Massachusetts and was informed it had submitted the lowest bid.  Two weeks later, the work was taken away from AJAX and awarded to a Local 7 Contractor who received job target money.

20.  *Archstone Apartments.*    On June 11, 2003, AJAX had received a written purchase order from Mandate Erectors for this building project in Watertown, Massachusetts. AJAX had invested a substantial amount of preparation time and costs in preparing the project. Two weeks before the scheduled start date, AJAX was informed that the project was being taken away from it and being awarded to Interstate Steel Erectors, a Local 7 contractor.  Due to the payment of job target money and other illegal pressure from Local 7 on the fabricator, the fabricator agreed broke its service contract with AJAX.

21.  *Stop & Shop Store Project.*    On March 23, 2004, AJAX submitted a bid for the construction of a Stop & Shop grocery store in Halifax, Massachusetts to Jay Steel.  AJAX was

informed by the fabricator Jay Steel that it had been awarded the project. One week before the start date, AJAX was informed that the project was being assigned to H B Welding, Inc., Pawtucket, RI, a Local 7 Contractor.

22.    *Necco Project.*    In 2001, AJAX submitted bids for the erection of a warehouse building for NECCO in Revere, Massachusetts to Cives Steel, Augusta, Maine. AJAX was informed that it was the low bidder by the final fabricators on the project. One week after meeting with the general contractor and fabricators on the jobsite, AJAX was informed that the project was being awarded to CAPCO, Providence, RI, a Local 7 Contractor.

23.    *Bowdoin College Project.*    In August 2004, AMERICAN AERIAL submitted a bid for the erection of a new dormitory wing at Bowdoin College in Brunswick, Maine, to the fabricator Advance Resources and Construction Enterprises, Inc. ("ARC"), Kingfield, Maine. AMERICAN AERIAL was informed that it had been awarded the contract. AMERICAN AERIAL attended a jobsite meeting for sequencing the job, jobsite requirements, and was told it was the steel erector. The job was to begin the week of November 22, 2004. On November 15, 2004, AMERICAN AERIAL was informed by ARC that it had received new pricing from Arctic Construction, a Local 7 contractor, and was meeting with Arctic to finalize a new contract that was substantially lower. AMERICAN AERIAL was removed from the project.

24.    *Brickworks-Buildings 3 & 4 Project.* On October 8, 2004, D.F.M. submitted a bid for the erection of two buildings in Cambridge, Massachusetts to Capone Iron Corporation, Rowley, Massachusetts. On September 28, 2004, Bel-Lin Corporation, Randolph, Massachusetts, submitted a bid on the project to Capone Iron Works in the amount of $136,000.00. Plaintiff D.F.M. was awarded the contract on October 8, 2004. On or about November 18, 2004, Local 7 negotiated a new bid for the project with its union signatory erector Bel-Lin Corporation. The Union agreed to contribute $12,000.00 of job target money to the

contractor and Bel-Lin Corporation agreed to further lower its prior bid by $9,000.00 as a "good guy discount" to Capone Iron Works. On or about November 18, 2004, defendant Local 7 wrote Capone Iron Works by agent Edwin Wright, on behalf of itself and Bel-Lin Corporation, and offered to cut Capone Iron Works' prior bid by $21,000.00 as a concession and for market recovery. On November 29, 2004, D.F.M. was informed by Capone Iron Works project manager J. Robert Chipman that the Union had provided him a new bid price on the project for Bel-Lin Corporation and therefore D.F.M. would not be permitted to perform on the contract with Capone Iron Works.

25     *22 Fore Street*.     "22 Fore Street" is the name of a project in Portland, Maine that was awarded to AMERICAN AERIAL. Agents of Local 7 offered fabricator Advance Resource Construction $20,000.00 if it would not use AMERICAN AERIAL's services.

26.     *Hilton Garden Inn*.     On information and belief, on a Hilton Garden Inn construction project being erected by AMERICAN AERIAL in Freeport Maine in 2004, Walter Kilbrethm an agent of Local 496 offered to pay job target money to ARC.

The answer to this interrogatory may also be amended upon review of Local 7's business records of jobsites where target funds have been paid.

6.     With reference to the allegation contained in Paragraph 1 of your Complaint that the alleged anti-trust violations had the "intent and effect of reducing and eliminating competition between the Defendants and their signatory contractors with the Plaintiffs":

a.     identify and describe in detail all facts, acts or omissions to act (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved), documents (and, where pertinent, the section, article or subparagraph thereof) or communications, relied upon by you in support of such allegations;
b.     identify all persons, including experts and expert witnesses, having knowledge thereof or an opinion thereon;
c.     state whether you have an opinion or whether you have made any analysis, study or determination as to what the non-artificial and competitive level of prices for services in the relevant product or service market identified in response to Interrogatory 5 above should have been during the time period you identified in

response to Interrogatory 3 above and, if so:

(1)   state what you claim the alleged competitive price level was from the time period identified in response to Interrogatory 3 above; and

(2)   identify each document (and, where pertinent, the section, article or subparagraph thereof) relating or referring to each such analysis, study or determination; and identify each person who participated, assisted, contributed or was consulted with regard to each such analysis, study or determination, and describe in detail the nature and extent of such participation, assistance, contribution or consultation.

**ANSWER:**   Plaintiffs object to the term "anti-trust violations." If Defendant Local 7 intends the term to refer to jobs that the Plaintiffs bid upon in the steel construction and services market, then without waiving said objection, Plaintiffs state that Plaintiffs have produced all bid and project files to Defendant Local 7 that they have worked on and has been working on since December 1999. The information requested in this interrogatory is information equally available to Local 7 in the files produced in response to Plaintiffs' First Set of Interrogatories to Local 7. Plaintiffs further object to the identification of its experts and expert witnesses and will provide same in accordance with the Local Rules of the Court. Without waiving said objection, Plaintiffs state the bid and project files have project names, contact information, locations, bids, and scope of work information. All these materials have been produced previously to Local 150.

See FRCP 33(d).

7.   With reference to allegations contained in your Complaint that Defendant and its alleged co-conspirators engaged in combinations or conspiracies in restraint of trade:

a.   identify the type(s) of alleged monopolization (e.g., horizontal, vertical, boycott, predatory pricing) you are claiming; and

b.   identify and describe in detail each act or omission to act(identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) or communication which you claim constitutes, embodies or was done in furtherance of the alleged combinations or conspiracies.

**ANSWER:**   Plaintiffs object to the terms " horizontal, vertical, boycott, predatory pricing." Plaintiffs further object to the Interrogatory on the grounds that it is vague, overbroad,

burdensome, and/or seeks information that is privileged, and/or protected by the attorney work product doctrine. Plaintiffs further object to the interrogatory in that it seeks discovery that is unreasonably cumulative and duplicative and is obtainable from depositions, which has been recognized as the more appropriate method of discovering such details regarding oral conversations and combinations and conspiracies. Without waiving said objections, Plaintiffs state the following: The investigation into this issue is continuing. To some extent, however, this information is derivable from the Plaintiffs project reports and letters from developers and contractors to and from Local 7 and/or to Plaintiffs, which are available for Local 7's review pursuant to Rule 33(d) and which Local 7 has scheduled review. <u>See also</u> Answer to Interrogatory No. 1 and Plaintiffs' Response to Local 7's First Request for Production of Documents.

8.    Identify each and every agreement between Defendant and any other person or business, whereby that person or business agreed not to award business to Plaintiffs or other non Local 7 signatory contractors for:

  a.    a time period of six months or more; and
  b.    a time period of less than six months.

<u>ANSWER</u>:    See Answer to Interrogatories 1 and 7 above. In further response, Plaintiffs refer Defendant Local 7 to the target fund files and the target fund contracts produced in response to Plaintiffs' First Request for Production of Documents.

9.    With reference to the allegations in your Complaint that Defendant and its alleged coconspirators entered into agreements in restraint of trade, identify each agreement in restraint of trade entered into by the Defendant and its alleged co-conspirators, including but not limited to the agreements identified in Paragraphs 62 and 67-139 of the Complaint, and for each such agreements and the agreements identified in Interrogatory 8 above, identify:

  a.    each person that you claim entered into the alleged agreement;
  b.    whether the alleged agreement was made orally or in writing and, if in writing, identify the written instrument;
  c.    what you claim are the terms or conditions of the alleged agreement, including but not limited to the specific job or jobs or project or projects involved in the agreement;

d.    the date you claim the alleged agreement was entered into;

e.    each person that you claim authorized or sanctioned participation in the agreement;

f.    each act or omission to act (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved) or communication that you claim constitutes, embodies or was done in furtherance of the alleged agreements; and

g.    each document (and, where pertinent, the section, article or subparagraph thereof) that you claim constitutes, embodies, evidences or was prepared in furtherance of the alleged agreements.

<u>ANSWER</u>:    Plaintiffs object to the Interrogatory on the grounds that it is vague, overbroad, burdensome, and/or seeks information that is privileged, and/or protected by the attorney work product doctrine. Plaintiffs further object to the interrogatory in that it seeks discovery that is unreasonably cumulative and duplicative and is obtainable from depositions, which has been recognized as the more appropriate method of discovering such details regarding such oral conversations. Without waiving said objections, Plaintiffs state the following: The investigation into this issue is continuing. To some extent, however, this information is derivable from the Plaintiffs project reports and letters from fabricators and contractors to and from Local 7 and/or to Plaintiffs, which are available for Local 7's review pursuant to Rule 33(d) and which Local 7 has requested production of documents. <u>See also</u> Answer to Interrogatory Nos. 1 and 7 and Plaintiffs' Response to Local7's First Request for Production of Documents.

10.    With reference to your allegation in Paragraph 47 of the Complaint and other parts of the Complaint that Defendant and/or its co-conspirators engaged in price-fixing:

a.    identify and describe in detail each act, omission to act (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved), communication or document (and, where pertinent, the section, article or subparagraph thereof) that you claim constitutes, embodies, evidences or was done in furtherance of the alleged price-fixing, and the methods of calculating or determining costs; and

b.    identify and describe each job or project where you claim the price was below cost, further identifying and describing in detail every act, omission to act (identifying the acts or omissions to act by stating their nature, time, and place and identifying the persons involved), communication or document (and, where pertinent, the section, article or subparagraph thereof) supporting that claim.

14

<u>ANSWER:</u>    The answer to this Interrogatory may be derived from the Plaintiffs' and Local 7's

business records which have been produced. These materials are available to Local 7. <u>See</u> Rule

33(d). In further response, <u>see</u> Answer to Interrogatory Nos. 1, 8 & 9 hereto.

11.    Identify each steel erection project or job for which you submitted a bid, quote or
estimate for steel erection work or services that was to be done during the time period you
identified in response to Interrogatory 3 above, stating or identifying and describing in detail
separately for each:

a.    the bid amount;
b.    a breakdown of your estimated costs at the time the bid, quote or estimate was
made, including but not limited to wages, benefits and workers' compensation
premiums, incorporated into the bid amount and the process used to calculate
those costs;
c.    your anticipated or expected profit at the time the bid, quote or estimate was
made;
d.    the type(s) of work or services to be performed;
e.    the size of the work or services to be performed;
f.    the location of the work or services to be performed;
g.    the estimated number of person hours to be performed by employee classification;
h.    the percent of the "relevant market," which you identified in response to
Interrogatory 4 above, the work on this project involved during the time period of
this work;
I.    the fabricator or other contractor to whom the bid, quote or estimate was
submitted;
j.    the general contractor, developer and/or other higher tiered contractor(s) on the
project or job;
k.    whether you were awarded the job or project and, if not, the name and street
address, if known, of the person or business who was awarded the job;
l.    whether the project or job was governed by a project labor agreement; and
m.    each and every act, communication or document (and, where pertinent, the
section, article or subparagraph thereof) related or referring to any of the above.

<u>ANSWER:</u>    Plaintiffs object to the interrogatory in that the information sought is duplicative

and obtainable from the depositions which has been recognized as the more appropriate method

of discovering such details regarding such communications and documents obtained during

discovery, including documents produced by Local 7 in response to Plaintiffs' First Request for

Production of Documents, and including the third party business records yet to be obtained,

which the Plaintiffs will make available for the inspection pursuant to Rule 33(d). Plaintiffs

further object to the Interrogatory on the grounds that it is vague, overbroad, burdensome, and/or seeks information that is privileged, and/or protected by the attorney work product doctrine. Without waiving said objections, Plaintiffs state the following: see Answers to Interrogatories Nos. 1,7 & 8, facts set forth in the Complaint.

Plaintiffs objects to the remaining interrogatories under Fed. R. Civ. P. 33(a). Plaintiffs further objects to this interrogatory to the extent that it calls for a detailed recital of each person who has knowledge of "each and every act" which are contained in files produced by Plaintiffs and show information equally accessible to Local 7and supporting Plaintiffs' claims in that such an interrogatory is unreasonably burdensome, such a detailed recitation of the facts, knowledge and evidence is unreasonably cumulative and duplicative of prior discovery responses and prior depositions and is more appropriately obtainable from such depositions and documents.

12. For each steel erection project or job you identified in response to Interrogatory 11 on which you have performed steel erection work or services from the time period you identified in response to Interrogatory 3 above, state:

    a.    the person or business with whom you contracted to perform the work or services;
    b.    the price and other terms or conditions upon which you agreed to perform work or services;
    c.    whether the price or terms or conditions upon which you agreed to perform work or services as identified in Interrogatory 12(b) above were modified after an agreement or contract for work had been reached and, for each instance, identify and describe in detail the nature of the modification, including the re-modification and post-modification price and/or term or condition.
    d.    a breakdown of your costs, including but not limited to, workers' compensation premiums, wages and benefits;
    e.    your profit;
    f.    the type(s) of work or services performed, if different from that described in response to Interrogatory 11(d);
    g.    the location of the work or services performed, if different from that described in response to Interrogatory 11(f);
    h.    the time period when the work or services were performed;
    I.    the number of person hours performed and the number of person hours performed by employee classification;
    j.    the percent of the "relevant market," which you identified in response to Interrogatory 4 above, the work on this project involved, if different from that described in response to Interrogatory 11(h); and

k.      each and every act, communication or document (and, where pertinent, the section, article or subparagraph thereof) related or referring to any of the above, not already described in response to Interrogatory 11(m).

ANSWER:  See Response to Interrogatory 11. Plaintiffs further object to the Interrogatory on the grounds that it is vague, overbroad, burdensome, and/or seeks information that is privileged, and/or protected by the attorney work product doctrine.

13.    Identify or state whether you contracted out any steel erection work or services during the time period identified in Interrogatory 3 above and, if so, identify each person or business to whom you contracted out the work or services, identifying and describing separately for each, and separately for each project or job:

    a.    the type of steel erection work or services that you contracted out;

    b.    the price and other terms or conditions upon which you agreed to contract out the work or services;

    c.    whether the price or terms or conditions upon which you agreed to contract out work or services as identified in Interrogatory 13(b) above were modified after an agreement or contract for work had been reached and, for each instance, identify and describe in detail the nature of the modification, including the re-modification and post-modification price and/or term or condition;

    d.    a breakdown of the costs incurred by person or business to whom you contracted the work, if known, including but not limited to, wages, benefits, and workers' compensation premiums;

    e.    your profit;

    f.    the type(s) of work or services performed;

    g.    the location of the work or services performed;

    h.    the time period when the work or services were performed;

    I.    the number of person hours performed and the number of person hours performed by employee classification;

    j.    the percent of the "relevant market" which you identified in response to Interrogatory 4 above, the work on this project involved;

    k.    the general contractor, developer and/or other higher tiered contractor on the project where the work or services were performed;

    l.    whether the project or job was governed by a project labor agreement; and

    m.    each and every act, communication or document (and, where pertinent, the section, article or subparagraph thereof) related or referring to any of the above.

ANSWER:  Plaintiffs object to the interrogatory in that the information sought is duplicative and obtainable from the depositions which has been recognized as the more appropriate method of discovering such details regarding such communications and documents obtained during discovery, including documents produced by Local 7 in response to Plaintiffs' First Request for

17

Production of Documents, and including the third party business records yet to be obtained, which the Plaintiffs will make available for the inspection pursuant to Rule 33(d). Plaintiffs further object to the Interrogatory on the grounds that it is vague, overbroad, burdensome, and/or seeks information that is privileged, and/or protected by the attorney work product doctrine. Without waiving said objections, Plaintiffs state the following: see Answers to Interrogatories Nos. 1,7 & 8, facts set forth in the Complaint.

Plaintiffs objects to this interrogatory under Fed. R. Civ. P. 33(a). Plaintiffs further objects to this interrogatory to the extent that it calls for a detailed recital of each person who has knowledge of "each and every act" which are contained in files produced by Plaintiffs and show information equally accessible to Local 7and supporting Plaintiffs' claims in that such an interrogatory is unreasonably burdensome, such a detailed recitation of the facts, knowledge and evidence is unreasonably cumulative and duplicative of prior discovery responses and prior depositions and is more appropriately obtainable from such depositions and documents.

14. State whether you claim that the price or any term or condition of any of your contracts, agreements or bids, estimates or quotes for the performance of steel erection work or services was discussed or communicated between any one or more representatives of Defendant and any one or more representatives of the alleged co-conspirators from the time period you identified in response to Interrogatory 3 above, and with regard to each such discussion:

    a.    state the date thereof;

    b.    identify each person who participated therein or overheard any part thereof;

    c.    identify the price and/or the term or condition of the contract, agreement or bid, quote or estimate that was discussed; and

    d.    state whether you claim any agreement was reached during or pursuant to such discussion, and, if so, describe the terms and substance of each such agreement and, if so, state the form and manner in which you claim each such agreement was carried out.

ANSWER: No discussions or communications occurred on contracts, agreements, bids, estimates, or quotes with any representatives of Defendants or alleged co-conspirators.

15. Identify and describe in detail each communication that you had with any purchaser (direct or indirect) of steel erection services during the time period identified in response to

Interrogatory 3 above, concerning the following matters:

a.     evaluation of price for steel erection services, including but not limited to, similar prices, identical prices or different prices;

b.     the purchasing practices of direct purchasers of steel erection services;

c.     prices quoted or bid on steel erection services;

d.     market or published price levels for steel erection services;

e.     prices paid or to be paid for steel erection services;

f.     specifications regarding steel erection services;

g.     terms or conditions of sale of steel erection services;

h.     the relative merits of different types of steel erection services;

I.     any purported violation of any anti-trust law by any supplier of steel erection services, including, without limitation, the setting or fixing of prices;

j.     evaluations of suppliers or potential suppliers of steel erection services; and

k.     any recommendations for action with respect to similar prices, identical prices, different prices, the purpose of certain prices or any purported anti-trust violation by any suppler of steel erection services.

**ANSWER:** Plaintiffs object to the Interrogatory on the grounds that it is vague, overbroad, burdensome, and/or seeks information that is privileged, and/or protected by the attorney work product doctrine. Plaintiffs further object to the interrogatory in that it seeks discovery that is unreasonably cumulative and duplicative and is obtainable from depositions, which has been recognized as the more appropriate method of discovering such details regarding such oral conversations. Without waiving said objections, Plaintiffs state the following: The investigation into this issue is continuing. To some extent, however, this information is derivable from the Plaintiffs project reports and letters from competitors, developers and contractors to and from Local 7 and/or to Plaintiffs, which are available for Local 7's review pursuant to Rule 33(d) and which Local 7 is reviewing. See also Answer to Interrogatory No. 1.

16.     Identify and describe in detail each and every communication that you had with any provider (direct or indirect) of steel erection services, including but not limited to the Plaintiffs during the time period identified in response to Interrogatory 3 above, concerning the following matters:

a.     evaluation of price, including but not limited to, similar prices, identical prices or different prices for steel erection services;

b.     purchasing practices of direct purchasers of steel erection services;

c.     prices quoted or bid for steel erection services;

d.  market or published price levels for steel erection services;
e.  prices paid or to be paid for steel erection services;
f.  specifications regarding steel erection services;
g.  terms or conditions of sale of steel erection services;
h.  relative merits of different types of steel erection services;
i.  any purported violation of any anti-trust law by any supplier of steel erection services, including, without limitation, the setting or fixing of prices;
j.  evaluations of suppliers or potential suppliers of steel erection services;
k.  any recommendations for action with respect to similar prices, identical prices, different prices, the purpose of certain prices or any purported anti-trust violation by any supplier of steel erection services; and
l.  the Defendant and any of its alleged co-conspirators.

ANSWER: Plaintiffs adopt their answer to Interrogatory 15.

17.  Identify by name and address each person or business that has participated in the "relevant market," as you have defined them in response to Interrogatory 4, but has been prevented from being a vigorous competitor as a result of Defendant's alleged conduct during the time period you identified in response to Interrogatory 3, further identifying each and every act, document (and, where pertinent, the section, article or subparagraph thereof) or communication that form any part of Plaintiff's information or understanding regarding each such market participant.

ANSWER:    Plaintiffs object to the interrogatory in that the information sought is duplicative

and obtainable from the depositions and documents obtained during discovery, including the

third party business records yet to be obtained, which the Plaintiffs defendants will make

available for the inspection pursuant to Rule 33(d). Plaintiffs further object to the Interrogatory

on the grounds that it is vague, overbroad, burdensome, and/or seeks information that is

privileged, and/or protected by the attorney work product doctrine. Plaintiffs further object to

the interrogatory in that it seeks discovery that is unreasonably cumulative and duplicative and is

obtainable from depositions, which has been recognized as the more appropriate method of

discovering such details regarding such oral conversations. Without waiving said objections,

Plaintiffs state the following: see Answers to Interrogatories Nos. 2

18.  Identify by name and address each and every person or business that has been driven out of the "relevant market," as you have defined them in response to Interrogatory 4, as a result of Defendant's alleged conduct during the time period you identified in response to Interrogatory 3, further identifying each and every act, document (and, where pertinent, the section, article or

subparagraph thereof) or communication that form any part of Plaintiff's information or understanding regarding each such market participant.

ANSWER:    Plaintiffs object to the interrogatory in that it seeks discovery that is unreasonably cumulative and duplicative and is obtainable from depositions, which has been recognized as the more appropriate method of discovering such details regarding such oral conversations. Plaintiffs further object to the Interrogatory on the grounds that it is vague, overbroad, burdensome, and/or seeks information that is privileged, and/or protected by the attorney work product doctrine. Without waiving said objections, Plaintiffs state: Superior Steel, Inc., Burlington, Vermont, Construction Welding Services, Inc., Sterling, Massachusetts, B&B Welding, Inc., Sterling, Massachusetts, FAMM Steel, Inc, New Hampshire. Plaintiffs will supplement this Response as information is obtained through discovery.

19.    Identify each of your competitors for steel erection services during the time period you claimed in response to Interrogatory 3 above and give the dates during which the entity was a competitor, the type of steel services that were the subject of the competition, the prices charged for those services, and the geographical area involved.

ANSWER:    Plaintiffs object to the Interrogatory on the grounds that it is vague, overbroad, burdensome, and/or seeks information that is privileged, and/or protected by the attorney work product doctrine. Plaintiffs further object to the interrogatory in that it seeks discovery that is unreasonably cumulative and duplicative and is obtainable from depositions, which has been recognized as the more appropriate method of discovering such details regarding such oral conversations. Without waiving these objections, Plaintiffs refer Local 7 to those employers in the steel erection industry that are signatory to a contract with Local 7. In further response, Plaintiffs adopt their Answers to Interrogatories 5 & 18.

20.    With reference to the alleged combinations, conspiracies, agreements, or other conduct alleged in your Complaint, state whether you were injured in your business or property thereby, and, if so:

    a.    describe in detail how you were injured;

21

b.   identify the acts or conduct of Defendant and any alleged coconspirators that caused such injury;

c.   identify each type or element of injury claimed; and

d.   identify all persons, including consultants, experts and expert witnesses, having knowledge thereof or an opinion thereon.

ANSWER:   Plaintiffs object to the Interrogatory on the grounds that it is vague, overbroad, burdensome, and/or seeks information that is privileged, and/or protected by the attorney work product doctrine. Plaintiffs further object to the interrogatory in that it seeks discovery that is unreasonably cumulative and duplicative and is obtainable from depositions, which has been recognized as the more appropriate method of discovering such details regarding such oral conversations. Without waiving these objections, Plaintiffs refer to Plaintiffs' Answers to Interrogatories 5 & 18 and to Target Contracts reached by Local 7 with any person in the steel erection industry, which information Plaintiffs have requested in their First Production of Documents and is still pending discovery. In further response, The Plaintiffs object to the interrogatory in that it is not only duplicate, but it's actually four different interrogatories. Moreover, Plaintiffs object on the basis that the Federal Rules of Civil Procedure, the Local Rules of this Court, and the case management order entered in this case do not require the Plaintiffs to disclose trial or expert witnesses at this time. Without waiving said objection, the Plaintiffs refer Local 7 to all those persons identified in the documents exchanged and obtained during discovery, including, but not limited to Plaintiffs' and Defendant Local 7's Rule 26(a)(3) disclosures.

21.   With respect to the damages you allege in your Complaint:

a.   state the total amount of damages separately for each year of the period you identified in response to Interrogatory 3 above, show the method of computation, and identify all documents (and, where pertinent, the section, article or subparagraph thereof) referred to in the preparation of your answer;

b.   describe and itemize with particularity each and every element of damage and state the dollar amount assigned to each such element, but to the extent that you have not stated specific dollar amounts by which you claim you were damaged,

state the method, formula or theory by which you will compute your alleged
damages; and

c.    identify each person with whom you have consulted or who in any way
participated in the derivation, construction or creation of each such method,
formula or theory by which you have computed or will compute your alleged
damages.

ANSWER:    Plaintiffs discovery of Local 7's business records is incomplete. Upon completion

of discovery, Plaintiffs will supplement this Answer and provide this information to Defendant.

22.    Describe your business, including identifying or describing:

a.    if you are a corporation, the date and place of your incorporation and the nature of
your business, including but not limited to the type of services and products you
provide;

b.    if you are a partnership or a sole proprietorship, the date on which, and the place
at which, you commenced business, and the nature of your business, including but
not limited to the type of services and products you provide and the nature and
types of your clients;

c.    addresses of your corporate or business headquarters and principal offices, as well
as your other offices and places of business;

d.    all of your affiliates, past or present, including the name, type of legal form or
organization, principal place of business, and nature of their business;

e.    all of your subsidiaries, past or present, including the name, type of legal form or
organization, principal place of business, and the nature of their business;

f.    each person who owned, controlled, held in trust or voted an interest (legal,
equitable or otherwise) in you, and with respect to each such person, from your
incorporation or commencement of business to the time period identified in
response to Interrogatory 3 above, stating in detail the nature of such ownership,
control, trust or voting rights;

g.    the names, positions, and dates of service of all of your corporate officers, past or
present, and also fully describe each such individual's position, authority or
responsibility (direct or indirect) for the operations of the business;

h.    whether you, your assets or shares of your stocks were acquired by, merged with
or consolidated with any other person and, if so, state or identify the date upon
which the acquisition, merger or consolidation took place, whether the transaction
was in acquisition, merger or consolidation, the person who effected the
acquisition, merger or consolidation, the surviving entity; and all documents (and,
where pertinent, the section, article or subparagraph thereof) that refer to or relate
to the acquisition, merger or consolidation; and

I.    the organization and structure and the lines of authority among and between
persons having authority to act for you for the time period identified in response
to Interrogatory 3 above.

ANSWER:    Plaintiffs object to the interrogatory in that the information sought is duplicative

and obtainable from the depositions and documents obtained during discovery, including the business records to be obtained, which the Plaintiffs will make available for the inspection pursuant to Rule 33(d). Plaintiffs further object to the Interrogatory on the grounds that it is vague, overbroad, burdensome, and/or seeks information that is privileged, and/or protected by the attorney work product doctrine.

23.    With regard to your accounting methods and reports for the time period identified in response to Interrogatory 3 above:

    a.    state the beginning and ending dates of your accounting year for purposes of financial records and income tax returns;

    b.    identify each and every person who has performed any accounting services for you, including persons regularly employed by you (whether heretofore or now employed), as well as outside, independent consultants;

    c.    identify each audit, balance sheet, profit and loss statement, and other financial statement, analysis or projection of results of past or future operations, that has been prepared by you or on your behalf;

    d.    describe any changes made in the method of accounting or in the method of compiling your profit and loss figures for each accounting period;

    e.    state the dollar amount of net profit or loss for each month, fiscal year or other period for your operations as stated in your profit and loss statements for the accounting periods; and

    f.    state the financial results on a job-by-job basis, including contributions to net and gross profit measures.

ANSWER:    Plaintiffs object to the interrogatory in that the information sought is duplicative and obtainable from the depositions and documents obtained during discovery, including the business records to be obtained, which the Plaintiffs will make available for the inspection pursuant to Rule 33(d). Plaintiffs further object to the Interrogatory on the grounds that it is vague, overbroad, burdensome, and/or seeks information that is privileged, and/or protected by the attorney work product doctrine. In further response, Plaintiffs state that the Answer to these interrogatories are best provided by deposition, which the Defendant Local 7 has noticed.

24.    Identify each and every lawsuit in which you have been a party (including the case name, court, and case number) and each and every investigation or inquiry, formal or informal.

ANSWER:    Plaintiffs object to the Interrogatory on the grounds that it is vague, overbroad,

24

burdensome. Plaintiffs further object to this interrogatory on the grounds that it includes records to be produced to Local 7 pursuant to its First Request for Production of Documents, which the Plaintiffs will make available for the inspection pursuant to Rule 33(d).

AMERICAN STEEL ERECTORS, INC.,
AJAX CONSTRUCTION CO.,
AMERICAN AERIAL SERVICES, INC.,
~~BEDFORD IRONWORKS, INC.,~~
D.F.M. INDUSTRIES, INC., and

By their attorneys,

Carol Chandler (BBO # 080660)
Geoffrey R. Bok (BBO # 550851)
STONEMAN, CHANDLER & MILLER LLP
99 High Street
Boston, MA 02110
(617) 542-6789

Michael E. Avakian
SNETANA & AVAKIAN
3211 Port Royal Road, Suite 103
Springfield, VA 22151
703-321-9181
703-321-9325 - Fax
(Admitted *Pro Hac Vice*)

Dated: June 26, 2006

## CERTIFICATE OF SERVICE

I hereby certify that PLAINTIFFS' RESPONSE TO DEFENDANT IRON WORKERS LOCAL 7'S FIRST REQUEST FOR ANSWERS TO INTERROGATORIES was served, via facsimile and U.S. Mail, on this the 23d day of June 2006, to the counsel of record in the above styled case named below:

Paul F. Kelly
Segal, Roitman & Coleman
11 Beacon Street
Boston, MA 02108
pkelly@segalroitman.com
617-742-2187

Michael E. Avakian

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

AMERICAN STEEL ERECTORS, INC.,  )
*et al.*,  )
    Plaintiffs,  )
         )
    v.  )  Case No. 04-cv-12536-RGS
         )
LOCAL UNION NO. 7, INTERNATIONAL  )
ASSOCIATION OF BRIDGE,  )
STRUCTURAL, ORNAMENTAL &  )
REINFORCING IRON WORKERS.  )
         )
    Defendant.  )
         )

### VERIFICATION

   I certify that I have read Plaintiffs' Response to Defendant Iron Workers Local 7's First Request for Answers to Interrogatories these Answers to Interrogatories relating to D.F.M., Inc. are correct to the best of my knowledge.

                _____
                Glen Pisani

   Sworn to and subscribed before me this 26 day of June 2006.

_Shanon Branco_
Notary Public *Shanon Branco*

My Commission expires: Dec 3, 2010

Shanon Branco
Notary Public
Commonwealth of Massachusetts
My Commission Expires
December 3, 2010

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AMERICAN STEEL ERECTORS, INC.,
et al.,

        Plaintiffs,

v.

LOCAL UNION NO. 7, INTERNATIONAL
ASSOCIATION OF BRIDGE,
STRUCTURAL, ORNAMENTAL &
REINFORCING IRON WORKERS.

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 04-cv-12536-RGS

## VERIFICATION

    I certify that I have read Plaintiffs' Response to Defendant Iron Workers Local 7's First Request for Answers to Interrogatories these Answers to Interrogatories relating to AJAX Construction Co., Inc. are correct to the best of my knowledge.

Donald Morel

    Sworn to and subscribed before me this 26 day of June 2006.

Nancy Heaton
Notary Public

My Commission expires: 4/21/10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERICAN STEEL ERECTORS, INC.,<br>et al.,<br>      Plaintiffs,<br><br>      v.<br><br>LOCAL UNION NO. 7, INTERNATIONAL<br>ASSOCIATION OF BRIDGE,<br>STRUCTURAL, ORNAMENTAL &<br>REINFORCING IRON WORKERS,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 04-cv-12536-RGS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## VERIFICATION

I certify that I have read Plaintiffs' Response to Defendant Iron Workers Local 7's First Request for Answers to Interrogatories these Answers to Interrogatories relating to American Steel Erectors, Inc. are correct to the best of my knowledge.

Raymond Cilley

Sworn to and subscribed before me this 26 day of June 2006.

Notary Public

My Commission expires: 4/6/2010

LAURA A. SPARLING
MY COMMISSION EXPIRES
APR. 6, 2010
NOTARY PUBLIC
NEW HAMPSHIRE

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

AMERICAN STEEL ERECTORS, INC., *et al.*,

            Plaintiffs,

            v.

LOCAL UNION NO. 7, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL & REINFORCING IRON WORKERS.

            Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 04-cv-12536-RGS

## VERIFICATION

I certify that I have read Plaintiffs' Response to Defendant Iron Workers Local 7's First Request for Answers to Interrogatories these Answers to Interrogatories relating to Bedford Ironworks, Inc. are correct to the best of my knowledge.

_Michael P. Guillemette , Pres._

Michael Guillemette

Sworn to and subscribed before me this _____ day of June 2006.

_____

Notary Public

My Commission expires:

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERICAN STEEL ERECTORS, INC., *et al.*,<br><br>       Plaintiffs,<br><br>       v.<br><br>LOCAL UNION NO. 7, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL & REINFORCING IRON WORKERS.<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)   Case No. 04-cv-12536-RGS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## VERIFICATION

I certify that I have read Plaintiffs' Response to Defendant Iron Workers Local 7's First Request for Answers to Interrogatories relating to American Aerial Services, Inc. are correct to the best of my knowledge, except as to Answer to Interrogatory No. 5 ¶ 26, for which American Aerial Services, Inc. bid on the Hilton Garden Inn project only, Arctic Construction, Inc. was awarded the contract on the Hilton Garden Inn project, and Walter Kilbrethm is president of Advance Resource & Construction and he is not an agent of Local 496.

_____
James Read

State of New Hampshire
County of Hillsborough

Sworn to and subscribed before me this 29th day of June 2006. by James Read only.

_____
Notary Public

My Commission expires:

KATHRYN A. NADEAU, Notary Public
My Commission Expires June 26, 2007

## CERTIFICATE OF SERVICE

I hereby certify that the VERIFICATION of James Read  was served, via U.S. Mail, on this the 29th day of June 2006, to the counsel of record in the above styled case named below:

Paul F. Kelly
Segal, Roitman & Coleman
11 Beacon Street
Boston, MA 02108
pkelly@segalroitman.com
617-742-2187

Michael E. Avakian