UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERICAN STEEL ERECTORS, INC., *et al.*,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>LOCAL UNION NO. 7, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL & REINFORCING IRON WORKERS, *et al.*,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 04-cv-12536-RGS<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**NOTICE OF FILING SUPPLEMENTAL AFFIDAVIT IN SUPPORT OF
PLAINTIFFS' RULE 56.1 STATEMENT FOR WHICH
LEAVE TO FILE WAS GRANTED BY THE COURT**

**TO:**　　Paul F. Kelly
　　　　　Segal Roitman & Coleman
　　　　　11 Beacon Street, 5th Floor
　　　　　Boston, MA

　　Please take notice that on October 5, 2006, Plaintiffs American Steel Erectors, *et al.*, filed the attached Affidavit of Susan Beauregard as a Supplement to Exhibit 21 attached to Plaintiffs' Consolidated Response to Defendant Local 7's Rule 56.1 Statement of Undisputed Material Facts and Plaintiffs' Counterstatement of Material Facts of Record to Be Tried.

　　Leave to file this document was granted by the Court on October 5, 2006.

　　　　　　　　　　　　　　　　　Respectfully submitted,
　　　　　　　　　　　　　　　　　AMERICAN STEEL ERECTORS, INC.,
　　　　　　　　　　　　　　　　　AJAX CONSTRUCTION CO.,
　　　　　　　　　　　　　　　　　AMERICAN AERIAL SERVICES, INC.,
　　　　　　　　　　　　　　　　　BEDFORD IRONWORKS, INC.,
　　　　　　　　　　　　　　　　　D.F.M. INDUSTRIES, INC.

By their attorneys:

Carol Chandler (B.O. # 080660)
Geoffrey R. Bok (B.O. # 550851)
STRONGMAN, CHANDLER & MILLER, LP
99 High Street
Boston, Massachusetts 02110
(617) 542 – 6789


/s/ Michael E. Avakian
Michael E. Avakian, *pro hac vice*
SMETANA & AVAKIAN
5211 Port Royal Road, Suite 103
Springfield, Virginia 22151
(703) 321 - 9181

October 5, 2006


**CERTIFICATE OF SERVICE**

     I hereby certify that ERRATA TO PLAINTIFFS' EXHIBITS IN SUPPORT OF RULE 56.1 STATEMENT, pursuant to Local Rule 5.4(c) via the Court's ECF system on this the 5th day of October 2006, to the counsel of record in the above styled case named below:

    Paul F. Kelly
    Segal Roitman & Coleman
    11 Beacon Street, 5th Floor
    Boston, MA

 /s/ Michael E. Avakian
 Michael E. Avakian

EXHIBIT 21

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN STEEL ERECTORS, INC., et al., <br>     Plaintiffs, <br><br> v. <br><br> LOCAL UNION NO. 7, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL & REINFORCING IRON WORKERS, et al., <br><br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 04-cv-12536-RGS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### AFFIDAVIT OF SUSAN BEAUREGARD

SUSAN D. BEAUREGARD, having been duly sworn states on personal knowledge the following:

1    That I have been president of Construction Welding Services Corp ("CWS") since 2001. CWS is a Massachusetts corporation.

2.    The Company employed about approximately ninety-two (92) employees, including office, clerical, managerial, and supervisory employees.

3.    CWS had no other corporate officers and no other shareholder but myself.

4.    My job responsibilities as President of CWS included hiring and firing employees, hiring office staff and supervisors, estimating jobs, reviewing and issuing contract bids, approving payroll, granting pay increases, and establishing the company policies. I trained the office staff and office messengers. I hired the project managers. No other employee was authorized to undertake any of these functions.

5.    CWS's primary operating market was public steel erection jobs within the Boston vicinity on prevailing wage projects. CWS's business model intended to reduce ongoing monthly overhead by not purchasing expensive equipment for steel erection,

such as cranes, but by leasing and renting equipment when needed to reduce these costs.

6. CWS usually worked under a contract with a steel fabricator that had obtained the fabrication-erection package for a construction project from a general contractor, owner or developer. The fabricator customers of CWS were Beauce Atlas in Canada, Lesfab Steel International, and Canatal Industries, Inc., Quebec, Canada, Mandate Erectors & Welding in New Brunswick, Canada, St. John, Ocean Steel Construction LTD, St. John, NB, Canada, Sturo Metal, Levis, Quebec, and Quinn Brothers, Essex, Massachusetts.

7. The primary components of bids within the steel erection industry are labor costs and crane costs, which include the costs of the crane operator, oiler, cleaner, employee travel when out of the company's general area of operations, and administrative overhead.

8. On March 21, 2001, CWS signed a document entitled Acceptance of Agreements and Declarations of Trusts Agreement ("Agreement") with Michael Durant, a business agent of Iron Workers Local 7 ("Union") without proof of employee support for the union. Exhibit 1. I signed the agreement as President of CWS and not in my individual capacity.

9. I have no direct knowledge of the cost structure of non-union steel erection companies in this industry. I understand that they may sometimes pay their employees less than the Iron Worker contract rates. This advantage could essentially be eliminated on prevailing wage jobs where the local Union rate was the prevailing wage rate under Massachusetts or federal law.

10. After I signed the Union contract, I was approached by union business agents such as Edwin Wright. Mr. Wright advised me that I could obtain job target

funds from the Union in order to obtain an advantage against other bidders, including non-union steel erectors. The funds would allow CWS to submit lower bids on a project and help drive non-union steel erectors out of CWS's competitive market.

11. CWS was informed that when it became a union contractor, it would be provided job target money on several jobs by Local 7 prior to bidding the work. Each time I agreed to accept target money to bid on a job, I had to agree to separate terms for payment with Local 7.

12. CWS received target money from Local 7 on several projects. CWS received two payments totaling $20,450.68 and $2,006.68 for the 405 Cochituate Road project, $31,205.01 for the Carroll School project, $30,600.00 for the John Eliot School project, and $17,000.00 for the Munroe Place project. I knew that there were non-union companies bidding on the 405 Cochituate Road project.

13. CWS received a purchase order from York Steel, Inc., Canada (Ocean Steel & Construction), to erect all structural steel, deck, open rail steel for the Laboure Center, 371 West Fourth Street, South Boston, MA on June 28, 2001 for $120,600.00. CWS signed the agreement on August 15, 2001. On this project CWS neither signed a job target contract with Local 7 nor received job target money from Local 7.

14. Local 7's claim that CWS made a donation to the Rebar and Welding Building Trades at the Laboure Center on March 8, 2002 for $16,296.00 and on July 30, 2002 for $32,079.60 as shown in Exhibit 2 is not true. The first time I saw this documentation was September 28, 2006. I never received any such notification letters from Local 7 on or about March 8 and July 30, 2002. I never discussed any such donations to the Laboure Center with any entity or with Paul DiPietro, Charles Wright or any other union business agent.

15. While I do not recall how I learned about the targeted jobs in all cases, I

do recall both calling Local 7 on occasion regarding a particular job to find out if target funds were available for that job or being contacted by Local 7 via fax or telephone that a job had target funds available to use. I do not know whether Target funds may have been offered to other union signatory contractors on the same projects I was bidding on.

16.    Once Local 7 decided to provide CWS with target funds on a particular project and after CWS won its bid, CWS and Local 7 would sign an agreement as to the terms of payment. A copy of the Target Agreement for the John Eliot Elementary School project in Needham, Massachusetts is attached as Exhibit 3. The terms of the Target Agreements were essentially the same. The Target Agreements only required CWS to do what was already set forth in the collective bargaining agreement—to pay union wages and benefits under the appropriate local union agreement. This included the payment of weekly wages and bi-weekly benefits to trust funds. The Target Agreement did not reduce any wages or benefits that CWS was required to pay its workers under the collective bargaining agreement or affect CWS's costs. Essentially, the target fund money became CWS's profit on the job.

15.    Only after substantial completion of various stages of the project, would CWS request payment from Local 7 under the terms of the Target Agreement. Local 7 would then issue a check to CWS that CWS would then deposit into its general operations account. CWS was free to use the target money to pay any expenses of the business. Local 7's check would be issued payment to CWS without any restriction on use of the money by CWS. A copy of a John Elliot School target fund check is attached as Exhibit 4.

16.    Edwin Wright contacted me on numerous occasions in 2001 and 2002 to tell me that Local 7 would provide CWS with target funds "in order to prevent non-Local 7 contractors from obtaining work." It was clear to me that union signatory contractors

might have a competitive disadvantage on private jobs, but little disadvantage on prevailing wage jobs. This is why CWS was focused on prevailing wage type of work. Obtaining target money from Local 7 would ensure that CWS could win about every public sector contract we could bid on in the Boston area.

17. On January 10, 2003, I directed the cessation of operations of CWS. Notice of termination of operations was provided to Local 7 business agent Edwin Wright.

Further Affiant saith naught.


Susan D. Beauregard

Subscribed to and sworn before me this 2 day ~~September~~ October, 2006.

Notary Public

ALAN F. LAMBERT
Notary Public
Commonwealth of Massachusetts
My Comm. Expires July 27, 2013

Exhibit A

## ACCEPTANCE OF
## AGREEMENTS AND DECLARATIONS OF TRUSTS

It is mutually agreed as follows:

1. This Agreement is made this <u>29th</u> day of <u>March</u>, <u>2001</u> by and between <u>Construction Welding Services Corp.</u>

   whose address is <u>279 Redemption Rock Trail Sterling</u> Zip Code: <u>01564</u>
   (hereafter "Employer")
   telephone number ( <u>978</u> ) <u>422-9004</u> facsimile <u>978-422-9007</u>
   AND
   Local Unions 7, 37, 57, 357, 496, and 474, each affiliated with the Iron Workers District Council of New England and the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, AFL-CIO (hereinafter the "Local Union" or collectively as "the Union"); and (said Employer, each Local Union, and the Union being hereinafter also referred as "Parties").

2. The Employer recognizes that each Local Union has with construction industry employers and their employer associations a collective bargaining agreement in the respective geographical jurisdictions of that Local Union. These area agreements include:
   
   A. An agreement between Local 7 and the Building Trades Employers Association of Boston and Eastern Massachusetts, Inc. and Labor Relations Division of the Associated General Contractors of Massachusetts, Inc.;
   
   B. an agreement between Local 37 and the Labor Relations Division of the Rhode Island Chapter Associated General Contractors of America, Inc. and Rhode Island Steel Erectors Association and the Labor Relations Division of the Associated General Contractors of Massachusetts, Inc.;
   
   C. an agreement between Local 57 and the Building Trades Employers Association of Boston and Eastern Massachusetts, Inc. and Labor Relations Division of the Associated General Contractors of Massachusetts, Inc.;
   
   D. an agreement between Local 357 and the Construction Industry Association of Western Massachusetts;
   
   E. an agreement between Local 496 and the Northeastern New England Contractors Association; and
   
   F. an agreement between Local 474 and the Northeast Contractors Association.

   All said employer associations being referred to herein as "the employer associations", and all said area agreements being referred to herein as the "Local Agreement" or collectively "Local Agreements". The Employer shall without regard to membership in said employer associations be bound by the terms and conditions of said Local Agreements, including amendments and addenda thereto and including successor agreements which are subsequently negotiated between the Local Union and the employer associations referred to in A through F immediately above or their successor employer association.

   All said Local Agreements are hereby incorporated by reference herein and shall have the same force and effect as though said Local Agreements were set forth in this Agreement at length, including the provisions governing duration and termination of said Local Agreements which shall be the same for this Agreement. The Employer by signing below hereby acknowledges receipt and knowledge of all such Local Agreements and accepts responsibility for remaining apprised of successor agreements entered into by the employer associations.

3. The life of this Agreement shall be coextensive with the terms set out or as they shall be set out from time to time in the Local Agreements and shall continue in effect unless either Party signed below gives notice of termination of a particular Local Agreement in accordance with the applicable notice provisions contained therein. In the event neither Party hereto gives timely notice of termination with respect to a Local Agreement, then such Local Agreement shall remain in effect until a successor Local Agreement is entered into, the economic terms of which shall be retroactive to the expiration date of the prior Local Agreement.

4. To protect and to preserve for employees covered (including employees intended to be covered) by this Agreement all work covered by the Union and this Agreement and to prevent any device or subterfuge that would seek to avoid the protection and preservation of such work, it is agreed that: If the Employer performs on-site construction work of the type covered by this Agreement under the Employer's own name or of another or as a joint venturer, partner, or other business entity wherein the Employer through its officers, directors, partners, or stockholders, exercises directly or indirectly management, control or majority ownership, then the terms and conditions of this Agreement and the Local Agreements incorporated herein shall apply to such work.

1

5. The Employer's operations covered by this Agreement shall not be sold, conveyed, nor otherwise transferred assigned, reorganized (including but not limited to new corporate structures, etc.), to any successor, including but not limited to the sale or transfer of the Employer's primary assets, without first securing the written agreement of the successor(s) or assignee(s) to assume the Employer's obligations under this Agreement. Provided that the Employer, upon securing such written agreement, shall not be a guarantor nor be held liable for any breach by the successor nor assignee of its obligations.

6. The Local Agreements provide among other things for contributions to a health and welfare fund, pension fund, annuity funds, apprentice and training funds, and other funds or trusts. The Employer agrees to be bound by the terms of the respective fund agreements and any applicable declarations of trusts and any regulations of the Board of Trustees as now exist or may from time to time be enacted. The Employer designates as its representatives on the Boards of Trustees such Trustees as have been designated Employer Trustees in the manner provided in each fund agreement and declarations of trust. The Employer agrees to pay all costs and attorney fees reasonably incurred in collecting any of its delinquent contributions to any such fund or trust. The Employer hereby acknowledges receipt and knowledge of all such fund documents, including the agreements and declarations of trusts.

7. The Employer shall make available for examination to the Union or fund trustees, including their designees, any and all records and information in the Employer's control that the Union, any Local Union, or any fund trustee may determine in their discretion is required for the sound and efficient operation of any applicable fund.

8. The Employer agrees that upon any Local Union's presentation of evidence (including but not limited to authorization cards or membership applications, etc.) of majority status among its employees in the bargaining unit covered by this Agreement, the Union shall be deemed to have demanded recognition and the Employer agrees to recognize voluntarily and contemporaneously the Union as the exclusive bargaining agent under Section 9(a) of the National Labor Relations Act for its employees within the bargaining unit on all present and future job-sites, notwithstanding any intervening periods. The Employer expressly waives any right to abrogate or repudiate this Agreement, including during any reduction in its workforce to one employee or less, its right to seek a National Labor Relations Board ("NLRB") election during the term of this Agreement, and its right to condition voluntary recognition on the Union's certification by the NLRB following a NLRB election.

9. A. The Parties acknowledge that the undersigned Union representative is, for the purposes of executing this Agreement only, an agent of each and every Local Union to the same extent as if the Local Union had separately signed this Agreement.

   B. By signing below for the Employer, the person signing represents and assures that the Employer has granted said person the authority and power to act as the Employer for the purposes of binding the Employer to this Agreement.

   C. The Parties hereto have caused this Agreement to be executed, signed and sealed by their duly authorized representative(s) upon the day and year first above written.

_Susan Beauregard - President_
Employer's Signature and Title

_Susan Beauregard - President_
Print Name and Title

_Michael J. Durant_
Union Representative

_Michael J. Durant_
Print Name
_Business Agent / E.R._

Exhibit B

| | | |
|---|---|---|
| BUSINESS MANAGER<br>JAMES COYLE<br>PRESIDENT<br>JAMES BROWN<br>FINANCIAL SECRETARY-TREASURER<br>PAUL J. DIPIETRO |  | BUSINESS AGENTS<br>EDWIN WRIGHT<br>PATRICK McDERMOTT<br>MICHAEL J. DURANT<br>BUSINESS AGENT / INDUSTRY ANALYST<br>CHARLES WRIGHT<br>NEIL CONLEY |

INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL & REINFORCING IRON WORKERS



195 OLD COLONY AVENUE • P. O. BOX 7 • SOUTH BOSTON, MASSACHUSETTS 02127 • 617-268-4777 • FAX 617-268-7878

March 8, 2002

Construction Welding Services
279 Redemption Rock Trail
Sterling, MA 01564

Enclosed find a check from the Target program for the donation for Laboure' project Building Trades CWS Contractor in the amount of $16,296.00.

Sincerely,

Paul J. DiPietro
Secretary/Treasurer

Charles Wright
Business Agent/Industry Analyst

Enclosure - check

---

**1184**

**IRON WORKERS LOCAL UNION #7**
195 OLD COLONY AVE.
SOUTH BOSTON, MA 02127

DATE 3/8/02      5-7515-110

PAY TO THE ORDER OF  LABOURE' CENTER      $ 16,296—

_____ DOLLARS

SOVEREIGN BANK NEW ENGLAND

FOR DONATION FOR LABOURE' PROJECT BLDG. TRADES,
CWS CONTRACTOR   ⑆001184⑆ ⑉011075150⑊ 9557001230⑆

Paul DiPietro
Charles H. Wright

DEF 09347

BUSINESS MANAGER
JAMES COYLE

PRESIDENT
JAMES BROWN

FINANCIAL SECRETARY-TREASURER
PAUL J. DiPIETRO

BUSINESS AGENTS
EDWIN WRIGHT
PATRICK McDERMOTT
MICHAEL J. DURANT

BUSINESS AGENT / INDUSTRY ANALYST
CHARLES WRIGHT
NEIL CONLEY

INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL & REINFORCING IRON WORKERS

# Local 7

A.F.L.-C.I.O.

195 OLD COLONY AVENUE • P.O. BOX 7 • SOUTH BOSTON, MASSACHUSETTS 02127 • 617-268-4777 • FAX 617-268-7878

July 30, 2002

$48,375.40

Laboure Center
371 West Fourth St.
South Boston, MA 02127

Enclosed please find a check from the Target program for the Donation to Rebar and Welding Building Trades in the amount of $32,079.60.

Sincerely,

Paul J. DiPietro
Secretary/Treasurer

Charles Wright
Business Agent/Industry Analyst

Enclosure - check

---

1241

IRON WORKERS LOCAL UNION #7
195 OLD COLONY AVE.
SOUTH BOSTON, MA 02127

DATE 7/30/02    5-7515-110

PAY TO THE ORDER OF  LABOURE CENTER                            $ 32,079.60

DEF 09346                                                       DOLLARS

SOVEREIGN BANK NEW ENGLAND

FOR Donation Rebar + Welding Building Trades

⑆⑆00 1241⑆⑆ ⑆:011075150⑆: 9557000 1230⑆⑆

Exhibit C

IRONWORKERS LOCAL 7



# Local #7 Target Fund Contract # 790

Local #7, through its Target Fund, is offering up to a maximum of thirty thousand, six hundred dollars ($30,600.00) reimbursement for the structural steel portion on the JOHN ELIOT ELEMENTARY SCHOOL ; Needham, Ma.

*Said offer is based on the following conditions:*

Local # 7 will reimburse **CONSTRUCTION WELDING SERVICES, INC.** a total of two ($2.00) dollars per hour, up to a maximum of three thousand, three hundred (3,300) hours, for a possible total reimbursement of six thousand, six hundred ($6,600) dollars. By virtue of becoming signatory to this contract, the contractor expressly understands and agrees that any amount of hours worked over the maximum amount, as listed in this agreement, will not be reimbursed by local # 7s' Target Fund.
Furthermore, it is agreed that should the covered portion of this project require less than three thousand three hundred (3,300) hours to complete, the contractor will only be reimbursed for the actual amount of hours worked, and then, only if all of the applicable conditions contained herein were adhered to.

*Crane reimbursement:*

Local # 7 agrees to reimburse the contractor up to a maximum of twenty-four thousand dollars ($24,000.00) to assist in defraying crane rental costs. Said payment is based on forty (40) "crane days" at a cost of six hundred ($600) per crane day, for a maximum of forty (40) days. It is also clearly understood and agreed, that crane days will be clearly defined for this agreement as the amount of days where the crane was utilized for the entire day, on the work covered under this agreement, by employees working under the collective bargaining agreement of Local # 7. Idle crane days, where the crane is on the job but not utilized, will not be counted or reimbursed. Partial days will be added cumulatively with eight (8) hours constituting a crane day (i.e. two days of using a crane for four hours each day will equal one crane day). It is also clearly understood and agreed that overtime hours are not added into any cumulative sum and no reimbursement will take place other than the hours actually worked. Should this project require less than forty (40) crane days to complete, the contractor will only be reimbursed for the actual amount of crane days that were needed and then, provided only if all of the applicable conditions contained herein were adhered to. The six hundred dollar ($600) crane per diem relates to a large or lattice boom type crane, i.e. 100-150 ton crane. Local # 7 pays four hundred ($400) crane per diem for smaller hydraulic type cranes, i.e. 40-50 ton cranes.

*It is expressly understood that this reimbursement is being offered, and will only be remitted to the contractor, after it has been clearly established by Local #7 that the following conditions were also met:*
A. This agreement is signed by the contractor and the Local #7 Business Agent in whose geographic area the covered work is being performed.
B. All wages and fringe benefits, as required by the currently existing Local #7/BTEA/AGC collective bargaining agreement, have been paid to every member working under this particular agreement, and all remittance reports that verify these payments are in order at the IWDCNE Fund Office.

ASE 000165

IRONWORKERS LOCAL 7

C. All hours and conditions are verifiable by the Local #7's **Steward's Report** and the Local #7's **Target Sheet**, both of which must be filled out, and remitted to Local #7 _weekly_, solely by the Business Agent's appointed steward for this job. Each remitted **Target Sheet** must be signed by an authorized representative of the contractor.
D. The contractor is not in arrears on the payment of wages and or fringe benefits for any present or previous project(s) within the confines of Local #7's geographic jurisdiction.
E. The contractor acknowledges that it is a signed party to the Local #7/BTEA/AGC collective bargaining agreement under _Section 9a_ of the _National Labor Relations Act_.
F. Reimbursement is requested by the contractor to Financial Secretary Paul DiPietro (617-268-4777).

_Edwin C Wright_  
BA Local # 7

_Susan Beauregard_  
(contractor)

Date  Oct 30-02

Date  10-31-02

Received by FS/T Paul DiPietro (signature) _____ Date

ASE 000166

Exhibit D



ASE 000168