## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERICAN STEEL ERECTORS, INC., et al. )<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>LOCAL UNION NO. 7, INTERNATIONAL )<br>ASSOCIATION OF BRIDGE, )<br>STRUCTURAL, ORNAMENTAL & )<br>REINFORCING IRON WORKERS, )<br>)<br>Defendant. )<br>) | Case No. 1:04-cv-12536-RGS |

### DEFENDANT IRON WORKERS LOCAL 7'S OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE AFFIDAVITS IN SUPPORT OF DEFENDANT IRON WORKERS LOCAL 7'S AMENDED MOTION FOR SUMMARY JUDGMENT

## I.  INTRODUCTION

Defendant Iron Workers Local 7 ("Local 7") hereby opposes Plaintiffs' Motion to Strike Affidavits in Support of Defendant Iron Workers Local 7's Amended Motion for Summary Judgment on grounds that the affidavits of Joseph W. Nigro, Jr., Thomas J. Gunning, James Coyle, and John F. Hurley comply with the requirements of Rule 56(e) of the Federal Rules of Civil Procedure.

At the outset, it is worth noting that Plaintiffs made no real effort to adduce affidavits to counter Defendant's affidavits; instead, they have resorted to attacking Defendant's affidavits with a Motion to Strike.[1]  Their reason for this tactic is self-evident:  the facts ascertained in

---

[1]    Rule 56(e) of the Federal Rules of Civil Procedure, provides that:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

discovery substantiate those affidavits. In many instances, as detailed below, Plaintiffs' own Complaint, deposition testimony, responses to interrogatories, and responses to Local 7's Statement of Undisputed Facts, separately establish the undisputed facts Local 7 established, in part, through its affidavits. Moreover, to the extent that there are any facts not otherwise supported by the record and Plaintiffs' own admissions, they are immaterial to the disposition of this case on summary judgment.

## II. STANDARD

The party moving to strike an affidavit "must specify the objectionable portions of the affidavit and the specific grounds for objection." Casas Office Machs., Inc. v. Mita Copystar Am., 42 F.3d 668, 682 (1st Cir. 1994) (citing 10A Charles Wright *et al.*, *Federal Practice & Procedure*, § 2738 at 507 (2d ed. 1983)). "[A] court will disregard only those portions of an affidavit that are inadmissible and consider the rest of it." Id. "Where the affidavit includes both competent and incompetent evidence, the Court should disregard the incompetent evidence, but give full consideration to that which is competent . . . . This is nothing more than the procedure which would be followed at trial." Id. (quotations and citations omitted).

## III. DISCUSSION

Plaintiffs attack the admissibility of Local 7's affidavits in two ways. First, Plaintiffs attack each affidavit generally and in its entirety on what amounts to, at most, technical violations of Rule 56, in a thinly veiled attempt to overcome their own factual deficiencies in this case. Second, Plaintiffs attack specific statements in each of the affidavits on various grounds, which are, for the most part, baseless.

---

The affidavits of John Paulding and Susan Beauregard submitted by Plaintiffs in support of their Opposition to Local 7's Amended Motion for Summary Judgment fail to rebut most the facts brought forth by Local 7's Affidavits in Support of Its Amended Motion for Summary Judgment.

### A. PLAINTIFFS' GENERAL CONTENTION THAT WHAT AMOUNTS TO, AT MOST, TECHNICAL VIOLATIONS OF RULE 56(e) DOES NOT SUFFICE TO STRIKE EACH OF THE AFFIDAVITS IN ITS ENTIRETY.

Plaintiffs ask this Court to strike each of the affidavits in its entirety without specifying which portions of each affidavit they find objectionable and on what grounds (see Casas Office Machs., *supra*) and simply because the affidavits did not include a jurat.

In Plaintiffs' view, because each affiant does not "affirmatively state" that he "is competent to testify to the matters set forth in the affidavits," each affidavit must be stricken in its entirety. See Pls.' Mtn. to Strike at ¶¶ 1, 2, 3, and 4. Plaintiffs are, in essence, arguing form over substance. An affidavit's substance, not its linguistic form, determines whether it complies with the requirements of Rule 56(e). Specifically, Rule 56(e) provides that:

> [s]upporting and opposing affidavits *shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.* Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Fed. R. Civ. P. 56(e) (emphasis supplied). Admissibility of an affidavit for summary judgment purposes is determined, not on the precise words used, but on whether the affidavit would be admissible evidence at trial. See Casas Office Machs., *supra*; see also Maiorana v. MacDonald, 596 F.2d 1072, 1076 (1st Cir. 1979) ("Supporting and opposing affidavits shall be made on personal knowledge, *shall set forth such facts as would be admissible in evidence*, and *shall show affirmatively* [i.e., not "affirmatively state," as Plaintiffs' would have it] that the affiant is competent to testify to all matters stated therein.") (emphasis supplied); 10B Charles Wright, *et al.*, *Federal Practice and Procedure*, § 2738 at p. 343 (West Group 1998) ("[O]verly strict adherence to the demands of Rule 56(e) could lead to an undue amount of energy being devoted to 'qualifying' affidavits[.]"). Rule 56(e)'s requirements of "personal knowledge" and

"competen[cy] to testify" may be *inferred* if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge. Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990).

Here, "personal knowledge" and "competen[cy] to testify" may be reasonably inferred from the context of the affidavits, as each affidavit sets forth sufficient facts to clearly show that the affidavit is based on the personal knowledge of the affiant. For example, each affidavit provides the affiant's relevant background. Each affidavit states why the affiant has chosen to sign the affidavit. Finally, each affidavit clearly states facts the affiant knows by virtue of his background.

Joseph W. Nigro, Jr.'s competency to testify regarding the facts contained in his affidavit arises from his background as retired Secretary-Treasurer/General Agent of the Building and Construction Trades Council of the Metropolitan District ("Council"), a position he held from January, 1986 to March, 2005. Nigro Aff., ¶¶ 1 and 2. See Catawaba Indian Tribe of South Carolina v. South Carolina, 978 F.2d 1334, 1342 (4th Cir. 1992) ("We are of opinion that, ordinarily, officers would have personal knowledge of the acts of their corporations."). Nigro's affidavit states that in his capacity as Secretary-Treasurer/General Agent, he supervised the negotiation and administration of collective bargaining agreements covering many of the largest construction projects undertaken in the Boston area, including public sector projects in Massachusetts that have been governed by Project Labor Agreements ("PLAs"). Id., ¶ 3. With this foundation clearly established, Nigro's affidavit then sets forth facts regarding the nature of PLAs, the purpose of PLAs, the content of PLAs, and details concerning specific PLAs that he negotiated and administered. Id., ¶¶ 4-11. It is unfathomable that the person who negotiated and

administered the largest PLAs in the Greater Boston area and in New England would not have sufficient knowledge regarding the background of the PLAs to testify about them.

Thomas J. Gunning's competency to testify regarding the facts contained in his affidavit is established by his background as Executive Director for the Building Trades Employers' Association of Boston and Eastern Massachusetts ("BTEA") for ten (10) years as of the date he signed his affidavit (January 9, 2006) and Director of Government Relations for the BTEA for eight years prior to becoming Executive Director. Gunning Aff., ¶ 1. To the extent that Gunning's statements have to do with BTEA conduct and actions while he was Executive Director of the association, his affidavit establishes an adequate foundation for his personal knowledge thereof. See Catawaba Indian Tribe, *supra*.

James Coyle's competency to testify regarding the facts contained in his affidavit are rooted in his background as a Local 7 member, Foreman, General Foreman, Job Steward, Business Agent, and Business Manager, as set forth in the affidavit. See Coyle Aff., ¶¶ 1-3. To the extent that Coyle's statements have to do with Local 7's conduct and actions while he served as an elected full-time business agent and business manager for Local 7 from June of 1997 to April of 2005, his affidavit establishes an adequate foundation for his personal knowledge thereof. See Catawaba Indian Tribe, *supra*.

John F. Hurley's competency to testify regarding the facts contained in his affidavit is grounded in his background from currently serving as General Vice President of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, AFL-CIO, since May of 2005; from currently serving as President of the New England District Council of Iron Workers, since June of 2002; from being a member of Local 7 since 1974; from working for three years as an apprentice and for sixteen (16) years as a journeyman iron worker; and from

serving in various elected Local 7 offices, including Vice President from 1987 to 1988, Recording Secretary from 1988 to 1991, President from 1991 to 1993, Business Agent from 1993 to 1997, and Business Manager from 1997 to 2001. To the extent that Hurley's affidavit discusses the steel erection industry, Hurley's more than thirty (30) years of involvement in the steel erection industry, as set forth above, provides the adequate foundation for him to testify competently regarding facts related to that industry. To the extent that Hurley's affidavit states facts concerning Local 7 conduct and activities during the time period in which he was a Local 7 officer, from 1993 to 2001, as set forth above, Hurley is highly competent to testify regarding those matters. See Catawaba Indian Tribe, *supra*.

This Court should also consider relevant to its determination of admissibility of Nigro's, Gunning's, and Coyle's affidavits that there was no element of surprise surrounding the facts contained in any of those affidavits. The Defendant first filed each of the challenged affidavits with the Court with its Motion for Partial Summary Judgment on March 20, 2006. Local 7 relied upon these same affidavits when it filed its Amended Motion for Summary Judgment on August 31, 2006, after months of discovery. The Plaintiffs had five months in which to depose the affiants and challenge their statements on the basis of lack of personal knowledge or on any other grounds, yet chose to depose only Hurley. Plaintiffs should not now be allowed to rest on what *may* amount to, at most, technical violations of Rule 56(e) to omit these affidavits in their entirety where Plaintiffs failed, though given ample opportunity, to challenge in depositions the substance of the facts to which the affiants testified. To the extent that form may be placed before substance, Defendant, in the alternative, asks this court leave to file the attached (at Exhibits 1-3) Supplementary Affidavits of Joseph W. Nigro, Jr., Thomas J. Gunning, and James

Coyle[2] in Support of Local 7's Amended Motion for Summary Judgment that inject the magic words Plaintiffs allege are required.[3]

Plaintiffs also erroneously attack the affidavits in their entirety for their failure to be sworn and their failure to state that all matters set forth therein are true and correct. Pls.' Mtn. to Strike, ¶¶ 1, 2, 3, and 4. However, affidavits that are dated and signed under the pains and penalties of perjury, as each of these affidavits was, are admissible for summary judgment purposes, despite not having been sworn to by a Notary Public. See Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell v. Medfit Int'l, Inc., 982 F.2d 686, 689-90 (1st Cir. 1993) ("Under federal law, an unsworn statement signed under penalty of perjury may be used, in lieu of a sworn statement or affidavit, to support or oppose a motion for summary judgment." ) (citations omitted); see also Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir.1985) (An affidavit failing to satisfy the "technical, non-substantive requirements of execution" may be considered as part of a party's opposition to a motion for summary judgment provided the affidavit is signed and dated under the pains and penalties of perjury.), cert. denied, 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986); Davis v. Frapolly, 756 F. Supp. 1065, 1067 (N.D.Ill.1991) (Unsworn statements signed under penalty of perjury may be considered as evidence in support of a motion for summary judgment.).[4]

---

[2]  Defendant does not see any need to file a supplemental affidavit for Hurley, as Plaintiffs took the opportunity to question Hurley about the statements in his affidavit, including about whether he had personal knowledge of the facts contained therein. See Pls.' Mtn. to Strike Affs., ¶ 1.

[3]  See New York State Energy Research & Devel. Auth. v. Nuclear Fuel Serv., Inc., 561 F. Supp. 954, 960 (D.C.N.Y. 1983) (Deficiencies in an affidavit in support of a motion for summary judgment in regards to affiant's statement of his personal knowledge of the facts set forth regarding the authenticity of the attached documents was cured by his supplemental affidavit in opposition to the cross-motion to strike the affidavit, which detailed affiant's years of involvement with the events and dealings at issue.); Liberty Curtin Concerned Parents v. Keystone Central Sch. Dist., 81 F.R.D. 590, 604 (D.C.Pa. 1978) (The submission of additional affidavits in support of a motion for summary judgment that stated that the information contained therein was based on the personal knowledge of the affiants was sufficient to cure any defects which existed in the averment portion of the original affidavits.).

[4]  Indeed, one of Plaintiffs' own affidavits, itself, submitted in support of their Opposition to Local 7's Amended Motion for Summary Judgment, does not state that all matters set forth therein are true and correct. See John J. Paulding Affidavit ("Aff.") (Notary Public makes no note of affiant having been duly sworn, nor does Paulding state

**B. PLAINTIFFS' SPECIFIC AVERMENTS THAT PORTIONS OF EACH OF THE AFFIDAVITS SHOULD BE STRICKEN FAIL TO PROVIDE ADEQUATE BASES FOR STRIKING THOSE PORTIONS OF THE AFFIDAVITS.**

1. Joseph W. Nigro, Jr. Affidavit

Plaintiffs' request that portions of Joseph W. Nigro, Jr.'s affidavit be stricken is non-colorable.

Plaintiffs' contention that statements about the content of the PLAs in paragraphs 7 and 9 are inadmissible hearsay is baseless. As paragraphs 1-6[5] of the affidavit clearly establish, the Council, of which Nigro was an officer for nearly twenty (20) years, is a party to these PLAs; Nigro negotiated these PLAs; Nigro has obviously seen them before; and Nigro understands their content. Nigro, therefore, is eminently competent to testify as to the content of the PLAs. Moreover, Plaintiffs do not object to Nigro's statements regarding his analysis of the content of the PLAs; thus, to the extent that this Court might find a hearsay basis for striking these paragraphs, only the statements concerning content, and not those consisting of analysis, should be stricken.

Plaintiffs specifically claim that paragraphs 7 and 9 regarding the content of the PLAs are inadmissible hearsay because "to prove the content of a writing," the writing is required. Yet, even though Nigro attaches to his affidavit copies those writings to which he refers (at Tabs B-E), Plaintiffs nevertheless seek to exclude them on the grounds that Nigro failed to authenticate portions of those PLAs he attached.[6] As paragraphs 1-6 provide, Nigro acted as the chief negotiator on behalf of the Council on these and other PLAs. There is simply no other person,

---

that his affidavit is true and correct).

[5] Defendant notes that Plaintiffs do not specifically challenge paragraphs 1-6; therefore, nothing in these paragraphs should be stricken. See Casas Office Machs., *supra*.

[6] Ironically, Plaintiffs made no attempt to authenticate numerous documents submitted unattached to any affidavits as part of Plaintiffs' Appendix to their Opposition to Local 7's Amended Motion for Summary Judgment.

except possibly the government representative(s) who supervised the negotiations of these large Greater Boston area PLAs on the government's behalf, who is more competent, or at least equally as competent, to testify to the content of these four PLAs. As an alternative, Local 7 is filing under separate cover a Supplemental Affidavit of John Nigro in which he clearly states that Tabs B-E are true and accurate copies of portions of PLAs that he negotiated, signed, and administered on behalf of the Council during his tenure as Secretary-Treasurer/General Agent of the Council.

With regard to paragraph 10, the affiant lays the foundation for the first and third sentences of paragraph 10 by explaining his role as an officer of the council and in negotiating the PLAs. See Nigro Aff., ¶¶ 1-3. Moreover, the phrase "[t]o my knowledge," in the second sentence limits the scope of Nigro's statement to matters within his personal knowledge.

With respect to paragraph 11, Nigro's affidavit at paragraphs 1-6 establishes that because of his position with the Council, the affiant is familiar with both the negotiation and *administration* of the largest construction projects in the Greater Boston area and in New England, including the large public sector PLAs. Those paragraphs establish a sufficient foundation for Nigro's personal knowledge that he is "not aware that Plaintiffs in this case attempted to obtain steel erection work on any significant portion of the work on these very large public jobs in the last ten years[.]"[7] Nigro Aff., ¶ 11. As to Plaintiffs' objection to Nigro's statements about what Judge Garsch noted in the Big Dig litigation on inadmissible hearsay grounds, the foundation for these statements is established by affidavit facts showing that Nigro

---

[7] Without any substantiated basis whatsoever, Plaintiffs deny Local 7's Undisputed Fact No. 17 – that "Plaintiffs have chosen not to bid on large PLAs." Plaintiffs' sole ground for this denial is that "Fabricators do not issue bids with PLA specifications on them." Pls.' Consol. Resp. to Local 7's Statement of Undisputed Facts No. 17. That statement does not refute the fact that Plaintiffs did not bid on large PLAs; it is simply a statement concerning notice of whether a job is a PLA. Moreover, as established in Local 7's Statement of Undisputed Fact No. 17, Plaintiffs *admit* in their deposition testimony that they did not bid on large PLA jobs. Therefore, there is no genuine dispute that Plaintiffs' have not chosen to bid on large PLAs.

was acutely involved in and familiar with the Big Dig and, because of his role in the administration of the Big Dig PLA, knew about the Big Dig litigation as well as Judge Garsch's decision concerning that litigation. Nigro Aff., ¶¶ 1-6, and 8. Moreover, the Plaintiffs do not specifically object to paragraph 8, which refers to Judge Garsch's decision, attached at Tab A. Thus, to the extent that Nigro's statements regarding Judge Garsch's findings are found to be inadmissible, Judge Garsch's actual findings themselves remain unchallenged by Plaintiffs, and the facts underlying the affiant's statements would still be admissible.[8]   In the alternative, Defendant asks this Court to take judicial notice of Judge Garsch's decision. <u>Government of Virgin Islands v. Gereau</u>, 523 F.2d 140 (3d Cir. 1975) (Facts which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy may be considered without first being proved.), <u>cert</u>. <u>denied</u>, 96 S.Ct. 1119, 424 U.S. 917, 47 L.Ed.2d 323.

　　　2. <u>Thomas J. Gunning Affidavit</u>

Plaintiffs only specifically challenge the admissibility of Tab A and paragraphs 5-6 (Plaintiffs also challenge the admissibility of paragraph 7; however, the affidavit contains no such paragraph).[9]

While Plaintiffs do not ask this Court to strike any specific statements contained in paragraph 4 of Gunning's affidavit, they do ask that Tab A (Section 9 of the collective bargaining agreement between the BTEA and Local 7, effective September 16, 2000 through September 16, 2006) referenced therein and attached to the affidavit be stricken and held

---

[8]   Paragraph 8 states that open access rules, such as those included in the PLAs of the four largest projects in the Greater Boston Area over last ten (10) years (Boston Harbor clean up, Big Dig, Logan Airport reconstruction, and South Boston Convention Center) were established by standards set in the so-called Boston Harbor case, and attaches Tab A. Nigro Aff., ¶¶ 5, 8, and Tab A. Paragraphs 7, 9, 10, and Tabs B-E, objected to by Plaintiffs, are included in the affidavit, in large part, to establish these open access rules. Given that that fact is separately established and specifically unchallenged in affidavit paragraph 8 and in Tab A to the affidavit, striking all or portions of those specifically challenged paragraphs would not change Local 7's position at summary judgment.

[9] Nothing in these specifically unchallenged paragraphs should be stricken. <u>See</u> <u>Casas Office Machs.</u>, <u>supra</u>.

inadmissible on the ground that Gunning failed to authenticate the document. Gunning's background and position with the BTEA as well as the BTEA's involvement in collective bargaining with Local 7 during the relevant time frame is sufficient to authenticate the document attached as Tab A as what Gunning purports it to be in paragraph 4. See Gunning Aff., ¶¶ 1-4. Remarkably, Plaintiffs themselves submitted the *entire* collective bargaining agreement between the BTEA and the Council, of which Local 7 is a member, effective September 16, 2000 through September 16, 2006 (including the page from that agreement they seek to exclude here) as Exhibit 10 to Appendix submitted in support of their Opposition of Local 7's Amended Motion for Summary Judgment.

With regard to paragraphs 5 and 6, Plaintiffs specifically contend that because Gunning does not "state" the basis of his personal knowledge for the facts set forth in those paragraphs, they should be stricken. Gunning's affidavit, however, "show[s]" the basis of his personal knowledge. To the extent that those paragraphs concern BTEA conduct and action during the time in which he was Executive director of the association, as established in paragraph 1 of the affidavit, Gunning has adequately laid the foundation for those facts.[10]

3. James Coyle Affidavit

Plaintiffs' claim that specific statements in James Coyle's affidavit should be stricken is baseless.

Plaintiffs sweepingly aver that paragraphs 4-13 should be stricken to the extent that they include statements regarding Local 7's practices prior to 1997 or after 2005, during which time

---

[10] Even if this Court were to strike paragraphs 5 and 6 of Gunning's affidavit upon a finding that they do not meet the requirement of "personal knowledge," such action should not adversely impact Defendant's motion for summary judgment as Plaintiffs have *admitted* what those paragraphs establish, which is that Local 7 unilaterally established the job targeting program, that Local 7 members voted to pool portions of their own wages for the job targeting fund and authorized the BTEA employers to deduct dues for the fund from Local 7 members' paychecks to be forwarded to Local 7, and that Local 7 unilaterally administers the job targeting program, which were the purposes of these paragraphs. See Pls.' Resp. to Def.'s Stmt. of Undisputed Facts, ¶¶ 2, 3, and 5.

11

Coyle was not an officer of Local 7. The affidavit, however, establishes a foundation for Coyle's personal knowledge of Local 7 activities prior to his becoming an officer of the Union, because he was a member of the Union since June of 1973 and held the positions of Foreman, General Foreman, and Job Steward on many different projects from 1973 until he became an elected officer of Local 7. See Coyle Aff., ¶ 3. To the extent that this Court were to strike any portion of those statements, such action should be limited to those portions relating to conduct or action outside of the time period in which Coyle served as a Union officer.

Plaintiffs ask this Court to take its pen through paragraphs 4-13 even where they apply during the time in which Coyle was an officer because Coyle "makes no statement about what, if any, role he had in the administration of the job targeting program, the disbursement of target funds or the existence or non-existence of agreements with employers." See Pls.' Mtn. to Strike Affs., ¶ 2a. In addition to failing to provide specific grounds for striking *each* of the challenged statements, as required (see Casas Office Machs, *supra*), many of the statements contained in paragraphs 4-13 do not even address the administration of the job targeting program, the disbursement of target funds or the existence or non-existence of agreements with employers. These statements include paragraph 4 in its entirety; all but the last sentence of paragraph 5[11]; paragraph 6 in its entirety; the first two sentences of paragraph 7[12]; paragraph 8 in its entirety

---

[11] The last sentence of paragraph 5 states that "[t]hese organizing efforts were not based on agreements with any employers," a fact that is not genuinely disputed. In responding to Local 7's Statement of Undisputed Facts No. 22 that "Local 7's organizing activities were done unilaterally and not pursuant to any agreements with employers or any other non-labor groups," Plaintiffs deny that fact *only* with respect to the industry monitoring requirement on the grounds that Local 7 and the BTEA agreed in their collective bargaining agreement to engage in industry monitoring, but do not deny it with respect to any other type of organizing activity. See Pls.' Resp. to Def.'s Stmt. of Undisputed Facts, ¶ 22. Moreover, because the industry monitoring clause is included in the collective bargaining agreement, it is excluded from scrutiny under the non-statutory labor exemption.

[12] The last sentence of paragraph 7 provides that "[n]one of [Local 7's organizing efforts of assisting non-union employees to find work with union employers] were undertaken based upon any agreements with [the BTEA] or any other employer association or their members to give job placement priority to the previously non-union employees by bypassing a hiring hall." For the same reason as noted in footnote 11, above, there is no genuine dispute of material fact that Local 7's organizing activities were unilateral, which would include assisting non-union employees in finding work with union employers.

(concerns lack of agreements with employer associations, not employers); paragraph 10 in its entirety, except for statement reading "because Local 7 did not have any prior agreements that would otherwise prevent jobs from being awarded non-union"[13]; all but the first two sentences of paragraph 11; all but the first sentence of paragraph 12 and the portion of the second sentence that refers to the targeting money; and paragraph 13 in its entirety. Thus, at the very least, these statements should not be excluded on the grounds proffered by Plaintiffs for at least the time period from 1997 to 2005. However, even the statements concerning the job targeting program and target funds and the existence or non-existence of agreements with employers during that time period should be admissible because Coyle's affidavit establishes his position as an officer of Local 7 and, via the nature of that position, the foundation for his personal knowledge of Local 7's activities.

Plaintiffs further challenge the admissibility of the third and fourth sentences of paragraph 8 on grounds that Coyle does not state the basis of his personal knowledge that there was "full employment [for Local 7 members]" during the time periods when the Big Dig and Boston PLAs were "active" and that contactors were required to "employ many hundreds of iron workers from out of state." Coyle's background and official positions with Local 7 (Coyle Aff., ¶¶ 1-3) are sufficient to establish a foundation that he is competent to testify about the level of

---

[13] Even if stricken, this statement and the statements contained in paragraphs 9 and 11 concerning the non-existence of generalized agreements with fabricators, general contractors or other higher-tiered companies would not cause Local 7 to lose its summary judgment motion. As noted by Plaintiffs' Response to Local 7's Undisputed Fact No. 15, there is no genuine dispute that "Local 7 does not maintain generalized agreements with fabricators, general contractors or other higher tiered companies not to do business with Plaintiffs or other non-union steel erection companies." Pls.' Resp. to Def.'s Stmt. of Undisputed Facts, ¶ 15. Plaintiffs ground their denial on the allegations that "Local 7 established a clear reputation for preventing non-union steel erectors from obtaining work in downtown Boston and elsewhere in the relevant market" and that "[f]abricators acquiesce in Local 7's promise of threats, intimidation, delays, and greater financial costs by choosing non-union erectors at lower costs." Id. However, nothing in this denial counters the fact that there are no generalized agreements not to do business; rather, it supports the scratch and claw method of obtaining work used by Local 7. Moreover, as Local 7's Undisputed Facts show, Plaintiffs have admitted in their Complaint, deposition testimony, and in their Response to Local 7's Request for Answers to Interrogatories, that no such generalized agreements exist. See Def.'s Stmt. of Undisputed Facts, ¶ 15.

employment of Local 7 members during the time of these projects and that when Local 7 members were unavailable to work, contractors were forced to hire iron workers outside of the Commonwealth.

Lastly, Plaintiffs challenge the admissibility of the final two sentences of Paragraph 12, in which Coyle testifies that the "overwhelming majority of fabricators listed in Plaintiffs' Complaint regularly give out work non-union" and that the "most active owners and developers listed in the Complaint" often use non-union steel erectors. Plaintiffs stretch for a reason to challenge these statements by noting that Coyle "is not and apparently has never been an owner or developer and cannot make representations about their practices." Pls.' Mtn. to Strike Affs., ¶ 2c. This ground for striking, like many of Plaintiffs' stated grounds, is baseless. Coyle's affidavit establishes that during the time in which he was an officer of the Union, Local 7 engaged in job-site monitoring of employers and organizing of employees, which were directed against both non-union steel erectors and secondary parties. See Coyle Aff. ¶¶ 5, 13. It is axiomatic that Coyle, in his role as a Union officer, would have personal knowledge of steel erection jobs in Local 7's jurisdiction that went non-union.

4.  John F. Hurley Affidavit

In their general discussion of Hurley's affidavit, Plaintiffs make much of the fact that in his deposition testimony Hurley stated that he never owned a company or steel erection business. However, this fact does not detract from the foundation established by paragraphs 1 through 3 of Hurley's affidavit that Hurley, by virtue of his current and past positions in the steel erection industry over the past thirty (30) years, is wholly competent to testify about the industry.

Also in their general discussion, Plaintiffs state without support that Hurley did not "refer to any documents as a foundation for his sweeping statements about the industry." Hurley

testified that he could not "remember" if he had referred to any documents "in developing" his affidavit. See Hurley's Dep. Tr., p. 130, ll 7-11, attached to Pls.' Mtn. to Strike Affs.   It is not surprising, then, that he could not remember documents at Tabs A and B to his affidavit five months later at a deposition.   Regardless, Hurley does not claim to have relied on either Tabs A or B, which go to augment – not make -- just two of his points.   Thus, for Plaintiffs to flagrantly state that his affidavit should be stricken in its entirety simply because he could not remember seeing these two supplementary documents is absurd.

Regardless, Tab A, which is identified in Hurley's affidavit at paragraph 5 as a schedule of hourly rates prevailing in the geographical areas of Local 7 and other Locals, is not material to this case.  Similarly, Tab B, which is identified in Hurley's affidavit at paragraph 21 as a copy of the 1992 Resolution and a letter approving the Resolution that the job targeting program be permanently funded is in other parts of the record.  In his deposition, Hurley separately testified that the job targeting program was, in fact, voted on by the membership. [14]   Hurley Dep. Tr., pp. 19-20, attached hereto as Exhibit 4.   Regardless, to the extent that there are any supposed contradictions between Hurley's affidavit and his deposition testimony, such contradictions are not grounds to strike any alleged contradictory portions of an affidavit.  U.S. v. Johns-Manville Corp., 259 F. Supp. 440, 456 (D.C.Pa. 1966) ("The fact that certain statements of the affiant [in his affidavit] are in conflict with his deposition [] is not grounds for excluding the statements in the affidavit.").

Plaintiffs' contentions that particular statements in the affidavit must be stricken on specific grounds are also without merit.[15]

---

[14]   Moreover, it is undisputed that Local 7's membership voted to pool portions of their own wages for the job targeting funds.  See Def.'s Stmt. of Undisputed Facts, ¶ 4 and Pls.' Resp. to Def.'s Stmt. of Undisputed Facts, ¶ 4.

[15]   Defendant notes that Plaintiffs do not specifically challenge paragraphs 1-7, 13-16, 21, 23, 28, and 29; therefore, nothing in these paragraphs should be stricken.  See Casas Office Machs., supra.

With regard to Tab A, Defendant reiterates that striking this document should not affect its motion for summary judgment.

With regard to paragraph 8, the fact that Hurley is not an employee or officer of a general contractor or a fabricator does not make him incompetent to testify regarding the various layers of competition for jobs in the steel erection industry. As noted above, Hurley's background as set forth in his affidavit establishes that he is sufficiently knowledgeable about the steel erection industry to testify competently about the competition for steel erection work.

With respect to the last three sentences of paragraph 9, their inadmissibility, if established, is not detrimental to Local 7's summary judgment motion because the facts asserted therein are not material. "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." See One Nat'l Bank v. Antonellis, 80 F.3d 606, 608 (1st Cir. 1996) (quotations and citation omitted).

Plaintiffs claim that the first two sentences of paragraph 10 should be stricken for lack of personal knowledge. However, paragraphs 1-3 of Hurley's affidavit lay the foundation for his competency to testify about the steel erection industry, including about who controls the decision whether to compete for steel erection work and that some structural steel erection contractors confine their activities to particular geographic regions or to particular types of jobs.

Plaintiffs aver that paragraph 11 should be stricken in its entirety for lack of personal knowledge, although Hurley's established background as an industry expert is sufficient foundation for the statement that Plaintiffs were eligible to work on PLA jobs. Regardless, this fact, as previously discussed, is undisputed.

Plaintiffs claim that paragraph 12 are inadmissible because Hurley allegedly "retracted" his affidavit statement that he encouraged non-union contractors "to bid[]on public projects."

Rather, Hurley clarified at his deposition testimony that the sentence "was poorly structured. The intent was PLA projects." See Hurley's Dep. Tr., p. 169, attached to Pls.' Mtn. to Strike Affs. With this *clarification* of the meaning/intent, Hurley's affidavit should be read to mean "PLA projects" rather than "public projects," and not stricken. See Johns-Manville Corp., 259 F. Supp. at 456 ("The fact that certain statements of the affiant [in his affidavit] are in conflict with his deposition [] is not grounds for excluding the statements in the affidavit . . . . However, the testimony in the deposition will be treated as more reliable than the statements in the affidavit.").

Plaintiffs challenge the admissibility of the third and fourth sentences of paragraph 17 on grounds that Hurley does not state the basis of his personal knowledge that there was "full employment [for Local 7 members]" during the time periods when the Big Dig and Boston projects were "active" and that contactors were required to "employ many hundreds of iron workers from out of state." Hurley's background and positions with Local 7, however, set forth in paragraphs 1 through 3 of his affidavit, are sufficient to establish a foundation for his competency to testify about the level of employment of Local 7 members during the time of these projects and whether contractors had to hire iron workers outside of the Commonwealth when Local 7 members were unavailable for work (at least up through 2001, while Hurley was an officer of the Union).

Defendant maintains that to the extent that paragraphs 18 and 19 refer to the time period from 1987 to 2001 in which Hurley served as a Local 7 officer (Hurley Aff., ¶ 3), there is adequate foundation for Hurley's statements regarding the organizing conduct and collective bargaining agreements of Local 7. Plaintiffs' discussion regarding Hurley's deposition testimony regarding "jobs" in the first sentence of paragraph 19 does nothing to alter the result; it is just an attempt by Plaintiffs to confuse the facts.

Plaintiffs' plea that this Court strike paragraph 20 in its entirety for Hurley's purported lack of personal knowledge is without merit and is just one more attempt to distract this Court with non-issues. With regard to the first sentence concerning the establishment of the job targeting program, Plaintiffs have *admitted* the salient fact gleaned from this sentence, which is that the job targeting program was established unilaterally, as discussed *supra*. With respect to the last sentence of the paragraph, Plaintiffs have likewise admitted that the job targeting program was funded from of the dues of Local 7 members, also discussed *supra*. Thus, the removal of these sentences from the affidavit would have no bearing on the summary judgment analysis. As to the second, third, and fourth sentences regarding the purpose of the job targeting program, Hurley has clearly established that during his long tenure as an officer for Local 7, he had the duty to oversee the program, thereby establishing a foundation for his competent testimony regarding the purposes of the job targeting program.

With regard to Tab B, Defendant reiterates that striking this document should not affect its motion for summary judgment.

Similarly, as to Plaintiffs' challenge of the admissibility of the first sentence of paragraph 22, striking that sentence should not affect this Court's decision at summary judgment. As discussed above, Plaintiffs have admitted that Local 7 unilaterally administers its job targeting program. As to the admissibility of the last sentence of this paragraph, it should be deemed admissible to the extent that it concerns the time period in which Hurley served as a Local 7 officer.

Plaintiffs next challenge paragraphs 24-26, but only to the extent that any of the statements refer to the time period before 1987 or after 2001, when Hurley was not a Local 7 officer. Defendant reiterates that even if the Court were to find cause to strike the challenged

portions, the action would be valid only as to those periods in which Hurley was not serving in any Local 7 office. Furthermore, Plaintiffs' claim that Hurley makes no statement about what role, if any, he had in the administration of the job targeting programs or the disbursement of target funds is utterly false. In paragraph 22, Hurley states that when he "was elected business manager in 1997, [he] became responsible for overseeing the job targeting program," that, "as business manager, [he] met regularly with the business agents to discuss the merits of each job for purposes of job targeting," that he "also met regularly with Local 7's financial secretary-treasurer to oversee the solvency of the targeting funds and to ensure that monies were only paid after all obligations were met by the applicable contractors," and finally, that he "maintained the unequivocal right to make the final decision on any job targeted." Furthermore, with regard to Plaintiffs' challenge of Hurley's requisite personal knowledge of the existence or non-existence of agreements with employers, Hurley's role as an officer lays the sufficient foundation to establish his competency to testify regarding the existence or non-existence of agreements with employers during his tenure as an officer of the Union.[16]

Finally, Plaintiffs challenge the admissibility of paragraph 27. Defendant maintains that this paragraph should not be stricken as it applies to the period of time from 1987 to 2001, when Hurley was a Local 7 officer. Moreover, the final two sentences of this paragraph addressing the work fabricators and general contractors give to non-union contractors should not be stricken because Hurley's affidavit establishes that during the time in which he was an officer of Local 7, the Union engaged in job-site monitoring of employers and organizing of employees, which were directed against both non-union steel erectors and secondary parties. Hurley Aff. ¶¶ 13, 29. It is

---

[16] As discussed earlier, however, striking this statement from Hurley's affidavit will not alter the realty that there is no genuine dispute over the fact Local 7 did not maintain generalized agreements with fabricators, general contractors, and other higher-tiered companies not to do business with Plaintiffs and other non-union steel erection contractors.

manifest that Hurley, in his role as a Union officer, would have personal knowledge of steel

erection jobs in Local 7's territory that went non-union.

## IV.    CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that the Court deny

Plaintiffs' Motion to Strike Affidavits in Support of Defendant Iron Workers Local 7's Amended

Motion for Summary Judgment.

Respectfully submitted,

LOCAL UNION NO. 7, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL & REINFORCING IRON WORKERS

by its attorneys,

/s/Mickey Long
Mickey Long, Esq. (BBO# 634388)
193 Old Colony Avenue, Box E-1
South Boston, MA  02127
(617) 269-0229
mickeylong@gis.net


Dated:  October 20, 2006

/s/Paul F. Kelly
Paul F. Kelly, Esq. (BBO #267000)
Burton E. Rosenthal, Esq. (BBO #429220)
Indira Talwani, Esq. (BBO # 645577)
Stephanie R. Pratt, Esq. (BBO #655108)
SEGAL, ROITMAN & COLEMAN
11 Beacon Street, Suite 500
Boston, MA  02108
(617) 742-0208
pkelly@segalroitman.com


### CERTIFICATE OF SERVICE

I hereby certify that Defendant Iron Workers Local 7's Opposition to Plaintiffs' Motion to Strike Affidavits in Support of Defendant Iron Workers Local 7's Amended Motion for Summary Judgment, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on October 20, 2006.

/s/ Indira Talwani
Indira Talwani, Esq.

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| AMERICAN STEEL ERECTORS, INC., et al. | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) <br> ) |
| v. | ) <br> ) <br> ) |
| LOCAL UNION NO. 7, INTERNATIONAL <br> ASSOCIATION OF BRIDGE, <br> STRUCTURAL, ORNAMENTAL & <br> REINFORCING IRON WORKERS, | ) <br> ) <br> ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

Case No. 1:04-cv-12536-RGS

---

## SUPPLEMENTAL AFFIDAVIT OF JOSEPH W. NIGRO, JR.
## IN SUPPORT OF DEFENDANT IRON WORKERS LOCAL 7'S
## AMENDED MOTION FOR SUMMARY JUDGMENT

I, Joseph W. Nigro Jr., state upon my personal knowledge the following:

1.  On December 19, 2005, I signed under the pains and penalties of perjury an affidavit in support of Iron Workers Local 7's Motion for Partial Summary Judgment.

2.  I have personal knowledge of the all of the statements set forth in that affidavit that have to do with my personal background or the Building and Construction Trades Council of the Metropolitan District's (the "Council") conduct and actions during the time in which I served as Secretary-Treasurer/General Agent, except as specifically limited on the face of the affidavit. I affirm that all these statements are true and correct.

3.  I affirm, on information and belief, that the remaining statements in the affidavit are true and correct.

4.  I hereby state that based on my personal knowledge as Secretary-Treasurer/General Agent of the Council, the attachments at Tabs B-E to that affidavit are true and accurate copies page 1 of the Central Artery (I-93)/Tunnel (I-90) Project Labor Agreement (Tab B); a true an accurate copy of a page from the Big Dig Project Labor Agreement (Tab C); a true an accurate copy of a page from a page from the Logan International Airport Terminal Area Construction Labor Agreement (Tab D); and a true and accurate copy of page 1 of the Boston Convention and Exhibition Center Project Labor Agreement (Tab E). On behalf of the Council, I negotiated, signed, and administered each of these PLAs during the time I was Secretary-Treasurer/General Agent of the Council.

4.  All of the statements contained in this Supplemental Affidavit are true and correct.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS
*19* DAY OF OCTOBER, 2006.

Joseph W. Nigro, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that this Supplemental Affidavit of Joseph W. Nigro, Jr. in Support of Defendant Iron Workers Local 7's Amended Motion for Summary Judgment, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on October 20, 2006.

/s/ Indira Talwani
Indira Talwani, Esq.

# EXHIBIT 2

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMERICAN STEEL ERECTORS, INC., et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| LOCAL UNION NO. 7, INTERNATIONAL | )  Case No. 1:04-cv-12536-RGS |
| ASSOCIATION OF BRIDGE, | ) |
| STRUCTURAL, ORNAMENTAL & | ) |
| REINFORCING IRON WORKERS, | ) |
| | ) |
| Defendant. | ) |

## SUPPLEMENTAL AFFIDAVIT OF THOMAS J. GUNNING IN SUPPORT OF DEFENDANT IRON WORKERS LOCAL 7'S AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT

I, Thomas J. Gunning, state upon my personal knowledge the following:

1. On January 9, 2006, I signed under the pains and penalties of perjury an affidavit in support of Iron Workers Local 7's motion for summary judgment.

2. The BTEA's new address is 150 Grossman Drive, Suite 313, Braintree, MA 02184.

3. The BTEA and Local 7 are currently parties to a new collective bargaining agreement, effective September 1, 2006 through May 31, 2008.

4. I have personal knowledge of the all of the statements set forth in that affidavit that have to do with my personal background or the BTEA's conduct and actions during the time in which I have been Executive Director of the BTEA. On the basis of that personal knowledge, I affirm that each of these statements are true and correct.

5. I affirm, on information and belief, that the remaining statements in that affidavit are true and correct.

6. All of the statements contained in this Supplemental Affidavit are true and correct.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THAT THE
ABOVE IS TRUE AND CORRECT ON THIS 2ᴰ DAY OF OCTOBER, 2006.

Thomas J. Gunning

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this Supplemental Affidavit of Thomas J. Gunning in Support of Defendant Iron Workers Local 7's Amended Motion for Summary Judgment, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on October 20, 2006.

/s/ Indira Talwani
Indira Talwani, Esq.

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| AMERICAN STEEL ERECTORS, INC., et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| LOCAL UNION NO. 7, INTERNATIONAL ) | Case No. 1:04-cv-12536-RGS |
| ASSOCIATION OF BRIDGE, ) | |
| STRUCTURAL, ORNAMENTAL & ) | |
| REINFORCING IRON WORKERS, ) | |
| ) | |
| Defendant. ) | |

## SUPPLEMENTAL AFFIDAVIT OF JAMES COYLE
## IN SUPPORT OF DEFENDANT IRON WORKERS LOCAL 7'S
## AMENDED MOTION FOR SUMMARY JUDGMENT

I, James Coyle, state upon my personal knowledge the following:

1. On February 14, 2006, I signed under the pains and penalties of perjury an affidavit in support of Iron Workers Local 7's Motion for Partial Summary Judgment.

2. I have personal knowledge of the all of the statements set forth in that affidavit that have to do with my personal background and the conduct and activities of Local 7 while I was a Local 7 officer from June of 1997 through April of 2005, except as specifically limited on the face of the affidavit. I affirm that all these statements are true and correct.

3. I affirm, on information and belief, that the remaining statements in the affidavit are true and correct.

4. All of the statements contained in this Supplemental Affidavit are true and correct.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS 20 DAY OF OCTOBER, 2006.

_James Coyle_

## CERTIFICATE OF SERVICE

I hereby certify that this Supplemental Affidavit of James Coyle in Support of Defendant Iron Workers Local 7's Amended Motion for Summary Judgment, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on October 20, 2006.

/s/ Indira Talwani
Indira Talwani, Esq.

# EXHIBIT 4

Jay Hurley
**August 25, 2006**

19

1  Local 7.  Did Local 7, to your knowledge, start to

2  have any role to play with job targeting?

3      A.  Yes.

4      Q.  And what was that?  What happened?

5      A.  They would provide the money to control the

6  system.

7      Q.  Now, when you say they would provide

8  money, when you were employed by Local 7, is it

9  your understanding that they had a bank account of

10  some sort for this purpose?

11      A.  When you say employed, I just want to make

12  sure it's clear.  Are we talking employed as a

13  part-time officer, or employed full time?

14      Q.  Both.

15      A.  I was peripherally aware of it until 1993,

16  and then I became significantly more mindful of it

17  from 1993 on.

18      Q.  So from 1993 on...

19      A.  June of 1993.

20      Q.  And do you recall whether Local 7 set up a

21  program during that period of time for job

22  targeting?

23      A.  Yes.

24      Q.  And can you describe what that program was?

**Jay Hurley**
**August 25, 2006**

20

1      A.   Basically, in a nutshell, it was a dues

2  checkoff system.

3      Q.   And when you say dues checkoff, are

4  you talking about some sort of contributions by

5  employees or members of money from their paychecks

6  to the union?

7      A.   Correct.

8      Q.   And was this set up with the membership of

9  the union, or how was it set up?

10     A.   My best recollection is that it was voted

11  on by the membership.

12     Q.   And did they establish a certain amount of

13  money that was to be contributed to the program?

14     A.   Yes.

15     Q.   Do you recall what that was, what that

16  initially was?

17     A.   My best recollection is that it was 85

18  cents per hour.

19     Q.   Now, in terms of what this program

20  was to accomplish with this money that was being

21  contributed from members, do you recall whether the

22  program itself was ever put in writing, as to what

23  its purposes were and how it was to be run,

24  managed?