UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AMERICAN STEEL ERECTORS, INC., *et al.*,<br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>LOCAL UNION NO. 7, INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL, ORNAMENTAL & REINFORCING IRON WORKERS.<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 04-cv-12536-RGS |

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO STRIKE AFFIDAVITS IN SUPPORT OF DEFENDANT IRON WORKERS LOCAL 7'S AMENDED MOTION FOR SUMMARY JUDGMENT**

Plaintiffs' Motion to Strike the Affidavits of Iron Workers Local 7 ("Local 7") in Support of its Amended Motion for Summary Judgment is reinforced by Defendant Iron Worker Local 7's own Opposition thereto. Local 7's Opposition Memorandum is replete with admissions as to the inadmissibility and irrelevance of the content of the very affidavits that Local 7 itself has placed in issue.

**INTRODUCTION**

Local 7 repeatedly concedes the deficiencies in its own affidavits, agreeing with Plaintiff that the affidavits should be stricken to the extent they cite facts outside the period of time in which the affiant could have had personal knowledge. Even after these concessions, Local 7 makes little effort to salvage the remaining substance of its affidavits.

In fact, with the exception of a portion of John Hurley's affidavit, Local 7 fails to offer a single substantive rebuttal to affirmatively demonstrate the personal knowledge of its affiants. Instead, Local 7 complains first that Plaintiff's objections are "overly-technical" and elevate form

over substance. The admissibility of evidence supported by a party seeking summary judgment cannot, however, be considered a technical matter of form. This is precisely what Fed. R. Civ. P. 56(e) requires and is what Local 7 must be held to.

The remainder of Local 7's argument is that general "background" and "experience" of the affiant is, standing alone, sufficient to show personal knowledge with respect to every assertion in the affidavit, no matter how broad. In essence, Local 7 asks this Court to conclude that, by sole virtue of their positions with the union, each of the affiants can be considered omniscient with respect to every aspect of the job targeting program, public project negotiations and competition in the steel erection business. This position is neither supported by the law (and Local 7 cited none) nor is it supported by the rules of evidence, which require an affirmative statement of personal knowledge.

## ARGUMENT

### LOCAL 7 CANNOT "CURE" THE SUBSTANTIVE FLAWS IN ITS AFFIDAVITS

Local 7 dedicates a substantial portion of its brief to the assertion that Plaintiff is complaining about mere "technical" violations of Fed. R. Civ. P. 56(e). It contends that, while the affidavits themselves did not indicate the affiant's personal knowledge and competency to testify, these elements may be "inferred if it is clear from the context of the affidavit that the affiant is testifying from personal knowledge." Defendant's Response to Motion to Strike at 4. Plaintiff does not contest this point of law. Here, however, it is absolutely not "clear from the context of the affidavit" that any of the affiants have personal knowledge about all of the facts set forth in their affidavits. To the contrary, the affidavits contain broad generalizations, often repeated word-for-word in each individual's affidavit, about market conditions, contract performance and job targeting efforts. There is often no connection whatsoever between the

affiant's personal knowledge and experience and the facts alleged.

Moreover, as John Hurley's affidavit demonstrates, the affidavits are in some instances wholly unsupported by the facts. Hurley affirmatively disavowed at his deposition his personal knowledge of the exhibits attached to his own affidavit, confirming that he had never seen the documents before. Notably, Local 7 makes no effort to even submit a supplemental "curing" affidavit on behalf of Hurley. Under these circumstances, and as set forth in more detail below, the Court cannot simply infer personal knowledge based on the content of the affidavits themselves.

Local 7 has attempted to "cure" its affidavits with respect to the single issue of whether or not the documents state they are made on personal knowledge. However, this effort does not cure any of the specific, substantive objections to actual content of the affidavits. This partial attempted cure cannot salvage the affidavits in the face of the remainder of Plaintiff's objections.

    2.    <u>John Hurley Affidavit</u>.

Despite his deposition testimony, which plainly demonstrates Hurley's lack of personal knowledge regarding the attachments to his own affidavit as well as admitted errors in the affidavit, Local 7 asserts that this Court should not strike the affidavit, even in part.

        a.    <u>Tab A and B</u>:  Local 7 offers no substantive basis on which Tab A and B to the Hurley Affidavit should be preserved. It suggests that Hurley merely "could not remember" seeing these exhibits. This assertion is plainly inconsistent with Hurley's deposition testimony, in which he confirmed he had never seen Tab A and "had no particular knowledge" of Tab B. If this evidence is insufficient to establish lack of personal knowledge, it is difficult to understand what kind of admission would be required. *Williams v. Raytheon Co.*, 43 F. Supp.2d 124, 129 (D. Mass. 1999) (Stearns, J.) ("belated revision" of deposition testimony by affidavit

cannot create issue of fact), *aff'd*, *Williams v. Raytheon Co.*, 220 F.3d 16 (1st Cir. 2000), *citing to Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 4-5 (1st Cir. 1994) ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.").

The blatant contradiction between Hurley's deposition testimony and affidavit is, standing alone, sufficient grounds to strike the affidavit as a sham. *See, e.g., Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991) ("sham" testimony that flatly contradicts earlier testimony may not be considered to raise an issue of fact for summary judgment); *Smith v. The Mitre Corporation*, slip op., No. 95-10724-RCL, (D. Mass. 1996) ("to the extent that the [plaintiff's] affidavit contradicts the deposition, it has been ignored.")

Finally, Local 7 does not appear to even object to Tabs A and B being stricken, contending that they are not "material" to the case. Because Local 7 has failed to provide any basis on which Tab A and B could be deemed admissible, they must be stricken.

      b.      <u>Paragraph 8</u>: Local 7 claims that the content of this paragraph, which contains broad generalizations about competition among owners, developers, general contractors, fabricators and steel erection contractors, are supported by personal knowledge based on Hurley's "background." Local 7 makes no effort to specify what part of Hurley's "background" would make him competent to testify about the business operations or competition among any of these entities. The general invocation of Hurley's work in union operations on behalf of employees in the steel erection industry is wholly insufficient to establish his competency to testify to the allegations in Paragraph 8.

      c.      <u>Paragraph 9</u>: Local 7 makes no effort to defend the admissibility of the

4

challenged portions of this paragraph, which are the last three sentences. Instead, Local 7 contends only that the paragraph is immaterial. Because Local 7 has not demonstrated the admissibility of these allegations, they must be stricken.[1]

    d.    <u>Paragraph 10</u>: This paragraph contains extensive detail about the activities of steel erection contractors and the contracts under which they have performed work in the last ten years. Plaintiff objected to the first two sentences of this paragraph on the basis of lack of personal knowledge. Local 7 again relies on Hurley's general background, set forth in paragraph 1-2 of his affidavit. But these paragraphs contain no information whatsoever on why he would know how contractors make the decisions to compete for work or confine operations to a particular location. In fact, at his deposition, Hurley admitted that his information about how steel erection contractors secure work was "just all hearsay." Hurley 143 l.22-44 l.7. With Local 7 offering no further opposition, Plaintiff's motion to strike must be granted.

    e.    <u>Paragraph 11</u>: Local 7 attempts to salvage this paragraph, in which Hurley testifies to facts about Plaintiff's bidding history or Plaintiff's eligibility under the PLAs, again by relying on Hurley's "established background as an industry expert." Whether or not Hurley is an "expert" he must still demonstrate actual personal knowledge about the facts alleged. He makes no attempt to do so. Local 7 also concedes that this paragraph can be stricken because, according to Local 7, the facts in the paragraph are "undisputed."

    f.    <u>Paragraph 12</u>: Although Hurley admitted that this paragraph is factually inaccurate—referring to "public projects" rather than PLA projects—Local 7 nevertheless contends the paragraph need not be stricken but rather treated as less reliable than those in

---

[1] This kind of concession by Local 7, which apparently concedes inadmissibility as well as immateriality, only emphasizes the lack of attention to competency and personal knowledge with which these affidavits were prepared.

Hurley's affidavit. The Court and Plaintiff should not be tasked with sifting through conflicting facts in depositions and affidavits. Instead, the inaccurate and retracted portions of Paragraph 12 should simply be stricken.

        g.        <u>Paragraph 17:</u> Here again, Local 7 relies only on Hurley's general "background and positions with Local 7" to support the very specific factual allegation that there was "full employment" among Local 7 employees during the time the Big Dig and Boston Harbor PLA projects were active and that contractors working there were required to hire workers from out of state. Again, Local 7 cites no authority for this proposition, nor does it attempt to offer specific information on which the Court could find Hurley competent to testify—particularly with respect to a third party contractors' hiring needs who provided their own employees rather than obtaining them from the Union's hiring hall. Hurley is plainly not an officer of those entities, from whom personal knowledge could be inferred. *See Catawaba Indian Tribe of South Carolina v. South Carolina*, 978 F.2d 1334, 1342 (4th Cir. 1992) ("We are of the opinion that, ordinarily, officers would have personal knowledge of the <u>acts of their corporations.</u>") (Emphasis added).

Moreover, Local 7 concedes that Hurley's competency would be limited to the time period before 2001 (which is a period outside the limitations period in this case). Because it is admittedly overbroad, paragraph 17 should be stricken.

        h.        <u>Paragraphs 18 and 19:</u> Local 7 apparently concedes that there is no foundation for any statements in these paragraphs which refer to the time period outside of 1987 to 2001. However, Local 7 provides no indication about which of these statements actually relate to the relevant time period. It is not the Court's duty to sift through an affidavit to determine which parts are admissible or relevant and which are not. In *Universal Film Exchanges, Inc. v.*

6

*Walter Reade, Inc.*, 37 F.R.D. 4, 6 (D.N.Y. 1965), the court refused to parse through a lengthy affidavit in support of summary judgment containing a mixture of fact, argument and inference, explaining: "I know of no reason why the court should be compelled to do the sifting and unscrambling which would be required to ascertain the facts in view of the plain command in Rule 56." Because Local 7 has failed to identify which statements fall within the relevant time period, both paragraphs should be stricken.

        I.        <u>Paragraph 20</u>: The primary defense Local 7 offers with respect to this paragraph is that facts set forth therein have been "admitted" by Plaintiff. Even if it were accurate, Local 7's argument misses the point. At issue here is whether the factual assertions in Hurley's affidavit are *admissible*, not whether they are consistent or inconsistent with other facts in the record. Indeed, Local 7 makes no effort to show that the first and last sentences of the paragraph are supported in any way by personal knowledge. Further, it asserts without citation to any other portion of the record that Hurley "clearly established" his competency to testify. But Hurley's affidavit shows that, at the very earliest, he began to oversee the job targeting program in 1997. Thus, he cannot testify to the establishment of the program "sometime prior to 1991" or its initial purposes. Finally, even if Hurley was in any way competent to testify to the facts in this paragraph, Local 7 concedes that, at the very least, sentences 2-4 of this paragraph can be stricken.

        j.        <u>Paragraph 22</u>: Local 7 admits that the first sentence of this paragraph can be stricken, as it contends that the paragraph is irrelevant to summary judgment. Local 7 further admits that the last sentence is inadmissible to the extent it refers to any period outside of the time in which Hurley served as a Local 7 officer. Because Local 7 offers no other defense and fails to provide information as to whether the last sentence is accurate for the limited time period

about which Hurley can testify, the first and last sentences of this paragraph must be stricken.

        k.        <u>Paragraph 24-26</u>:  Local 7 does not contest that the allegations in these paragraphs must be stricken to the extent that they refer to any time period other than 1987-2001. Because of their admitted overbreadth and Defendant's failure to specify what, if any, portions of the affidavit actually relate to the 1987-2001 time period, these paragraphs should be stricken.

        l.        <u>Paragraph 27</u>:  Local 7 does not contest that the allegations in these paragraphs must be stricken to the extent that they refer to any time period other than 1987-2001. It contends, however, that the final two sentences may be salvaged because, during the time Hurley was an officer, the union engaged in job monitoring activities, all of which occurred outside the statute of limitations period in this case.  But the fact that the union may have engaged in job monitoring does not in any way demonstrate that Hurley himself had personal knowledge about contracts that specific owners and developers entered into with non-union steel erectors, such as the Plaintiffs.  If he had such knowledge, he simply could have said so and put forth the factual basis for such knowledge.  He did not do so.  Further, as Local 7 admits, the inferred knowledge of a corporate officer is limited to actions by the <u>corporation itself</u>, not the actions of other entities such as the owners and developers mentioned in paragraph 27.  *See Catawaba Indian Tribe*, 978 at 1342.

    2.    <u>Affidavit of James Coyle.</u>

        a.        <u>Paragraphs 4-13</u>:   Taking a contrary position to the one forwarded with respect to Hurley, Local 7 argues that Coyle should be deemed to have knowledge of all Local 7 activities during the time he was a "member" of the union, not even an officer.  This position is not supported by Defendant's own caselaw, such as *Catawaba Tribe*, *supra* and must be rejected. Moreover, Local 7 contradicts itself by conceding in the very next sentence that the allegations in

8

these sentences must be limited to the time period of 1997 to 2005, when Coyle was a union officer. Defendant's Resp. p. 12.

      b.     <u>Paragraph 8</u>: Here again, Local 7 relies only on Coyle's general "background and positions with Local 7" to support the allegation that there was "full employment" among Local 7 employees during the time the Big Dig and Boston Harbor PLA projects were active and that contractors were required to hire workers from out of state. There is no basis from which Coyle can be presumed to know this information, either with respect to the contractors' hiring needs or the time period outside of Coyle's service as a union officer.

      c.     <u>Paragraph 12</u>: For the same reasons that paragraph 27 of Hurley's affidavit must be stricken, paragraph 12 of Coyle's affidavit must also be stricken. Coyle here is testifying to conduct or action of third party owners and developers, not Local 7. He does not state any basis on which he has personal knowledge of these actions and such knowledge cannot be inferred because he was an officer of Local 7, not the owners and developers at issue. Neither does he list or identify a single owner or developer upon whom he might have obtained any such knowledge.[2]

The generalized job monitoring allegations do nothing to cure this deficiency as Mr. Coyle makes no connection whatsoever between the conduct alleged in paragraph 12 and the job monitoring activities described in paragraph 13.

    4.    <u>Affidavit of Joseph W. Nigro, Jr.</u>

      a.     <u>Paragraphs 7, 9, Tabs B-E</u>: Not denying that the Nigro affidavit failed to properly authenticate the Tabs attached as B-E, Local 7 asks this Court to simply look the other way because "Nigro has obviously seen them before." This "fact" is not set forth anywhere in

---

[2] Local 7 erroneously suggests that Mr. John Paulding's Affidavit is at issue. Opp. at 7 n.4. At the very beginning of his Affidavit, Mr. Paulding states he makes it based on personal knowledge.

Nigro's affidavit, however, and Local 7 points to no authority that would permit this Court to presume authentication. The Court is precluded from considering unauthenticated documents on summary judgment. *Carmona v. Toledo*, 215 F.3d 124 (1st Cir. 2000).

        b.        <u>Paragraph 10</u>:  Nigro's allegation regarding his "understanding" of the PLA coverage is less an issue of personal knowledge than an issue of reliability. If he has read the contracts and understands their terms, he should simply explain them. By referring only to his "understanding," however (and not with the interpretation of any specific contract term),[3] Nigro provides neither the Court nor Plaintiff with any assurance as to the statement's reliability.

        c.        <u>Paragraph 11</u>:  The fact that Nigro has been involved in the administration of the PLA projects does not allow any inference that Nigro can comment reliably about Plaintiff's activities in relation to public projects in the past ten years. These allegations must be stricken. With respect to the substance of what Judge Garsch "noted" in the Big Dig litigation, Plaintiff does not dispute that this Court may take judicial notice of that litigation. What should not be permitted, however, is an unsupported and unnecessary "summary" of that opinion through hearsay in Nigro's affidavit.

    5.        <u>Affidavit of Thomas J. Gunning</u>.

        a.        <u>Tab A</u>:  Here again, Local 7 requests that the Court simply infer authentication of a document based on an affiant's "background." Fed. R. Evid. 901 requires specific evidence, such as witness testimony, that a document "is what the proponent claims." No such evidence supports Tab A to Gunning's affidavit.

---

[3] Plaintiffs note that Mr. Nigro's reference to Judge Garsch's decision in *Utility Contractors Assn. v. Comm. of the Massachusetts Dept. Of Public Works*, 153 L.R.R.M. (BNA) 2297 (Sup. Ct. Mass. 1996), is merely a public observation, since the Building and Construction Trades Council of the Metropolitan District, with whom Mr. Nigro was Secretary/Treasurer/General Agent at the time, was not a party to the bid dispute lawsuit occurring in that case.

   b. <u>Paragraphs 5-6</u>: Echoing its similar refrain, Local 7 asserts that these paragraphs are admissible only "to the extent" that they concern BTEA's conduct and action during the time Gunning has been the Executive Director.  Local 7 makes no effort, however, to identify the extent to which the allegations in these paragraphs actually cover the relevant time period.  Paragraph 5 makes assertions about the "establishment of the job targeting program" and paragraph 6 states that "neither the BTEA or its employer members have ever been involved in the administration of the job targeting program[.]"  However, John Hurley's affidavit states that the job targeting program was established "sometime prior to 1991"—at least five years before Gunning's tenure as Executive Director of BTEA commenced.  Because Local 7 has made no effort to parse the allegations in paragraphs 5-6 that might be admissible from those that are clearly not, these two overbroad paragraphs should be stricken in their entirety.

 Accepting Local 7's affidavits as written would require an extraordinarily loose interpretation of the rules of evidence.  Instead of properly setting forth the basis of the individual affiant's personal knowledge, Local 7 asks this Court to simply infer personal knowledge and authentication of documents.  The Court should reject Local 7's invitation to disregard the evidentiary rules as "overly technical" and strike the affidavits as set forth herein.

## CONCLUSION

 WHEREFORE, Plaintiffs respectfully request that their Motion to Strike the Affidavits of Hurley, Coyle, Nigro and Gunning be granted.

          Respectfully submitted,

          AMERICAN STEEL ERECTORS, INC.,
          AJAX CONSTRUCTION CO.,
          AMERICAN AERIAL SERVICES, INC.,
          BEDFORD IRONWORKS, INC.,
          D.F.M. INDUSTRIES, INC.

By their attorneys:

Carol Chandler (BBO # 080660)
Geoffrey R. Bok (BBO # 550851)
STONEMAN,CHANDLER & MILLER, LLP
99 High Street
Boston, Massachusetts 02110
(617) 542–6789


/s/ Michael E. Avakian
Michael E. Avakian, *pro hac vice*
SMETANA & AVAKIAN
5211 Port Royal Road, Suite 103
Springfield, Virginia 22151
(703) 321-9181

November 3, 2006


**CERTIFICATE OF SERVICE**

I hereby certify that a copy of PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STRIKE AFFIDAVITS IN SUPPORT OF DEFENDANT IRON WORKERS LOCAL 7'S AMENDED MOTION FOR SUMMARY JUDGMENT was served on the following counsel of record for Defendant Local 7 utilizing the Court's ECF filing system:

Paul F. Kelly, Esq.
Segal, Roitman & Coleman
11 Beacon Street, Suite 500
Boston, MA 02108


/s/ Michael E. Avakian
Michael E. Avakian